**In the United States District Court**
**for the District of Columbia**

| | |
|---|---|
| **United States of America**, | Case No. 1:23-cr-00184-RDM |
| Plaintiff, | |
| v. | Reply to Government's Opposition [ECF 78] to Defense's Motion to Compel Discovery [ECF 70] |
| **Jared Lane Wise**, | |
| Defendant. | |

Defendant, Jared Lane Wise, through counsel, Kurt David Hermansen, files this Reply to the Government's Opposition to Defense's Motion to Compel Discovery.

## Table of Contents

I.    Introduction with specific examples of why the defense cannot find what it needs by searching "global" discovery................................................................ 4

  A.    The global discovery is not properly saved with accurate "optical character recognition" (OCR) to allow for reliable searches of the database...................................................................................................................5

  B.    The defense is unable to rely on the "global" discovery database ("Relativity") to search for discovery because the extracted text in the documents is wildly inconsistent in the quality of the OCR results......................................................................................................................5

      1.    Missing use of force report for Officer B.M..............................................7

      2.    Missing use of force report for Officer B.R.............................................. 9

      3.    Missing use of force report for Officer B.A.............................................11

      4.    Missing use of force report for Officer C.P.............................................12

      5.    Notably, fuzzy logic searches do not solve the problem. ...........................13

II.    This Court should compel the government to produce the requested discovery so that trial can take place in 2024........................................................14

  A.    If the government will not produce a timeline of Mr. Wise's location on January 6, 2021, regarding when Mr. Wise was on Capitol Grounds, the defense will need substantially more time to prepare for trial because commercially available facial recognition software does not solve the defense's problem.......................................14

  B.    If the government will not produce video evidence showing the teargas and flashbang grenade deployments on the Capitol grounds, the defense needs time and resources to find those videos to show the jury what Mr. Wise witnessed and how that affected his state of mind and intent. .................................................................16

      1.    Evidence about Mr. Wise's state of mind is relevant and material to his defense since aiding and abetting requires specific intent...............................................................................................17

      2.    Evidence about Mr. Wise's state of mind is relevant and material to his defense since incitement requires specific intent to incite. ...........................................................................................17

  C.    If the government will not produce a timeline list of use-of-force deployment that occurred at or near where Mr. Wise was located leading up to the events charged in the Indictment, the defense will need more time to attempt to put together that timeline if the government just keeps pointing to "global" discovery. ........................................18

D.    The Opposition lists discovery relevant to their case-in-chief but maintains that the government will not identify the person or persons Mr. Wise allegedly aided and abetted through incitement. ......................18

E.    The Opposition maintains that the government need not disclose case-specific FBI reports — about Mr. Wise and his case — to the defense. .................................................................................................19

F.    The Opposition asks the Court to hold the defense's request for Mr. Wise's personal FBI file in abeyance. ........................................... 20

G.    The government does not discharge its discovery obligations simply by asking other prosecutors if they know the names and camera numbers of specifically identified officers and the names and biographical information and collected cellphone or camera video footage from specified protestors. ............................................ 20

H.    The pole camera footage of the surveillance the government conduct of Mr. Wise and the aerial helicopter surveillance they conducted will help prove Mr. Wise's law-abiding lifestyle. .................................21

I.    The Opposition claims that it does not have to justify putting Mr. Wise on the TSA watchlist because TSA is not part of DOJ, but TSA did not pull Mr. Wise out of a hat. ...........................................21

J.    The Opposition seeks to protect the identities of the open-source researchers and other sources who collaborated with the FBI to identify well over 1,000 Capitol "rioters," but what the defense really needs is access to those sources so they can conduct facial recognition queries for Mr. Wise just as they did for the government. ........................................................................................ 22

K.    The Opposition states that the government will produce reports related to individual "GED," rendering that request moot, but documents are not all that should be produced. .................................... 22

III.    Conclusion .....................................................................................................23

I. **Introduction with specific examples of why the defense cannot find what it needs by searching "global" discovery.**

The Opposition's basic argument is as follows: we gave defense access to everything in "global" discovery; we have searched through everything in global discovery for years, found what we liked, and showed it to defense; it is the burden of defense to search through everything else in global discovery to find their own exculpatory material.

But to ensure that trial takes place this year, the government should be required to produce in *case-specific* discovery (not just "global" discovery) everything that they have already found in their own investigation that shows Mr. Wise on video, not just what they intend to use in their case-in-chief. Even if there is nothing directly helpful to the defense in that additional footage and documents, the time stamps and locations would help defense pinpoint Mr. Wise's position and movements and aid us in our search for the attacks he witnessed and endured before he uttered regrettable statements and before he entered the U.S. Capitol.

The Opposition stresses the large volume of video the government has made available in *global* discovery. That poses a problem. The January 6 protests and breach of the Capitol is the most photographed and videoed event ever prosecuted on this massive scale. The prosecution had an enormous team combing through the resulting ocean of videos and documents, for years, to find evidence for all the January 6 defendants. Mr. Wise's public defenders from Oregon are trying to find videos of where Mr. Wise was on January 6, 2021, when he and the people around him were subjected to flashbang grenades and teargas. Regarding the timeline of Mr. Wise's locations on the Capitol Grounds on January 6, 2021, defense is missing the following relevant timeframes: <u>13:20 to 14:02 hours and 14:49 to 16:19 hours</u>.

**A.** **The global discovery is not properly saved with accurate "optical character recognition" (OCR) to allow for reliable searches of the database.**

For example, when looking at a representative sample of seven U.S. Capitol Police Use of Force Reports listed on the government's discovery index, only three of the reports show up in the results of the "global" discovery database ("Relativity") when searching the report's form number (i.e., form "CP-315"). This point will be outlined first, as it is important to keep in mind when considering subsequent arguments.

**B.** **The defense is unable to rely on the "global" discovery database ("Relativity") to search for discovery because the extracted text in the documents is wildly inconsistent in the quality of the OCR results.**

With each round of global discovery, the government includes a "discovery index." Within that index, there is a "Description" column, with the government's description of the document. Sometimes the Descriptions consist of an internal law enforcement agency report number. Other times, Descriptions consist of numbers that are outwardly meaningless to the defense. Sometimes the Descriptions consist of brief descriptive text.

For example, of the thousands of rows on the current combined discovery index, 161 rows are *United States Capitol Police Use of Force Reports*.   The description column for these reports is clear and helpful: "*[Officer Last Name] [Officer First Name]* Use of Force Report."

The search term *"use of force"* (using quotation marks around the phrase), when run in Relativity results in 332,341 pages of global discovery. So, search terms that work on properly OCR'd documents to narrow this number of pages are necessary. To examine the reliability of the search function in Relativity, the defense searched the Relativity database with a search term that is, or should be, visible on each of the 161 "United States Capitol Police Use of Force Reports" listed on the discovery index. That search term is the document's **form number: CP-315**.

The first *seven* of these 161 reports on the discovery index are shown as follows[1]:



| | Begin Bates | End Bates | Description |
|---|---|---|---|
| 1 | | | |
| 5 | CAPD_000003218 | CAPD_000003219 | A▮, B▮▮ Use of Force Report |
| 6 | CAPD_000003220 | CAPD_000003221 | B▮▮▮, M▮▮ Use of Force Report |
| 7 | CAPD_000003222 | CAPD_000003224 | B▮▮▮, B▮ Use of Force Report |
| 8 | CAPD_000003225 | CAPD_000003226 | B▮▮▮, R▮▮ Use of Force Report |
| 9 | CAPD_000003227 | CAPD_000003228 | B▮▮▮, A▮ Use of Force Report |
| 10 | CAPD_000003229 | CAPD_000003230 | C▮▮▮, P▮ Use of Force Report |
| 11 | CAPD_000003231 | CAPD_000003232 | C▮▮▮ J▮ Use of Force Report |

When the defense runs the term "CP-315", the four highlighted documents in the above screenshot do **not** appear in Relativity.[2] Only the following three show up:

| # | | DT_DocID | Global_Production_... ↓ | Global_Production_En... |
|---|---|---|---|---|
| | | | Filter | Filter | Filter |
| 1 | | USCP-002-00000029 | CAPD_000000749 | CAPD_000000754 |
| 2 | | USCP-003-00000178 | CAPD_000003157 | CAPD_000003173 |
| 3 | | USCP-007-00000002 | CAPD_000003218 | CAPD_000003219 |
| 4 | | USCP-007-00000006 | CAPD_000003222 | CAPD_000003224 |
| 5 | | USCP-007-00000015 | CAPD_000003231 | CAPD_000003232 |
| 6 | | USCP-007-00000017 | CAPD_000003233 | CAPD_000003234 |
| 7 | | USCP-007-00000019 | CAPD_000003235 | CAPD_000003236 |

To be clear, only *three* of the representative sample of *seven* documents appear in the Relativity search results. Missing from the search results are the use-of-force reports for officers B.M., B.R., B.A., and C.P. Having a database of *over 8 million* documents for which searches return accurate results less than 50% of the time (here just 43%) means that searching global discovery will fail to identify what the defense needs.

---

[1] Officer names are redacted for privacy.
[2] Results were sorted by the Global_Production_BegBates column to be consistent with the order of documents in the comparison discovery index.

A closer look at the documents as they exist in the Relativity database explains why this is happening.

### 1.    Missing use of force report for Officer B.M.

This report, as with the other three missing reports, was found in Relativity by searching the Beginning Bates Number (for B.M., that is  "CAPD_000003220") listed in the government's discovery index.  Here is the **image** of the first page of the Use of Force Report for Officer B.M.

The form number "CP-315" is, in fact, on the document in the upper right-hand corner.



The same form number "CP-315" stamp appears again on the *second* page of the document:



Now, let's look at the text that was extracted from this document. The extracted text is the most important text because the extracted text is what the global discovery database searches, the database does *not* search the document's image. The images themselves are not searchable.

Here is the text that was extracted from *page one* of the document:



**RESULT** (page one): The searchable extracted text was "CP-11," not "CP-315."

The searchable extracted text from page two shows the following:

```
UNITED STATES CAPITOL POLICE
USE OF FORCE REPORT CP-31S
(04/15)
Page 2
(Please Type or Print Legibly)
26 NARRATIVE—DESCRIBE YOUR ACTIONS (Additional space is provided on page , if
need
```

**RESULT** (page two): The *searchable* extracted text was "CP-31S," not "CP-315."

Even though CP-315 appears *twice* on this document, twice it fails to be extracted accurately. Because the global discovery database demonstrably does not contain properly OCR'd documents the database is unreliable. Given the high level of inaccuracy in the extractions, the defense cannot reliably find document using standard, reliable search terms like "CP-315." The above example shows that even though the document is *clearly* a CP-315 form and CP-315 appears *twice* on the document, it will not turn up in a search for CP-315.

### 2. Missing use of force report for Officer B.R.

Here is the relevant portion of the *non-searchable* image of officer B.R.'s report:





And here is the relevant portion of the *searchable* extracted text of the same report:



**RESULT:** For Officer B.R.'s report, "CP-315" was extracted as complete gibberish "**(F ,-;1' ;**" on page one, and extracted as "CP-31**C**" on page two.

3.    **Missing use of force report for Officer B.A.**

This is the relevant portion of the *non-searchable* image of Officer B.A.'s report:



And this is the relevant portion of the *searchable* extracted text of the report:





**RESULT:** For Officer B.A.'s report, "CP-315" was extracted as gibberish "**(. 1- 1 9**" on page one and extracted as "**Cl'-315**" on page two. [3]

### 4. Missing use of force report for Officer C.P.

This is the relevant portion of the *non-searchable* image of Officer C.P.'s report:



---

[3] Also alarming, in this example, is the way the text "Use of Force Report" is extracted as "E OF FORCE R".

And this is the relevant portion of the *searchable* extracted text of the report:



**RESULT:** For Officer C.P.'s report, because the form number is cut off from the document image on both pages, "CP-315" was extracted as "- -" on page one, and it was not extracted at all on page two.

### 5. Notably, fuzzy logic searches do not solve the problem.

In Relativity, using fuzzy searching, one can broaden search results using a sensitivity scale from 1-10. Fuzzy searching helps return documents containing spelling variations of a specified term. The defense has met and conferred with Relativity reps and we've run fuzzy searches to query documents that contain misspelled terms, typographical errors, or documents scanned with Optical Character Recognition (OCR). Using the Fuzziness Level menu, larger numbers return terms with more variation.

When the defense met with Relativity reps, they set up a search for CP-315 using the added fuzzy search option. They also "enabled stemming," which even further expands the possibility of a document showing up in a search. But when Relativity reps tried the search at level 6, they received an error. They explained that this meant level 6 was too broad. We did the same search at level 5 and got the same error. When we edited the search to fuzziness level 4, it did not error out. That said, even when set at fuzziness level 4, two of the seven documents don't show up (the reports for B.A. and C.P. are missing). Thus, even with the most sophisticated searches by the experts at Relativity, the results are still missing about 29% of the document set in this example.

And this example is the most optimistic scenario where the defense is searching in an identified set of documents that we know contain the search term CP-315, for example. If we search the full set of over 8 million documents for CP-315 using expansiveness fuzzy searches, we will obtain too many results, but still not all the needed results. In addition, there may be reports or forms, other than CP-315, that the defense does not even know to look for.

## II.    This Court should compel the government to produce the requested discovery so that trial can take place in 2024.

### A.    If the government will not produce a timeline of Mr. Wise's location on January 6, 2021, regarding when Mr. Wise was on Capitol Grounds, the defense will need substantially more time to prepare for trial because commercially available facial recognition software does not solve the defense's problem.

The Opposition's argument that the defense can pay for Amazon Rekognition facial recognition services (https://aws.amazon.com/rekognition/pricing/) is not realistic. First, the pricing erects a cost-prohibitive hurdle given the volume of video evidence.[4] The cost of the program is

---

[4] The defense estimates (very conservatively) that there are roughly 449,000 minutes of CCTV and bodyworn camera video in global discovery. Running the 3 APIs would cost .30 per minute,

contingent on the volume of photographs or videos being analyzed. Plus, given the restrictive protective order in this case, which the defense opposed, the Opposition appears to imply that defense is allowed to violate the protective order by uploading global discovery to an unsecure Amazon cloud. This would create a scenario where the defense is trusting Amazon with the data in spite of the protective order.

Another hurdle that federal public defenders face in exploring cutting-edge software/AI solutions is restrictions from the National Information Technology Operations and Applications Development (NITOAD). NITOAD is a branch of the U.S. Courts that supports the federal defender program's staffed offices in 204 locations throughout the continental United States, Alaska, Hawaii, Puerto Rico, the Virgin Islands, and Guam. Given security concerns, NITOAD is highly restrictive in approving software usage. For example, NITOAD does not allow the use of Microsoft Sharepoint on the federal defender's computers even though the federal courts use Microsoft Sharepoint.

There are 30,636 videos in Evidence.com global discovery for J6 cases. In theory, the defense could attempt to trace Mr. Wise's location from CCTV camera to CCTV camera. But that is not possible because Mr. Wise would appear as a speck in a crowd that even Amazon Rekognition would not be able to locate or follow.[5] Even assuming (a) that the protective order could be

---

or $134,700. Notably, this does not include the hosting costs for the video itself, the cost in time and money to transfer the video from the global discovery to Amazon, the cost of developing usable metadata of client's face, the time needed to review and verify the results, nor does it include the time needed to generate usable clips and exhibits from the reviewed footage.

[5] **For images:** To be detected, a face must be no smaller than 40x40 pixels in an image with 1920X1080 pixels. Images with dimensions higher than 1920X1080 pixels will need a larger minimum face size proportionally. https://tinyurl.com/Amazon-Rekognition-Guide. **For video:** The system is trained to recognize faces larger than 32 pixels (on the shortest dimension), which

amended to allow uploading of 30,636 videos to Amazon's platform, and (b) that NITOAD would approve using Amazon Rekognition to search stored videos for faces, it appears the defense would need to surmount a third hurdle. The defense would have to hire a software developer or someone who knows how to code. *See* https://docs.aws.amazon.com/rekognition/latest/dg/getting-started.html.[6]

In short, the Opposition's claim that the defense could conduct the same investigation as the government with third-party facial recognition software, given the volume of global discovery, is incorrect and would necessitate further time for the defense to prepare for trial.

**B. If the government will not produce video evidence showing the teargas and flashbang grenade deployments on the Capitol grounds, the defense needs time and resources to find those videos to show the jury what Mr. Wise witnessed and how that affected his state of mind and intent.**

Regarding Mr. Wise's location and the location of the grenades and teargas that were deployed near him, the Opposition argues that information is not within their possession, custody, and control. ECF 78 at 2. That makes no sense because the Opposition then says that "the defendant has the burden to [investigate] himself, even if doing so is expensive or time-consuming." ECF 78 at 3. Yet, the only way to investigate Mr. Wise's locations is by using *the discovery the government has provided*, which is, by definition, in the government's possession, custody, and control.

In addition, the Opposition maintains that the defense request for use-of-force deployment involving teargas, flashbang grenades, and baton strikes in the vicinity of Mr. Wise leading up to

---

translate into a minimum size for a face to be recognized that varies from approximately 1/7 of the screen smaller dimension at QVGA resolution to 1/30 at HD 1080p resolution. https://aws.amazon.com/rekognition/faqs/ Using an online pixel-to-inches calculator, the defense learned that 40 pixels is about .42 inches and 32 pixels is about $0.33 inches.

[6] Notably, the defense has already hired three experts at great expense and the government objects to them all.

the conduct charged in the indictment is "untethered to Defendant's alleged conduct," and thus irrelevant. ECF 78 at 7. Not so. The information is key evidence tending to show that Mr. Wise did not have the specific intent to incite violence. Moreover, the evidence is relevant for expert Suzanne Best's proposed testimony and the testimony of the defense's use-of-force expert.

### 1.   Evidence about Mr. Wise's state of mind is relevant and material to his defense since aiding and abetting requires specific intent.

Under the federal aiding and abetting statute, "those who provide knowing aid to persons committing federal crimes, *with the intent to facilitate the crime*, are themselves committing a crime. *Rosemond v. United States*, 572 U.S. 65, 70 (2014) (emphasis added) (citing J. Hawley & M. McGregor, Criminal Law 81 (1899)). The D.C. Circuit has held that aiding and abetting is a specific intent crime. *United States v. Moore*, 651 F.3d 30, 92 (D.C. Cir. 2011) ("An aiding and abetting conviction require[s] proof that [the defendant] had … the specific intent to facilitate the commission of a crime by another." (internal quotation marks and citation omitted)).

Therefore, evidence about Mr. Wise's state of mind is relevant to the charge of aiding and abetting.

### 2.   Evidence about Mr. Wise's state of mind is relevant and material to his defense since incitement requires specific intent to incite.

The government argues that Mr. Wise's speech is not protected under the First Amendment, as it is categorized as incitement. ECF 50 at 15, n.4. Speech is not protected by the First Amendment if it is found to be incitement, where the defendant intended to incite imminent lawless action, and where their speech was likely to produce such action. *Brandenburg v. Ohio*, 395 U.S. 444, 447 (1969). But the government has to prove that the defendant specifically intended incitement with their speech. *Counterman v. Colorado*, 600 U.S. 66, 76 (2023) (stating that "the First

Amendment precludes punishment, whether civil or criminal, unless the speaker's words were 'intended' (not just likely) to produce imminent disorder.")(citations omitted).

Therefore, evidence about Mr. Wise's state of mind is relevant to the government's allegation that Mr. Wise's speech is incitement.

> **C.    If the government will not produce a timeline list of use-of-force deployment that occurred at or near where Mr. Wise was located leading up to the events charged in the Indictment, the defense will need more time to attempt to put together that timeline if the government just keeps pointing to "global" discovery.**

Rather than adding use-of-force reports to case-specific discovery, the government indicates that use of force reports and other documents related to use of force policies are included in *global* discovery productions 9, 10, 13, and 28. The Opposition encourages the defense to make use of global discovery, including by searching the names of officers through relevant databases for responsive material. Pointing out which *global* discovery productions include use-of-force reports is marginally helpful. But because the government has not provided an exhaustive list of officers who deployed teargas and flashbang grenades, the defense cannot know if there are other officer names that need to be searched to find the time and location of the teargas and flashbang deployments that Mr. Wise experienced. Further, as previously discussed, searches using the global discovery database, Relativity, are wholly unreliable.

> **D.    The Opposition lists discovery relevant to their case-in-chief but maintains that the government will not identify the person or persons Mr. Wise allegedly aided and abetted through incitement.**

After referring the Court to its opposition to producing a bill of particulars (ECF 50), the Opposition reiterates a list of pro-prosecution evidence the government has provided to the defense. ECF 78 at 7–8. Thus, it warrants repeating that the government has identified a *non-*

*exhaustive* list of at least nine officers who may or may not be the unnamed victim in Counts One and Two. ECF 78 at 8. The government also maintains that a *non-exhaustive* five defendants prosecuted for assaultive conduct gives Mr. Wise sufficient notice of the persons he may have aided, abetted, and incited, for him to prepare for trial. But Defense's Motion to Compel Discovery, ECF 70 at 6–7, shows why that is not so. In sum, there are *at least* 2,508 files in global discovery relating to the five defendants that the government may or may not include as principals that Mr. Wise aided and abetted. Those defendants, combined with the non-exhaustive list of nine victim officers, creates an extremely high number (i.e., 15,841) possible trial scenarios from the various combinations of potential victims and potential principals. The fact that the lists are non-exhaustive furthers the defense's point. The government leaves itself free to introduce entirely new victims and/or principals at trial, which leaves the defense unable to prepare for trial in a timely fashion.

Therefore, this Court should compel the government to provide specific identification as to who the victims are and who the principals are that Mr. Wise allegedly aided and abetted.

### E.    The Opposition maintains that the government need not disclose case-specific FBI reports — about Mr. Wise and his case — to the defense.

The government should adhere to a "generous policy of discovery" in criminal cases under which it discloses any "information that a defendant might wish to use." *Turner v. United States*, 582 U.S. 313, 324 (2017) (citation omitted)(citing *Kyles v. Whitley*, 514 U.S. 419, 439 (1995).

While recognizing that some of the reports are subject to production under the Jencks Act, the government is opting to "produce them accordingly at the appropriate time." ECF 78 at 9. The problem with that approach is the unnecessary and disruptive possible trial delay it can cause.

Thus, this Court should require that the government produce Jencks Act materials at least three weeks before trial.

**F.    The Opposition asks the Court to hold the defense's request for Mr. Wise's personal FBI file in abeyance.**

The Opposition indicates that the government is now seeking to identify, obtain, and voluntarily produce the requested FBI files from Mr. Wise's employment as an FBI agent. ECF 78 at 9–10. The defense stands by its motion. ECF 70 at 11–15. *See also Roth v. U.S. Dep't of Just.*, 642 F.3d 1161, 1175 (D.C. Cir. 2011)(citing *Kyles*, 514 U.S. at 437 ("[T]he individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police.")). Thus, government should fully comply with the defense request for all materials from Mr. Wise's FBI file without redaction and without withholding documents.

**G.    The government does not discharge its discovery obligations simply by asking other prosecutors if they know the names and camera numbers of specifically identified officers and the names and biographical information and collected cellphone or camera video footage from specified protestors.**

The Opposition posits that the government has made good faith efforts to produce case-specific discovery requested by the defense. ECF 78. But the fact that the former prosecutor on this case asked colleagues if they had the requested information is not sufficient. Failing to produce evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution. *Brady v. Maryland*, 373 U.S. 83, 87 (1963)("hold[ing] that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution"). The constitutionally mandated duty to disclose applies even when there has been no request by the accused,

and that the duty encompasses impeachment evidence as well as exculpatory evidence. *Strickler v. Greene*, 527 U.S. 263, 280 (1999). Most important for present purposes, that duty encompasses evidence "known only to police investigators and not to the prosecutor." *Id.* at 280–81. Therefore, "the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in this case, including the police." *Id.* at 281 (citing *Kyles*, 514 U.S. at 437).

### H. The pole camera footage of the surveillance the government conduct of Mr. Wise and the aerial helicopter surveillance they conducted will help prove Mr. Wise's law-abiding lifestyle.

The Opposition maintains that the government will not produce to the defense footage from the surveillance it conducted on Mr. Wise. If the surveillance showed he was engaging in conspiratorial criminal activity, they would certainly consider it relevant. But because it tends to show Mr. Wise is a law-abiding citizen, the Opposition does not deem the footage relevant. The government should err on the side of disclosure, not suppression. Here, the footage is clearly material and relevant both for mitigation and for potential impeachment of the agents' deep dives into every aspect of Mr. Wise's life. Thus, its production is constitutionally required under the authority cited herein and in ECF 70.

### I. The Opposition claims that it does not have to justify putting Mr. Wise on the TSA watchlist because TSA is not part of DOJ, but TSA did not pull Mr. Wise out of a hat.

The Opposition does not even attempt to justify putting Mr. Wise on a terrorism watchlist. ECF 78 at 11. The steps the FBI and DOJ took to have Mr. Wise placed on the watchlist is relevant to the discovery motion concerning his allegations of selective enforcement, vindictive prosecution, and selective prosecution. *See* ECF 75. It is also relevant as potential impeachment of the

agents' deep dives into every aspect of Mr. Wise's life. Thus, its production is required under the authority cited herein and in ECF 70.

> **J.**   **The Opposition seeks to protect the identities of the open-source researchers and other sources who collaborated with the FBI to identify well over 1,000 Capitol "rioters," but what the defense really needs is access to those sources so they can conduct facial recognition queries for Mr. Wise just as they did for the government.**

By refusing to disclose the open-source collaborators who combed through videos and social media to identify J6 defendants, the government denies the defense a powerful tool the government itself uses. If the government wants to protect the open-source sleuths, it can do that by submitting Mr. Wise's request to the private sources the FBI uses. They can then ask them to produce a timeline of Mr. Wise's locations on the Capitol Grounds on January 6, 2021, during the following relevant timeframes: 13:20 to 14:02 hours and 14:49– 16:19 hours.

Alternatively, the government can disclose the sleuths' information subject to a suitably restrictive protective order.

> **K.**   **The Opposition states that the government will produce reports related to individual "GED," rendering that request moot, but documents are not all that should be produced.**

The Opposition claims that producing documents relevant to individual "GED" renders the defense request moot. ECF 78 at 13. But the government should also produce the recordings of their interactions with GED as well as any written correspondence between the government and GED given GED's obvious involvement in Mr. Wise's identification, arrest, and charges. Mr. Wise has presented serious charges of international wire fraud and theft against GED.

## III.    Conclusion

Based on the foregoing, this Court should compel the government to produce relevant discovery for defense purposes and give the defense sufficient time to find videos that show where Mr. Wise was when he was experiencing flashbang grenades and teargas being deployed against protesters who were not attempting to breach the capitol.

Respectfully submitted on July 17, 2024.

*s/ Kurt Hermansen*
Kurt David Hermansen, CA Bar 166349
Supervisory Assistant Federal Public Defender
859 Willamette St. Suite 200
Eugene, OR  97401
Tel: (619) 436-8117
Fax: (541) 465-6975
Email: kurt_hermansen@fd.org

**Attorney for Defendant Jared Lane Wise**