IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　　　Plaintiff,<br><br>　　v.<br><br>JARED WISE,<br><br>　　　　　　　　　Defendant. | Case No. 1:23-cr-00184-RDM<br><br>Reply to Government's opposition (ECF 89) to defense motion to compel discovery supporting Wise's claims of selective prosecution, selective enforcement, and vindictive prosecution (ECF 75) |

**Table of Contents**

I.    Introduction ................................................................................................................ 2

II.   Wise can meet the elements to compel discovery supporting his claim of selective prosecution, including some evidence of disparate treatment between similarly situated defendants. ................................................................. 2

　　A.　Mr. Wise has shown "some evidence" that similarly situated defendants have been treated differently. ............................................... 2

　　B.　The Ninth Circuit's narrow ruling in *Rundo* militates precisely against the type of comparisons the government urges upon this Court. ........................................................................................................ 5

　　C.　Wise is not required to prove the claim for which he requests discovery and the information he provides satisfies *Armstrong*'s "some evidence" standard. ................................................................... 6

III.  Wise's claim of selective enforcement has not been refuted because using surveillance and other tactics against other January 6 defendants does not mean that such tactics were not used selectively against Wise. .......................... 8

IV.   Wise can show evidence of vindictive prosecution as the opposition is unable to contest that the timing of decisions in Wise's case creates a "realistic likelihood" of vindictive purpose. ............................................................ 9

V.    Conclusion ............................................................................................................... 11

I.       Introduction

The Defendant, Jared Lane Wise, filed a Motion to Compel Discovery in support of his claims of selective prosecution, selective enforcement, and vindictive prosecution. ECF 75. The government filed its opposition. ECF 89. This Reply addresses that opposition.

Wise has met his burden to compel discovery in support of his claims. He has shown some evidence of similarly situated defendants being treated differently, which is not as high of a bar as the opposition claims. Wise has presented evidence supporting his claims of selective prosecution, selective enforcement, and vindictive prosecution and thus the Court should compel discovery of information supporting those claims. The opposition has failed to refute evidence that Wise has put forth, and thus Wise's motion should be granted.

II.      **Wise can meet the elements to compel discovery supporting his claim of selective prosecution, including some evidence of disparate treatment between similarly situated defendants.**

   A. **Mr. Wise has shown "some evidence" that similarly situated defendants have been treated differently.**

The opposition argues that Wise has failed to show "some evidence" of similarly situated defendants who engaged in similar conduct under similar circumstances but were treated differently from himself. ECF 89 at 6–8. Wise more than satisfied that low bar: He never laid a hand on anyone, but he has been able to show cases in which similarly situated protesters in Portland, Oregon physically assaulted federal officers and had their cases dismissed. ECF 75 at 12–16. Moreover, D.C. District Court judges have recognized the relevant data and expressed concerns over the disparities in *United States v. Judd*, 579 F. Supp. 3d 1, 5-6 (D.D.C. 2021)(stating that Judd's claim is "nontrivial" that three other defendants struck officers and had charges inexplicably dropped,

while Judd's charges stuck even though he never struck an officer) (for the data, *see* No. 1:21-cr-00040-TNM, ECF 138).

The opposition urges this Court to reject the comparison between Wise and defendants in Portland by looking at "surrounding circumstances and context" of the January 6 protests, citing "stark differences … between the underlying facts and activities of the 2020 Portland protest versus the January 6 attack." ECF 89 at 6–7. Quoting *Judd*, a case in which the defendant physically assaulted officers, hurled a firecracker at officers, and helped hand up shields to other offenders, the opposition characterizes January 6 protesters as people who "sought to tear down our system of government," and "endangered hundreds of federal officials." *Id*. at 7, quoting *Judd*, 579 F. Supp. 2d at 32. Drawing on this generalized picture, the opposition argues in effect that the January 6 protests were more dangerous in aggregate than the manifold and hugely destructive violence against the federal court (a co-equal branch of our federal government) in Portland. *Id*. The inference seems to be that there *cannot possibly be* similarly situated defendants across the two groups.

Neither the aggregate dangerousness of the January 6 protests nor the alleged aims of individual protesters have relevance to Wise's claims. The opposition seeks to subject Wise to a collective punishment for the actions of others who were not his associates nor in any way under his control. "[D]efendants are similarly situated when their circumstances present no distinguishable legitimate prosecutorial factors that might justify making different prosecutorial decisions with respect to them." *Branch Ministries v. Rossotti*, 211 F.3d 137, 145 (D.C. Cir. 2000) (quoting *United States v. Hastings*, 126 F.3d 310, 315 (4th Cir. 1997)). *Rossotti*'s rule does not require an exact match between the broader contexts in which defendants acted. Portland is not Washington D.C.; night

differs from day. These are obvious facts, but do not reach the heart of the rule, which concerns itself with fair treatment of individual persons under the law. Where distinct individuals have found themselves witnessing acts of violence, in the vicinity of sites of federal power, at seasons of political tumult, there are similar circumstances.

By insisting that Wise can find no comparator because of the larger context of the January 6 protests, the opposition condemns him to an inescapable guilt by association. Yet the opposition does not dispute that Wise's individual actions pale in seriousness compared to those of the defendant in *Judd*, countless other January 6 defendants, *and* many of the Portland protesters who had their cases dismissed, as Wise argued in his original motion. ECF 75 at 12. And yet, even in *Judd* this Court found reason to express deep concern at the disparities between the treatment of January 6 defendants and the Portland protesters. *Judd*, 579 F. Supp. 3d at 5–6.

Wise deserves to have his claims judged on their own merits by comparing his actions and circumstances to those of other specific individuals. As the Ninth Circuit has recently explained, "the point of 'similarly situated' is to isolate the factor allegedly subject to impermissible discrimination" by comparing individuals to individual. *United States v. Rundo*, 108 F.4th 792, 799 (9th Cir. 2024)(cleaned up). Unprosecuted protester/rioters in Portland in the summer of 2020, who acted more culpably than Wise are legitimate comparators. ECF 75 at 12. The government should not be permitted to deny Wise the benefits of that comparison by lumping him in with hundreds, perhaps thousands of others who engaged in far worse conduct on January 6. To do so is fundamentally unfair and would amount to collective punishment.

Focusing only upon Wise's actual conduct, the opposition's other arguments regarding "prosecutorial factors" equally fail. ECF 89 at 5 (citing *United States v. Miller*, 1:21-cr-00119 (CJN), ECF 67 at 4 (D.D.C Dec. 21, 2021)). The government argues that prosecutorial decisions regarding January 6 defendants require more deference because the government possesses, *in aggregate*, more evidence concerning the events in Washington D.C. than the events in Portland. ECF 89 at 9. This analysis of the "strength of the case" has more to do with the January 6 protests in general than the case against Wise. The government enjoys an embarrassment of riches when it comes to evidence as to the events of January 6 in general, including vast stores of "open-source videos, body worn camera videos, and CCTV footage." *Id.* Out of countless bits of such evidence, a few snippets feature Wise engaged in actions such as walking and talking. The focus of Wise's motion, however, is specifically felony counts One and Two— which are based on mere-words — included in the indictment. ECF 75 at 12–13 (Count One charges Wise with "civil disorder" in violation of 18 U.S.C. §§ 231(a)(3), 2, and Count Two charges Wise with "forcible assault" in violation of 18 U.S.C. §§ 111(a)(1), 2.) For these counts, the government's case is weak even under their aiding-and-abetting-through-incitement theory. For example, the government has been unable to name the alleged victim of the assault or name any individual who claims to have been incited by Wise's words. If the standard for production of discovery on a claim of selective prosecution depends on the strength of the government's case, Wise should have a very strong claim.

    **B.**  **The Ninth Circuit's narrow ruling in *Rundo* militates precisely against the type of comparisons the government urges upon this Court.**

The government makes much of the Ninth Circuit's recent reversal of a district court's dismissal for selective prosecution in *Rundo*. Yet the government mischaracterizes the court's

admonition against comparing "apples to oranges," as though it was a warning against comparing right-leaning protesters with left-leaning protesters. ECF 89 at 10. In fact, the court was cautioning against comparing individuals with groups, or vice versa, and urging as a matter of principle that assessing the existence of similarly situated defendants must involve comparison of individuals with individuals, not individuals with groups. *Rundo*, 108 F.4th at 799–800. In *Rundo*, the district court had "compare[d] the collective conduct of groups to Defendants rather than comparing the conduct of individuals to Defendants." *Id.* Proceeding with the analysis on duly corrected ground, the court found against the defendants based on a litany of individual-specific "prosecutorial factors," namely: (1) that they had prepared for their actions with combat training; (2) that they had engaged in violent conduct repeatedly; (3) that their actions were carefully planned and organized; (4) that they had significant prior criminal history; (5) that they had a leadership role within a larger organization; (6) that the evidence including bragging confessions that they themselves broadcast on social media. *Id.* at 801–02. But none of these factors apply to Wise!

What Wise requested in his motion is entirely consistent with the new decision in *Rundo*. That case directs the court to compare his actions with those of other, similarly situated individuals, without introducing prejudice by comparing him with groups of people or by basing the analysis on a comparison of groups with groups.

### C. Wise is not required to prove the claim for which he requests discovery and the information he provides satisfies *Armstrong*'s "some evidence" standard.

The government implies that the standard for obtaining discovery on a claim of selective prosecution is nearly tantamount to the standard for proving the claim itself. ECF 89 at 5, citing *Miller*, 1:21-cr-00119 (CJN), ECF 67 at 2. On the contrary, *Armstrong* and its progeny have never

set the cart before the horse by requiring that defendants prove a claim first and obtain evidence later. The distinction between "some evidence" required for a motion to obtain discovery, and "clear evidence" required to support a claim of selective prosecution, is real and significant. In *Armstrong*, the Supreme Court swept aside a clutter of special terms used by the Circuits and stated plainly that a defendant seeking to obtain discovery supporting a claim of selective enforcement need only produce "some evidence tending to show discriminatory effect." *United States v. Armstrong*, 517 U.S. 456, 468 (1996). This means, quite simply, "evidence that the Government has failed to prosecute others who are similarly situated to the defendant." *Id.* at 469.

This is a surmountable bar. *See Branch Ministries, Inc. v. Richardson* 970 F. Supp 11, 15 (D.D.C. 1997). In *Branch Ministries*, which involved complicated issues surrounding IRS action against politically active churches, the court conducted a similarly-situated analysis and concluded that "plaintiffs have produced evidence that 'similarly situated [churches] could have been prosecuted, but were not'" even though the comparators were "not restricted to any single political party or any one denomination." *Id.* at 16, quoting *Armstrong*, 517 U.S at 457. The court also noted that the "some evidence" standard is even lower for the "discriminatory purpose" prong of the selective prosecution claim, crediting indirect evidence, precisely because "without some discovery [plaintiffs] could not be expected to have access to … direct evidence of discriminatory intent." *Id.* Such indirect evidence can include unusual or Draconian measures by law enforcement. *Id.* To find such indirect evidence, this Court can look to the government's still unexplained decision to charge Wise with *mere-words* "civil disorder" and "forcible assault" and the extraordinary

Page 7 – Reply to Government's opposition (ECF 89) to Defense motion (ECF 75) to compel discovery

investigative tactics used against him. The government wrongly dismisses this legitimate evidence as an "*ipse dixit* allegation" of Wise, as though it was a mere fabrication. ECF 89 at 8.

This legitimate evidence is especially relevant here, as Wise is requesting documents and communication relating to him from FBI officials including, but not limited to: Paul Abbate, Steven D'Antuano, Jonathon Snow, Omar Molina, and Charles Berger. ECF 75 at 19. As a former supervisory FBI agent, Wise has good reason to believe that these individuals that he worked with hold a grudge against him due to the timing of the investigation and his interactions with these individuals and that discovery will confirm his selective prosecution claim.

**III.    Wise's claim of selective enforcement has not been refuted because using surveillance and other tactics against other January 6 defendants does not mean that such tactics were not used selectively against Wise.**

In addressing Wise's claim of selective enforcement, the government merely notes that other January 6 defendants were subjected to the same extraordinary measures, including lengthy surveillance, as were used in Wise's case. ECF 89 at 12. This continues the government's tactic of not addressing the specifics of Wise's case. Wise is not a position to dispute that such tactics have been used against other January 6 suspects. He would not dispute that this group of several thousand suspects likely includes some individuals with lengthy criminal histories, individuals belonging to known domestic terrorist groups, and individuals who conspired and planned with others to engage in violent activities on January 6. But none of these things can be said of Wise. He has no prior criminal history, did not coordinate or plot with others to do anything illegal on January 6, and does not belong to any suspect group. The only thing special about Wise is his prior history of employment with the FBI, the very agency that conducted the investigation against him. During his career, Wise rose through the ranks and took on many unique assignments. In the process,

Page 8 – Reply to Government's opposition (ECF 89) to Defense motion (ECF 75) to compel discovery

inevitably, he bumped heads with a fair number of colleagues. Wise is therefore able to meet the *Armstrong* standard of "some evidence" of discriminatory effect and purpose regarding selective enforcement. However, he has also urged this Court to recognize that other circuits have set a slightly lower bar for obtaining discovery on claims of selective enforcement, as law enforcement agencies do not enjoy the same presumption of regularity as prosecutors. ECF 75 at 11.

Furthermore, the government and the FBI seem to be strangely focused on Wise and do not care for other potential criminals that have committed grave harm. Wise has brought credible claims, and sought to provide tangible evidence, of an international wire fraud scheme to the FBI on multiple occasions. ECF 75 at 6–7. Yet, the FBI has refused to take any sort of investigative action on this even though nearly two hundred thousand dollars were taken via international wire fraud. *Id*. The FBI has not even conducted any investigation to see if other people were affected by the fraud. The opposition does not address this concern, yet it demonstrates that the FBI is keenly focused on Wise and does not care about other potential crimes that are being committed. This implies a vindictiveness in the prosecution against Wise as the government and FBI are dead set on finding ways to attack Wise while ignoring other crimes committed against him.

IV.  **Wise can show evidence of vindictive prosecution as the opposition is unable to contest that the timing of decisions in Wise's case creates a "realistic likelihood" of vindictive purpose.**

To establish a claim of vindictive prosecution, Wise must show a "realistic likelihood" that the government's charging decisions were motived by a vindictive purpose. *United States v. Meyer*, 810 F.2d 1242, 1246 (D.C. Cir. 1987). The government decided to seek peculiarly aggressive charges for *mere-words* "civil disorder" and "forcible assault" shortly after Wise signaled that he would not sign a protective order presented to him by the government. In its opposition, the

Page 9 – Reply to Government's opposition (ECF 89) to Defense motion (ECF 75) to compel discovery

government obfuscates the timeline and claims that its decision to file these new charges happened "separately" from Wise's refusal to sign a protective order. ECF 89 at 2. It represents that the protective order posed a "routine issue" that happened to be "litigated" simultaneously with the government's decision to seek increased charges. ECF 89 at 16. The actual timeline does not support this representation. Wise had his first appearance on May 9, 2023, and made his positions clear at that time. Defense counsel's notes on a meeting with the AUSA on May 24 make clear that the prosecution was already then cognizant of Wise's position, viewed him as "difficult," and intended to bring the additional charges.

As the opposition notes, timing is essential in evaluating whether a prosecutorial decision is likely motivated by vindictiveness. ECF 89 at 15. The threat of increased charges may be a legitimate bargaining chip during plea negotiations, just as the promise of dropping charges may be a legitimate inducement. *Bordenkircher v. Hayes* 434 U.S. 357, 360-61 (1978). And, while negotiating, the government may uncover additional information or realize that existing information has a previously unrecognized significance. *United States v. Goodwin* 457 U.S. 368, 381 (1982). But neither scenario is likely under the timeline of events here. The novel charges for *mere-words* "civil disorder" and "forcible assault" brought against Wise were not formally signaled during plea negotiations, nor are the rather creatively framed charges for assault something that prosecutors would have hit upon over the course of a few weeks, unless they were searching for it.

The government additionally argues that a defendant must point to "something more than routine invocations of procedural rights" as the trigger for vindictive enforcement. ECF 89 at 14, quoting *United States v. Michel*, No. 1:19-cr-148 (CKK), 2022 WL 4182342, at *8 (D.D.C. Sept. 13,

Page 10 – Reply to Government's opposition (ECF 89) to Defense motion (ECF 75) to compel discovery

2022). A routine invocation of a procedural right would be, presumably, exercise of one's right to a jury trial or the like. In refusing to sign the government protective order, Wise was exercising more than a routine procedural right. The very dispute over discovery engaged herewith shows the complexity of issues surrounding the January 6 prosecutions, and the extraordinary efforts the government has made to control information surrounding these events. Nothing here is routine. The inconvenience with which the government was threatened by Wise's refusal is more than sufficient to establish a "realistic likelihood" that he was subsequently punished with a indictment for *mere-words* "civil disorder" and "forcible assault."

## V.     Conclusion

For the above reasons, the Court should grant Wise's motion to compel discovery in support of his claims of selective prosecution, selective enforcement, and vindictive prosecution.

Respectfully submitted on August 12, 2024.

*s/Kurt David Hermansen*
Kurt David Hermansen, Cal. Bar 166349
Supervisory Assistant Federal Public Defender
859 Willamette St. Suite 200
Eugene, OR  97401
Tel: (619) 436-8117
Fax: (541) 465-6975
Email: kurt_hermansen@fd.org
