1           IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF COLUMBIA
2

3    UNITED STATES OF AMERICA,
                                        Criminal Action
4              Plaintiff,               No. 1: 23-184

5          vs.                          Washington, DC
                                        December 19, 2024
6    JARED LANE WISE,
                                        9:43 a.m.
7              Defendant.
     _____/
8

9              TRANSCRIPT OF MOTION HEARING
        BEFORE THE HONORABLE RANDOLPH D. MOSS
10             UNITED STATES DISTRICT JUDGE

11   APPEARANCES:

12   For the Plaintiff:      Sarah Wilson Rocha
                             DOJ-CRM
13                           219 S. Dearborn Street
                             5th Floor
14                           Chicago, IL 60604

15                           Taylor Fontan
                             DOJ-USAO
16                           601 D Street, N.W.
                             Washington, DC 20530
17

18

19           APPEARANCES CONTINUED ON NEXT PAGE

20

21

22   Court Reporter:        SHERRY LINDSAY
                            Official Court Reporter
23                          U.S. District & Bankruptcy Courts
                            333 Constitution Avenue, NW
24                          Room 6710
                            Washington, DC 20001
25

```
 1                        APPEARANCES CONTINUED

 2

 3       For the Defendant:      Kurt David Hermansen
                                 FEDERAL PUBLIC DEFENDER
 4                               DISTRICT OF OREGON
                                 Eugene Office
 5                               859 Willamette Street
                                 Suite 200
 6                               Eugene, OR 97401

 7                               Peyton Elizabeth Lee
                                 FEDERAL PUBLIC DEFENDER
 8                               District of Oregon
                                 101 SW Main Street
 9                               Suite 1700
                                 Portland, OR 97204

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
1                    P R O C E E D I N G S
2              THE COURTROOM DEPUTY:  We are here on criminal case
3    number 23-184, United States of America versus Jared Lane Wise.
4              Would counsel please state their name for the record,
5    starting with government counsel.
6              MS. FONTAN:  Good afternoon, Your Honor.  Taylor
7    Fontan for the government, along with my cocounsel, Sarah
8    Rocha, for the Government.
9              THE COURT:  Good afternoon.
10             MS. LEE:  Good afternoon, Your Honor.  Peyton Lee,
11   assistant public defender here with Mr. Wise who appears by
12   video.
13             THE COURT:  Good afternoon to you as well.
14             MR. HERMANSEN:  Good afternoon, Your Honor.  Kurt
15   Hermansen, supervisory assistant federal public defender here
16   in Eugene, Oregon also appearing on behalf of Mr. Jared Wise,
17   who is on the video.
18             THE COURT:  All right.  Good afternoon to you as
19   well.
20             Before we get going, let me confirm with Mr. Wise
21   that it his request that we proceed today by video conference
22   rather than doing this in person?
23             THE DEFENDANT:  Yes.  Thank you.
24             THE COURT:  All right.  So I don't know exactly what
25   you have on your list that you wanted to discuss today.  I did
```

1    want to hear from you further on the aiding and abetting and

2    First Amendment-related issues.  I have read the parties'

3    submissions.  Thank you for those.  And perhaps it makes sense

4    for me to start with the government on this.

5              So, Ms. Fontan, are you the one addressing this?

6              MS. FONTAN:  Yes, Your Honor, that is correct.  And

7    before we jump into the aiding and abetting and First Amendment

8    issues, I was wondering if the Court would be open to

9    discussion on the latest filing in this case, which is a

10   supplement to the motion to compel.  I don't know if Your Honor

11   wanted to discuss that first or wait until after we do -- we

12   talk about the aiding and abetting.

13             THE COURT:  If you all would prefer, I am happy to

14   discuss that first.  I have read that submission as well.

15             MS. FONTAN:  Okay.  Your Honor, if it is okay with

16   you, I think we would like to start with this supplemental

17   motion to compel.

18             THE COURT:  All right.

19             MS. FONTAN:  So as Your Honor knows, a couple of

20   nights ago the defendant did file a supplement to the motion to

21   compel discovery, which the original motion to compel discovery

22   for selective prosecution, vindictive prosecution and selective

23   enforcement is at ECF number 75.  And I am not sure if the

24   Court has had the opportunity to review the filing yet, but we

25   wanted to discuss this on the record today.  So --

1          THE COURT:  I did -- just so you know for purposes of

2     today, I have recently reviewed the submission that just came

3     in, in the past couple of days as docket 159.  I have not gone

4     back and re-reviewed the other submissions that parties have

5     submitted on this question.

6          MS. FONTAN:  Understood, Your Honor.  So as it

7     pertains to, I guess, reorienting ourselves on what has been --

8     what has happened I guess in this case related to the motion to

9     compel.  Originally, as I mentioned, this was filed on

10    July 3rd, 2024.  And we litigated this, as Your Honor knows and

11    discussed the motion to compel at multiple hearings at this

12    point, beginning on August 25th, 2024.  On October 4th, 2024,

13    the defendant, as part of his trial brief, moved to continue

14    the November trial date.  And in support of that motion, the

15    defendant cited to a couple of different reasons why that trial

16    needed to be continued related to the election, the fact that

17    the defendant needed additional time to prepare for trial and

18    in part on the fact that they were still waiting on documents

19    from the FBI.  And that is related to the FBI personnel file

20    that we have discussed many times at this point.  So on

21    October 21st, 2024, this Court continued that November trial

22    date and, in part, because the government was still in the

23    process of producing that FBI personnel file.  And during that

24    hearing, we discussed the personnel file as well as a couple of

25    other documents that the government would be turning over to

1    the defense.

2         In the minute order, and as we discussed in that

3    hearing, the defendant was to file any motion for selective

4    prosecution, vindictive prosecution that would mirror the

5    government's schedule, which was by November 21st.  Now, on

6    October 25th, 2024, the government produced a transcript of the

7    defendant's trainings with the FBI in addition to -- or also

8    introductory emails related to a tip that was in part beginning

9    this investigation.  The government also produced the FBI

10   personnel file to the defense on November 15th, 2024.  The

11   government at that time also informed the defense that there

12   were no formal psychological evaluations as part of the

13   defendant's record, as these psychological evaluations weren't

14   done regularly and there wasn't any FBI personnel file in the

15   FBI's files that indicated that the psychological evaluation

16   was done by the FBI.

17        So between the last hearing and October -- or I'm

18   sorry -- and November and now, counsel -- we have met multiple

19   times to discuss exhibits, potential stipulations and the

20   motion to compel that was filed on Tuesday was the first time

21   that we had any notice on those -- the documents that were

22   requested in that motion to compel.

23        And as the Court knows, and looking at the docket,

24   there has since, I guess, July of this year, there has been no

25   motion for selective prosecution, no motion filed for

1    vindictive prosecution or for selective enforcement.  And so

2    the government -- the reason we wanted to talk about this today

3    and felt it was necessary is just given the timing of this

4    motion to compel, which was filed over a month after the

5    government -- after the government produced the last of the --

6    of the documentation, weeks past the deadline and now three

7    weeks before trial, it is important to talk about it.  And we

8    are just kind of at a loss about how to move forward and how to

9    respond to this.

10           And given the reasons for moving the trial -- or the

11   reasons that the defense provided last time of moving the

12   trial, we wanted to address that motion to compel.  So we are

13   asking the Court to deny the motion to compel for a lot of the

14   same reasons that we have already discussed because -- well,

15   first, there is no new information to substantiate a motion to

16   compel.  Based on the information that is provided in the

17   newest motion to compel, this is all -- none of this

18   information is new from the personnel records or additional

19   discovery.  All of this is just more -- I guess more

20   information that the defense has been sitting on this entire

21   time.  So there is really no excuse of why the timing in this

22   case -- the timing of the motion to compel is at all

23   appropriate.  And it further just supports why this is all just

24   personal conclusions based on anecdotal evidence.  Quite

25   frankly, the motion to compel reads as a list of grievances

1    just generally against the FBI and generally against the

2    government, which is not grounds for a -- is not grounds for a

3    motion to compel.  The defendant, as this Court knows, the

4    defense evidence must be credible and something more than

5    personal conclusions based on anecdotal evidence.  And the

6    defense hasn't met that standard in this case.

7            And putting all of that aside, none of the

8    information that is requested by the defendant supports a

9    selective or vindictive prosecution motion and I think that is

10   really why this motion should be denied.  As I think we

11   discussed again multiple times when talking about the selective

12   prosecution issue, over 1,000 people at this point have been

13   charged with conduct similar to the defendant.  Others have

14   been charged under the aiding and abetting theory, others have

15   been charged based on gesturing and words.  And, most

16   importantly, there is no credible connection between the

17   information that has been provided in the motion to compel and

18   the prosecution in this case.

19           There is -- I mean, there may be a lot of information

20   in the motion to compel, but there is no connection with how

21   that has anything to do with the prosecutorial decisions in

22   this case.  And, Your Honor, I can go through all of these

23   facts.  But I just don't think it is -- I think it is a waste

24   of time at this point, because we still run into the same

25   issue, which is there is no -- there is no connection between

1    all of this information and the prosecution in this case.

2              And so for those reasons, we do ask the Court to deny

3    the motion to compel.  I also as -- I guess as part of our

4    request to -- for the Court to deny this motion to compel, we

5    also wanted to take the opportunity to correct a couple of

6    materially untrue statements that were in the briefing.  The

7    first -- there were a lot of statements that were in the motion

8    to compel that were not necessarily true, but there were two

9    that we wanted to just correct on the record today.  And that

10   is first that the government made one informal comment to Wise

11   that any plea offer would require Wise to plead guilty to at

12   least one felony charge.  Your Honor, I would like to point to

13   ECF number 20 and number 21, which are both joint status

14   reports signed by defense counsel and by the government.  The

15   first joint status report stated that the parties had discussed

16   whether a plea resolution is possible in this matter, but the

17   parties had been unable to reach a plea agreement on any plea

18   terms.  And then a few months later in another joint status

19   report, it stated that the parties have discussed whether a

20   plea resolution is possible in this matter, but the parties do

21   not anticipate being able to reach an agreement on any terms.

22             And then the second thing, Your Honor, that we wanted

23   to just bring to the Court's attention, in the motion to compel

24   defense stated that in August 2024, the government sought new

25   charges against Wise related to him contacting GED about GED's

1  fraud, but those efforts were not successful.  In response to

2  failing to secure a new indictment, the government then

3  obtained revised release conditions, which prevented Wise from

4  having any direct or indirect contact with GED.  This is

5  factually just incorrect.  The government did not seek out new

6  charges in this case in August of 2024.  The government did not

7  fail to secure a new indictment and no new charges were

8  presented to a grand jury.  And defense knows this, because

9  they were provided these transcripts and were provided the

10  information related to this.  So with that, Your Honor, again,

11  we rest for the majority -- for the majority of this on our

12  previous briefing and in our previous oral argument.  Because,

13  again, for the same reasons, this motion to compel should be

14  denied.  And there is not new information in this motion that

15  should change that.

16       And the defendant has not met his burden of putting

17  some evidence tending to show both that discriminatory effect

18  and discriminatory -- I'm sorry -- and discriminatory effect

19  and discriminatory intent.

20       THE COURT:  All right.  Mr. Hermansen.

21       MR. HERMANSEN:  Yes.  I'm sorry.  It took me a minute

22  to find the unmute.

23       Yes, Your Honor.  So as the Court can see from the

24  filing, it says supplement to number 75, so ECF 75 is the

25  motion.  We only have one motion to compel discovery for

1     selective prosecution, vindictive prosecution and selective

2     enforcement.

3              ECF 159 is intended to provide additional factual

4     support for the factual allegations for Mr. Wise to support

5     that motion and show -- and this stems from things that came up

6     during the motion hearing and questions that I frankly couldn't

7     answer.  And I remember at one point Mr. Wise chimed in and was

8     able to answer questions about the FBI and from people who work

9     for the FBI and people who might have reasons to, you know,

10    selectively enforce against him.  And so that is what this

11    filing does is put into the record those facts more clearly

12    from someone who knows those facts.

13             And then the -- and so ECF 75 -- my understanding is

14    that the Court deferred ruling on that.  And where we left it

15    was that the Court made some indications of what should be

16    turned over.  We had a discussion of what should be turned over

17    from the FBI file.  And that was something that Ms. Lee worked

18    on with the government.  They did meet and confer and we

19    received some information from that.

20             What is missing from what we received is incorporated

21    into -- what is absent from what we received is what is

22    incorporated in 159.  So that is our position on 159.

23             As far as the -- I can personally speak to offers in

24    this case.  And it is -- you know, I will swear under penalty

25    of perjury, there has only been one offer and that is that he

```
1    would have to plead to a felony.
2              THE COURT:  I'm sorry, Mr. Hermansen.  Before you go
3    further, that is not what the brief says.  The brief says there
4    was a passing comment.
5              MR. HERMANSEN:  Correct.
6              THE COURT:  That is not a plea offer.  A passing
7    comment is not a plea offer.  And so I think that is the
8    question about whether there ever was an offer that was made,
9    an actual discussion of a plea.  And, in fact, when I read your
10   submission, the question I noted in the margin was, did you
11   respond?  And if you --
12             MR. HERMANSEN:  Yes.
13             THE COURT:  If the government said in passing to you,
14   we'll only accept a felony and you said, that is nothing we are
15   going to do, it is hard to imagine that would be evidence of
16   selective prosecution.
17             MR. HERMANSEN:  It is the order of events.  So
18   originally there was a complaint with four misdemeanors.  Then
19   we filed the motion opposing the protective order.  Then I
20   talked with the prosecutor who is no longer on the case.  And
21   when we talked -- I forget if it was on the phone or video.  I
22   think it was video.  But we talked in person.  It was Anthony
23   Mariano.  And he explicitly said to me, after we filed the
24   motion opposing the protective order, we are going to add
25   felonies and the only -- I don't know if it was -- I think they
```

1    were going to add felonies or -- but it was very clear, there

2    will be no plea offer to any misdemeanors.  He will have to

3    plead to at least one felony.  And so that was -- that was the

4    extent of the plea discussions.  And I did respond that, well,

5    yeah, we are not going to plead to a felony, because I have

6    always viewed the felonies as overcharging in this case.

7              THE COURT:  Given that discussion, I don't understand

8    why you are complaining that the government never presented any

9    formal offer.  If you said, we are not going to accept a felony

10   and the government has said, it has to be a felony, why in the

11   world would the government need to present a formal offer to

12   you?  What good would that do?

13             MR. HERMANSEN:  You are correct, Your Honor.  It was

14   inartfully stated and better stated as there was an impasse,

15   where he was required to plead to a felony.  And so there was

16   no formal offer because of that impasse.

17             THE COURT:  Okay.

18             MR. HERMANSEN:  So that is my understanding, Your

19   Honor, is that ECF 75 is still pending.  And as we are talking

20   about the order of events, I would also ask that if we could

21   please talk about experts, before we talk about causation.

22   Because we have three experts and we need to pay for their

23   travel and hotel if they are going to be allowed to testify.

24   And they need to plan.  And I have two experts who have other

25   conflicts that they are turning down.  So it would be great if

1    we can determine as soon as possible if they are going to be

2    permitted to testify.

3           THE COURT:  Let's spend at a least few minutes on the

4    selective prosecution and vindictive prosecution, because I did

5    have a couple of questions I just wanted to ask you about.  And

6    you are the one who wants discovery before trial.  If we wait

7    too long on this, that becomes moot.

8           But I suppose the question -- first question I have

9    is, in your view, is the selective or vindictive prosecution

10   the bringing of any charges at all in the first place or is it

11   the adding of the felony charge?

12          MR. HERMANSEN:  Personally, I think it is the adding

13   of the felony charge, but part of it is also the way -- in

14   addition to that, the way they went about the investigation of

15   this case.  And I think we put in the words, the process is

16   part of the punishment.  I think the government has a different

17   view of this, but -- and they have a broader view.  But my view

18   of this case is, I think their view is that it is not

19   extraordinary to do an incredibly in-depth surveillance of a

20   January 6 defendant.  But I haven't seen that in the other

21   discovery.  So -- and maybe it is something I don't have access

22   to.  But what I do know is they went to extraordinary lengths

23   in surveilling Mr. Wise.

24          THE COURT:  I can tell you from other cases --

25          We have lost Mr. Wise.  Let's make sure he is here.

```
1              Okay.  Yeah.  Thank you.  I think maybe --
2              Mr. Wise, did you just turn the video off?
3              THE DEFENDANT:  No.  It dropped for a second but
4     reconnected by itself.
5              THE COURT:  Okay.  Good.  Thank you.  I wanted to
6     make sure you are here.
7              I was just going to say, Mr. Hermansen, I --
8     obviously, my knowledge is not exhaustive of this, but I have
9     certainly seen other January 6 cases with very extensive
10    surveillance where similar complaints have been made of FBI
11    agents spending extended periods of time staking out somebody
12    and why were they doing that, so it doesn't strike me as
13    unusual in that regard.
14             MR. HERMANSEN:  And then part of the motion is which
15    I think -- I think the Court talked to this already and from
16    the Court's comments, I think the Court found this case not
17    similarly situated to cases like the Portland courthouse and my
18    argument there was that is the halls of justice.  That is where
19    justice takes place.  It is our modern temples.  And an assault
20    on a courthouse with extreme damage that took forever to fix
21    cannot be argued is similar to invading the US Capitol,
22    different, but similar enough.
23             THE COURT:  So is it your argument then is that all
24    of the January 6 cases should be thrown out on that ground?
25             MR. HERMANSEN:  No.  I think it depends on the
```

1    conduct.  So in Portland, some of the conduct was, you know,

2    pretty extreme and not charged.  And I understand part of that

3    is just allocation of prosecutorial resources and law

4    enforcement resources.  But it just smacks as political that

5    a -- you know, a democratic administration -- whether it is a

6    democratic administration -- a democratic administration is

7    making the decision to vary across the -- you know, just not

8    offer plea deals that I have seen in 24 years of doing federal

9    work and just argue -- just the whole approach to the case, the

10   way they argue everything, like the exclusion of experts in

11   this case, there -- I think is included in the whole top-down

12   instructions of how to very harshly approach these cases, where

13   I am citing cases that show it is not just error, but

14   reversible error to exclude testimony on dissociative state.

15           THE COURT:  You are a citing California intermediate

16   level court, decisions on California law saying that, to be

17   clear.

18           MR. HERMANSEN:  Correct.

19           THE COURT:  So it is a little hard to come in and say

20   this shows that the government is being extraordinarily harsh

21   in this case as they are not considering themselves bound by

22   California law, following California procedure.

23           MR. HERMANSEN:  Correct, it is not binding.  But I

24   think it is the -- I mean, I found that reasoning very

25   persuasive.  And that was a serious case, right, with being

1    stabbed 15 times -- very extreme conduct.  To overturn that

2    conviction, it required a new trial I think says a lot.  It is

3    very rare to see that.  So that is why I thought that was

4    informative.

5            THE COURT:  Anything else you want to add on the

6    selective or vindictive prosecution motion?

7            MR. HERMANSEN:  No, Your Honor.  I think we can

8    submit on the extensive briefing that we filed in the case.

9            THE COURT:  All right.  Well, I will issue an order

10   on that in due course.  So who wants to be heard then first

11   with respect to the experts and turning to that question?

12           MR. HERMANSEN:  Your Honor, it is the government's

13   motion, but I will be responding.

14           THE COURT:  All right.  So why don't we start with

15   the government?

16           MS. ROCHA:  Your Honor, we split up, as I think you

17   could probably tell from your prior *Daubert* hearings -- split

18   up the different experts.  So I think I can -- I know the Court

19   has reviewed, obviously, the filings in this case and,

20   obviously, the participation in the *Daubert* hearings.  I will

21   start with Dr. Best.  I think from the government's --

22           THE COURT:  I'm sorry.  Just before you do that, I

23   just want to -- it is not clear to me there is a dispute

24   anymore with respect to Mr. Cohen.  And I just wanted to

25   clarify that.  But my understanding is that the government does

1     not object to Mr. Cohen testifying and offering summary

2     evidence under Rule 1006 relating to the location of

3     individuals and the layout of the terrace and where everyone

4     was located.  And it is also my understanding that he is no

5     longer seeking to testify or is not seeking to testify as an

6     expert on other topics.  But why don't we just clarify that and

7     maybe we can cross that one off the list.  Do you agree with

8     that, Mr. Hermansen or Ms. Lee?

9              MR. HERMANSEN:  Yes, Your Honor.

10              THE COURT:  Okay.  All right.  So I think we can

11     cross Mr. Cohen off the list then as an issue, not cross him

12     off the list as a witness, but his testimony is limited and

13     unobjected to at this point.

14              MS. ROCHA:  Yes, Your Honor.  We certainly view it

15     appropriate as summary testimony.  I would just for clarity, in

16     addition to him not providing any expert testimony on acoustics

17     and the like, I think similarly the gloss of what, you know,

18     was described in his Rule 16 disclosure, I think we would

19     object to that.  But certainly, you know, there is -- I think

20     it meets all of the standards for summarizing testimony and

21     certainly is a valid witness for those -- for the work that he

22     has done.

23              THE COURT:  I will simply let you reserve for trial

24     if you think his testimony exceeds appropriate grounds at trial

25     you can raise an objection at that time.

1          MS. ROCHA:  That sounds good, Your Honor.  And I

2     think you are right that is sort of the easiest way.  I think

3     similarly as to Dr. Best, perhaps the easiest way to approach

4     her testimony is to kind of take her opinions and break them up

5     a little bit starting with her opinion as to Mr. Wise's

6     reaction as compared to other individuals with law enforcement

7     training and experience.

8          As the government described in its filings,

9     specifically in 151 starting on page 11, that testimony should

10    be excluded.  It doesn't fit the standards for expert

11    testimony.  I think as she admitted in the *Daubert* hearing, not

12    only would that be irrelevant, but it also was not based on all

13    of the standards that are required that is -- you know, there

14    is nothing in the literature or, you know, any kind of -- any

15    of the other reasons that would meet the criteria for that

16    statement.  And so I think for her, I think that is, you know,

17    perhaps an easier call as to her testimony.  We obviously agree

18    that she has, you know, all of the requisite kind of

19    qualifications for the work that she does.  But the Government

20    does believe that she doesn't -- her opinion in this case does

21    not satisfy 702 for a couple of reasons.  Primarily, she didn't

22    consider whether her opinion was influenced by whether Mr. Wise

23    was the perpetrator or not here and as well insufficient

24    testing as to whether he was malingering.  But in addition, I

25    think the government's -- you know, the government is

1    significantly concerned here about Rule 403 and the dangers of

2    her testimony becoming essentially a backdoor to introducing

3    inadmissible hearsay or giving excuse or justification.  So as

4    the government has set out in its briefing I think to the

5    extent that the Court were to entertain allowing Dr. Best to

6    testify, it is the government's position that that would

7    only -- that would only be appropriate after Mr. Wise

8    testified.  And if so, then it would be kind of extremely

9    limited to prevent -- to prevent the, you know -- to prevent,

10   you know, kind of all of the reasons of 403 that it would be

11   unduly prejudicial.  It would be confusing to the jury.  I

12   think it would have to sort of first hit the point where his

13   credibility was questioned and then, even in that situation,

14   very narrowly tailored.

15            We are happy to answer any questions the Court has.

16            THE COURT:  Why don't I hear from Mr. Hermansen and

17   then I will give you a chance to reply.

18            MR. HERMANSEN:  Your Honor, so the government

19   concedes the Dr. Best's testimony is relevant and admissible

20   regarding Mr. Wise's memory loss.  And the issue is to -- but

21   it appears they want to exclude everything else.

22            THE COURT:  What I would say is what their position

23   is, it may be relevant to his memory loss if that becomes an

24   issue in the case.

25            MR. HERMANSEN:  Correct.  And to -- but to explain

1    Mr. Wise's memory loss, Dr. Best needs to testify about

2    dissociative states, because the two are -- in this case are

3    inextricably intertwined.  And as the Court says the case where

4    they reversed finding reversible error, dissociative state

5    evidence is key to a defense.  And Dr. Best will be testifying

6    consistent with the expert in *Cortez* as to Mr. Wise's mental

7    state prior to the alleged offenses, Dr. Best's testimony will

8    educate the jurors about dissociation being a proxy for panic

9    as it speaks to Mr. Wise's emotional state and his state of

10   mind without going into the mens rea issue and without --

11   because the mens rea issue is for the jury.

12          So the government argues that also, you know, there

13   is this risk of confusion, especially tying in this case

14   given -- they termed Dr. Best's opinion as imprecise.  And

15   specifically, they argue that the testimony is inherently

16   confusing, because her opinion isn't that he -- isn't a

17   diagnosis of dissociative state.  And as we previously

18   discussed at length at the hearing -- we really probed this

19   and, Your Honor, you probed it, you inquired.  And I think from

20   the transcript we all fully understood that dissociative

21   disorder diagnosis is not necessary to the symptomatic

22   appearance of dissociation.  It is better accounted for,

23   according to the expert, by peritraumatic dissociation.  And I

24   think that is revealed by the questions that the government

25   asked.  The government pointedly asked Dr. Wise -- I mean

1    Dr. Best if she had administered the peritraumatic dissociation

2    questionnaire, which is a significant risk factor for PTSD.  So

3    his diagnosis is PTSD, which can't be diagnosed before.  But

4    her diagnosis is consistent with the psychologist Mr. Wise went

5    to right after January 6.  And his dissociative state or the

6    partial amnesia is subsumed within the -- not only is it

7    subsumed within the PTSD diagnosis, it is an important

8    component of that diagnosis.  Because if he remembered every

9    single detail of the event with clarity, then he would -- it is

10   an indication that it wasn't a traumatic event for him and it

11   wasn't an event that would result in PTSD.

12          And I think it is noteworthy that on the government's

13   witness list is Officer Niewenhous who has previously testified

14   in a trial that from January 6 he suffers from PTSD.  So I know

15   that at that trial where he testified it was a surprise to

16   defense counsel.  They hadn't heard that.  They hadn't received

17   any reports that Officer Niewenhous had PTSD.  And so it is

18   not -- and Dr. Best did say it is not relevant to whether --

19   she is not looking at whether PTSD is exclusive to whether you

20   are charged with a crime or whether you are the victim of

21   abuse.  I mean, this isn't a case where Mr. Wise was hitting

22   someone with a stick and then saying I have PTSD because I hit

23   someone with a stick.

24          His PTSD and his memory loss is related to -- is

25   because of how traumatic that whole event was for everyone.  It

1    was like a war zone at some point.  At some points, it was calm

2    for hours.  We have videos of police standing in a line for a

3    full hour with nothing going on.  But we do have periods early

4    on with lots of grenades, lots of tear gas, lots of, you know,

5    strikes with batons that Mr. Wise will testify that he

6    witnessed.

7              THE COURT:  So can I ask you a question?  What do you

8    anticipate -- it is obviously Mr. Wise's decision about whether

9    he testifies or not.  And he doesn't have to make that decision

10   now.  But I am curious about whether you anticipate in

11   particular by way of the order of presentation -- because one

12   of the things the government raises as a concern is that, at

13   least at some point, Dr. Best's testimony could simply become a

14   back door for Mr. Wise testifying without having -- being

15   subject to cross-examination himself.  And that if Dr. Best

16   takes the stand and says, he told me he feared for his life, he

17   told me that he heard that the police had killed a woman that

18   day, he told me that he saw people being beaten with batons,

19   and that is all in front of the jury, that raises a fairly

20   significant 403 issue.  That 403 issue is obviously, diminished

21   substantially if Mr. Wise himself testifies and is subject to

22   cross-examination.  I am curious as to what you are

23   contemplating in that regard.

24             MR. HERMANSEN:  So as far as the order of witnesses,

25   I would anticipate calling the experts first and then Mr. Wise.

1     But I wouldn't call Dr. Best to testify about anything that

2     would require Jared Wise's testimony.

3              So let me restate that.  Mr. Wise would need to

4     side -- we anticipate he will testify.  I will just -- we don't

5     have to say that, but I think it is important for this motion

6     that the Court know that.  So we anticipate that he will

7     testify.  As the Court knows and Mr. Wise knows, only he can

8     make that decision.

9              THE COURT:  Correct.  But he can only make it after

10    he hears the evidence in the case.

11             MR. HERMANSEN:  Yeah.  The most informed decision

12    after he hears the evidence.  He is -- we are working closely

13    with him and making him well aware of what the case is going to

14    look like.  So we are working very closely with him and we

15    anticipate that he will testify.

16             So, you know, we are going to have a conversation

17    with him before we call any expert who would testify about

18    anything that wouldn't be relevant, except he testifies say,

19    for example, memory.  So if he is not going to testify, then

20    whether he remembers why he said certain words or remembers

21    going to the Capitol, you know, I can understand that might --

22    that the Court might say, okay, well, that is not going to come

23    in.  So I think this is more of an issue at trial and not

24    something that, you know, we can definitively decide today, but

25    I understand that -- I understand the concerns.  But I have

1    another response to that as well.  And because this is the

2    general, you know, impression I got from the government's --

3    and the problem with -- of the government's motion is that they

4    paint Dr. Best's testimony with this broad hearsay brush.  And

5    the government's argument, you know, taken to -- not even an

6    extreme, but taken to its logical conclusion is basically

7    saying that we should exclude lots of -- I mean, it is normal

8    for experts to rely on hearsay, first of all.

9         Second --

10        THE COURT:  That is true, although it is not normal

11   for an expert to be relying on testimony from the defendant in

12   a case where the government cannot call that person, because

13   that person has a right not to testify and where it is so

14   central to the case.  And so I think that is sort of part of

15   the issue here.  And I am not saying that she can't do it, but

16   I am saying there may be limits on it.  And I suppose, possibly

17   if Mr. Wise decided not to testify, I might have to strike

18   portions of her testimony and tell the jury to disregard

19   portions of her testimony if it raises this 403 problem of

20   where the potential prejudice of backdoor testimony from

21   somebody who is not subject to cross-examination substantially

22   outweighs any probative value of her getting into all of the

23   detail about everything that he said to her.

24        MR. HERMANSEN:  Yeah.  I agree completely with what

25   the Court is saying, because that is -- you know, that is like

1    kind of an on the ground call that the Court has to make.  And

2    that would be -- that would be a nightmare for the defense if

3    we -- if we call the experts and the experts say something that

4    is then excluded under 403 and they are told to forget it.  I

5    mean, that is the last thing I want.  And that is why -- you

6    know, we -- you know, we promise that we will be very careful

7    in discussing these matters with our experts and with Mr. Wise

8    to make sure that that doesn't happen.  And I think there

9    aren't really -- I don't know specifics that like hearsay

10   specifics that Dr. Best would testify to that is -- that speaks

11   to what some of the cases talk about, which is the fear of

12   backdooring in hearsay through an expert.  And that is

13   gamesmanship and inappropriate and that is not what we are

14   trying to do.  What she -- the few statements that she is

15   relying on that might come into evidence are important to her

16   diagnosis.  So I mean -- and getting back to --

17              THE COURT:  So what are those statements then?

18              MR. HERMANSEN:  I don't know -- that is what I am

19   saying is the government hasn't identified specific statements

20   to back up the argument that we are trying to backdoor in

21   hearsay, because we are not.

22              THE COURT:  So she is not going -- as far as you

23   know, she is not going to say, for example, that Mr. Wise told

24   me that he feared for his life that day, he told me he had

25   heard there was somebody who had been killed that day, he told

```
1    me he saw people being beaten with batons that day?
2              MR. HERMANSEN:  Well, those are good -- yes, those
3    are key to her diagnosis.
4              THE COURT:  So that is significant hearsay that she
5    would be offering.  And she would be offering it in support of
6    her diagnosis, but it also raises this fairly significant 403
7    issue --
8              MR. HERMANSEN:  Correct.  So I think --
9              THE COURT:  -- if he doesn't testify.  If he
10   testifies himself, this is not a 403 issue at least to the same
11   degree.
12             MR. HERMANSEN:  Yes.  I think it is something we need
13   to be very careful about during trial.
14             THE COURT:  Yeah.  I mean, one thing -- you know, I
15   have to say, I don't want to in any way put a thumb on the
16   scale with respect to Mr. Wise's decision about whether to
17   testify and when he makes that decision.  That is entirely up
18   to him.  But the Court might be prepared to provide the experts
19   with a substantially longer leash if the experts were simply
20   testifying about information that was already in the record
21   because he, for example, had already testified and they were
22   relying on that, rather than my running the risk that I might
23   have to exclude and there is also, you know, the concern that
24   once the jury hears something, it is more difficult to erase it
25   from their memory once they have heard some testimony and to
```

1    say, please disregard that.  So I might have to apply a much

2    shorter leash as to what I allowed her to testify to, if it is

3    before Mr. Wise testifies, if he does testify.

4              MR. HERMANSEN:  Understood.

5              THE COURT:  Okay.  So, you know, I think, as I have

6    previously indicated, the other thing is that it may be that

7    all of her testimony gets struck if it turns out that

8    Mr. Wise's memory is not an issue in the case.  And one of the

9    main reasons that you have offered as to why you need her as a

10   witness is you anticipate that the jury may find it hard to

11   believe that Mr. Wise doesn't remember events that day and you

12   want to anticipate that attack on his credibility by offering a

13   witness to say, no, no, no, he really doesn't remember things.

14   And the reason he doesn't remember things is for good reason

15   and here is the good reason.  And that is a couple steps

16   removed.  That is not really an issue in the case until his

17   memory is at issue in the case.

18              And, again, that -- it is tricky here, because if

19   Mr. Wise were just any witness in the case, I might tell you

20   that you had to call him first.  Because he is defendant in the

21   case, I am not going to tell you that.  But it does inject some

22   uncertainty in this case.  And if it turns out his memory is

23   not at issue in the case, it may be that most if not all of her

24   testimony is just irrelevant and extremely prejudicial as

25   compared to its relevance because the relevance is zero.  And

1    it is backdooring in testimony that wouldn't otherwise be

2    presented to the jury, if Mr. Wise, for example, doesn't

3    testify or if his memory is not at issue in the case.

4              MR. HERMANSEN:  Yeah, I am -- I have an extremely

5    high degree of confidence that his memory will be an issue and

6    questioned in the case.

7              THE COURT:  And then the other question I had for you

8    is with respect to the mens rea issue, I think I don't know if

9    anyone has really completely connected the dots for me on that

10   issue.  Because what I understand Dr. Best's expert opinion to

11   be is that one who is suffering from dissociation can

12   experience disrupted consciousness, memory loss, identity and

13   possibly his perception of the environment around him can be

14   affected.  I suppose the question for you is, how are any of

15   those things related to mens rea in this case?  I mean, for

16   example, I wouldn't think that his memory relates to mens rea

17   or his identity.  And don't really know what the theory is if

18   the theory is that he misunderstood his environment in some

19   way?  And we never got into that level of detail in any way

20   with Dr. Best about sort of the connecting the dots as to how

21   it is that the symptoms of dissociation tie into the intent or

22   other mens rea standards that apply here.

23             MR. HERMANSEN:  So there are six counts and a number

24   of them have, you know, specific intent.  We have an aiding and

25   abetting --

```
1              THE COURT:  No.  No.  I understand that mens rea is
2     at issue.  My question is, how do the symptoms of dissociation
3     connect to the mens rea?  In other words, how could a
4     reasonable jury conclude that, oh, he couldn't have had the
5     mens rea here, because his memory was affected or because he
6     had some issue relating to his identity.
7              We have lost Mr. Wise again.  Let's wait until he
8     gets back.
9              He's back.
10             MR. HERMANSEN:  So I think dissociation also goes to,
11    you know, you're like -- I don't have her quotes right in front
12    of me.  But it is your -- it is similar to auditory exclusion,
13    which we'll talk about later.  But your eyes are working, your
14    ears are working, your senses are working.  You are able to
15    ambulate.  You walk around, but it is not -- you are -- not
16    only are you not forming memories, but you are -- you are
17    acting in and out of like an automatic state like an automaton.
18    So like in the Cortez case, you know, the 13 stab wounds, the
19    testimony is, you know --
20             THE COURT:  That is part of what you got me thinking
21    about this is there actually was testimony in the case that
22    drew that connection.  And I just haven't seen that here.
23    Maybe I need to go back and read what she said at the Daubert
24    hearing again.  But sort of reading your brief, you don't refer
25    to anything.  And I don't recall anything where she said, no,
```

1    here is a particular symptom that I have identified in my

2    expert report, because we are now too late in the process to be

3    introducing new issues with respect to experts.  Here is a

4    symptom of dissociation, which is itself a symptom of PTSD that

5    under the circumstances can result in someone engaging in

6    unintentional action or can engage in someone not knowing what

7    they are doing, whatever it might be.  I just don't see that.

8    And that is something that I need to better understand before I

9    would allow in any expert testimony and I have to conclude that

10   it has been appropriately disclosed at this point.

11            MR. HERMANSEN:  Unless Ms. Lee has an argument on

12   that, I would like to defer.  I would like to confer with

13   Dr. Best.  I wasn't really prepared to answer this question.

14            THE COURT:  Ms. Lee, anything you want to add?

15            MS. LEE:  I think I will say and I am happy for us to

16   sort of supplement, but I do think she attempted to explain

17   this in discussing the ways that people respond and the way

18   that connects to their -- respond to trauma reactions and the

19   way that connects their capacity to form a particular intent.

20   So there was a portion of testimony regarding that, that I

21   think was her effort to draw that connection without reaching

22   the issue that is left for the jury, which is the ultimate

23   legal determination.

24            THE COURT:  All right.  What I will do then is I know

25   you all need to just make plans for travel and all of that.  I

1    need to go back and look at that again.  I do think at this
2    point supplementing her expert report is too late in the
3    process and that would be unfair to the government to be
4    building the report out further at this point in the process.
5    But I will go back and look at her report and look at her
6    testimony on this.  And if need be, we can follow up before she
7    actually takes the stand.  But my tentative ruling at this
8    point -- and you are free to revisit before trial, but to the
9    extent people need to make travel plans would be with the
10   assumption that Mr. Wise's memory is going to be at issue, to
11   allow her to testify with respect to dissociation and its
12   affect on memory.  I need to think a little bit further about
13   how much of that I am going to allow her to get into, making
14   the diagnosis with respect to Mr. Wise based on things that he
15   said to her before I really know whether those are otherwise
16   going to be subject to cross-examination and come into the
17   case.  And that is just the 403 issue, to my mind.  I think
18   that this evidence with respect to memory at least, at this
19   point in the case is not particularly central to the case.  And
20   so I think its probative value is not particularly high, but it
21   is not -- it is potentially material in the case, to the extent
22   that Mr. Wise's memory becomes an issue in the case.
23           But it is certainly, at this point, speculative that
24   it will be an issue.  If it is an issue, it is not one I think
25   that is likely to be central to the case in ways in which

1    psychiatric testimony is essential for him to explain why he

2    doesn't remember things, but it could be in some respect.  But

3    I just have to decide how much detail she can get into with

4    respect to what Mr. Wise told her about what he perceived that

5    day in order to facilitate her diagnosis.  And so we may have

6    to work that out at trial, but my inclination now would be to

7    allow her to testify about memory.  It would be easier after

8    Mr. Wise testifies, then we really know whether his memory is

9    at issue and whether she is offering hearsay that would never

10   be subject to cross-examination in any way that is potentially

11   highly prejudicial in the case.

12          But I also recognize that Mr. Wise has the right to

13   decide whether he is going to testify and to wait and see what

14   the evidence is before he does so.  So we may need to face this

15   issue before he decides whether to testify, in which case my,

16   at least current inclination, would be to allow Dr. Best to

17   testify but only in a limited extent and perhaps with some

18   cautionary instructions with respect to this issue and in

19   particular with respect to memory.

20          With respect to her testimony about law enforcement

21   and people with law enforcement training typically running

22   towards or moving towards danger rather than away from that, I

23   am not convinced at this point that that qualifies as expert

24   testimony under *Daubert* or that she has relevant expertise that

25   can be tested and is sufficiently reliable under the *Daubert*

1    standards with respect to how law enforcement people with law
2    enforcement training respond and move towards or away from
3    danger.  It is also at this point not entirely clear to me
4    whether this is relevant or how relevant it is in the case
5    about him moving towards or away from things maybe that will
6    become more apparent to me as the evidence is presented in the
7    case.  But in addition to being unconvinced that she has
8    relevant expertise and labeling her testimony about her
9    knowledge and appearance about how law enforcement responds or
10   how people with law enforcement training respond, I think there
11   is a danger in labeling that as expert testimony in ways that
12   would give undue weight to it with the jury where it really is
13   not tested or subject to generally accepted standards in any
14   way or, frankly, different from anything that lots of people
15   might be able to testify to just based on what they view versus
16   any particular expertise that she brings to bear.  And as I
17   said, in addition to the *Daubert* concerns, I also have a 403
18   concern about that testimony too.  Because at least at this
19   point it is not at all clear to me how relevant that is.  And
20   even if one moves towards danger rather than away from it as a
21   law enforcement officer, that still doesn't explain why moving
22   towards something and then yelling, kill them, kill them, is
23   connected.  And the government isn't charging Mr. Wise with
24   having moved towards rather than away from dangerous
25   circumstances or loud noises or anything like that.  So my

1      tentative view would be to not to allow her to testify on that

2      issue.

3              And then with respect to her testimony with respect

4      to mens rea I think for the reasons I indicated, I just have to

5      go back and look at the transcript and her report on that just

6      to see if it connects the dots in any meaningful way between

7      the symptoms of dissociation, which itself is a symptom of

8      PTSD, and one's ability to act intentionally or knowingly under

9      relevant circumstances.  So I hope that provides you with

10     enough guidance to get ready for trial and some of this we'll

11     have to work our way through trial.

12             MR. HERMANSEN:  Yes, Your Honor.  So I would just

13     submit that pages 17 through 19 lay out Dr. Best's extensive

14     national experience as an expert, especially related to law

15     enforcement --

16             THE COURT:  I'm sorry.  Seventeen through 19 of

17     docket 154?

18             MR. HERMANSEN:  Yes, Your Honor.

19             THE COURT:  I have read that just earlier today, so I

20     am familiar with that.

21             MR. HERMANSEN:  So my argument would be that she is

22     well qualified to testify about how law enforcement would

23     react.  And it would -- and the reason it is relevant is I

24     think the government is going to argue that Mr. Wise was there

25     from about 1:30 to 4:30 and had lots of opportunities to leave

1    and never left and could have left and didn't need to go toward

2    the grenades and go into the crowd.  And so --

3              THE COURT:  But even with that, I guess I have to say

4    I still don't even understand how that is relevant.  Because he

5    wasn't there as a law enforcement officer.  And unless you are

6    saying there is some psychological condition, which I think

7    there is no evidence to suggest that law enforcement officers

8    are compelled to move towards danger, not to leave when they

9    see it, I just it strikes me as more prejudicial than probative

10   to suggest that there is expert testimony and evidence that he

11   stayed there and didn't leave when he saw what was going on

12   because there is something about law enforcement officers that

13   compel them to stay at the scene -- people who have training in

14   law enforcement to stay at the scene.  And I don't see any

15   expert testimony or basis for expert testimony to support

16   anything like that.

17             MR. HERMANSEN:  Yes, Your Honor.  And I am looking at

18   my pleadings, so ECF 154, page 20, turning back to mens rea to

19   try to answer the Court's question.  I mean, it -- so what we

20   are arguing is -- it is the first full paragraph.  Dr. Best

21   intends to testify about the symptoms of a dissociative state,

22   which bear directly --

23             THE COURT:  Whoa, whoa, slow down please for the

24   court reporter.  And also I am not sure I see where you are.

25             MR. HERMANSEN:  Page --

1        THE COURT:  You are halfway through the first full
2    paragraph on docket 154 at 20; is that right?
3        MR. HERMANSEN:  Correct, Your Honor.  So it is just a
4    few words there.  That the dissociative state bears directly on
5    conscious thoughts an individual can have.  I think it assists
6    the trier of fact in -- it is just part and parcel of the
7    disassociatative state, that you are acting -- she gave an
8    example at the hearing about a plane flies over and someone
9    jumps under a car and they don't know -- and they may know why
10   or they don't know why.  And you ask them, why did you do that?
11   And they go, it was because they were in Vietnam.  And so it
12   was like an -- it is an automatic response.  So it does go to
13   whether his words or actions were conscious.
14       THE COURT:  Okay.  I will go back and take a further
15   look at what she testified to and her report.
16       MR. HERMANSEN:  Okay.  Thank you.
17       THE COURT:  Okay.  Should we turn to Mr. Rylant?
18       MS. ROCHA:  Yes, Your Honor.  I think so, but just
19   two quick things for the record.  I think Your Honor has sort
20   of indicated --
21       (Pause.)
22       MS. LEE:  Her video is frozen for me.
23       THE COURT:  Hold on a second.  Ms. Rocha is frozen.
24   Hopefully she will realize that she is no longer participating
25   in the video conference.

1          Ms. Fontan, I don't know if you can email her maybe.

2          MS. FONTAN:  Your Honor, I just messaged her to let

3     her know.  And it looks like she just read my message, so I

4     think --

5          THE COURT:  Maybe she is logging back in.

6          MS. FONTAN:  Yep.  She just messaged me that she is

7     just logging back in.  Your Honor, if it is okay, could we have

8     just a quick 5-minute bathroom break to let Ms. Rocha reconnect

9     and we can take a break.

10          THE COURT:  That is fine.  I do have a 4:00, just so

11     you all know that.

12          MS. FONTAN:  Could we just come back in a couple of

13     minutes?  I'm sorry, Your Honor.

14          THE COURT:  Of course.  Let's take a 2- or 3-minute

15     break.  Okay.

16          (Recess taken at 3:19 p.m.)

17          THE COURT:  All right.  We can continue.

18          MS. ROCHA:  I apologize, Your Honor.  Thank you for

19     the brief break.

20          I think what -- I just wanted to make two quick

21     points.  In terms of the timing, it sounds like Your Honor is

22     open to having a -- revisiting the discussion at some point,

23     which the government would like to have because -- for

24     testimony that would not be relevant, we don't think it should

25     be admitted, given that you can't just unring the bell and

1    strike her testimony, particularly in front of a jury.

2          And then, as to the mens rea discussion, the

3    government would just note again as kind of described in the

4    filings, the nature of how she described her testimony to her

5    credit is, you know, the way he experienced -- the symptom can

6    be on a scale and the extent to which he experienced the

7    symptom, she wasn't able to quantify or put it any way, as well

8    as, you know, at what points during the day.  It is all reliant

9    on his testimony or his statements to her about what he does

10   and doesn't remember.  And so we think, you know, consistent

11   with other rulings from other federal courts that her testimony

12   on that should be excluded.

13         But I know we have other topics to get to for the

14   day, so I will turn it over to Ms. Fontan, unless the Court has

15   any questions.

16         THE COURT:  Nope.

17         MS. FONTAN:  Your Honor, as far as Dr. Rylant goes, I

18   think it might be most helpful if the defense just clarifies

19   again what Dr. Rylant is going to be testifying about.  It was

20   my understanding at the *Daubert* hearing that the -- that

21   Dr. Rylant would just be testifying about what a -- what a

22   former experienced law enforcement officer perceived.  However,

23   in the briefing it indicated what a well-trained officer would

24   reasonably think and do in response to certain events, which

25   are two different things.  So I wanted to clarify, because I

1    don't want to go down a rabbit hole of wasting time.  If we

2    could just clarify, that would be great.

3              THE COURT:  Fair enough.

4         Mr. Hermansen.

5              MR. HERMANSEN:  Yes.  He will testify consistent with

6    his October 7th, 2024 report.

7              THE COURT:  Please answer the question.

8              MR. HERMANSEN:  I am -- yes, I am looking to find

9    exactly what he is going to say.  I don't -- what I understand

10   the government saying is he -- is he going to testify about

11   what an officer would do?  And if that is what we are focusing

12   on, that not in his October 7th, 2024 report.

13             THE COURT:  Okay.  So the answer is he is only

14   going -- he only proposes to testify about the first part of

15   your question, not the second part.

16             MS. FONTAN:  Okay.  Your Honor, do you -- I'm sorry.

17   I just need one second.

18             MR. HERMANSEN:  I guess my answer is that we are not

19   trying to expand what he would testify about with our

20   pleadings.  So to the extent that our pleading says he is going

21   to testify more broadly than how he has already testified and

22   what his report says, we are not -- that wasn't my intent.

23             MS. FONTAN:  So, Your Honor, why I am -- and the

24   reason I am trying to clarify this is because it was my

25   understanding at the *Daubert* hearing, that the October 7th

1   report was not what he was going to be testifying about.

2          What the October 7th report is saying is that in my

3   opinion, that if an experienced former law enforcement officer

4   observed what reasonably appeared to be improper or excessive

5   force, like the examples below, that person would likely

6   experience a psychological/emotional response that would affect

7   his decision making.

8          My understanding is that at the *Daubert* hearing that

9   the -- what a former experienced law enforcement officer would

10  do, so that psychological/emotional response was not part of

11  his expert testimony.  And we did not cross-examine on that

12  point.  So that is why I am just trying to clarify, so we can

13  move forward what the testimony -- what the proposed expert

14  testimony is going to be.

15          THE COURT:  All right.  Mr. Hermansen, anything else

16  you want to add?

17          MR. HERMANSEN:  I don't follow her argument.  I mean,

18  I am confused by the argument.  I think I responded correctly

19  in my pleading.

20          THE COURT:  Okay.  So I think the answer is and what

21  I will rely on for purposes of my decision is that defense is

22  only offering -- proposing to offer Dr. Rylant with respect to

23  what a reasonable experienced law enforcement officer would

24  think and not what he or she would do.

25          MS. FONTAN:  Okay.  Your Honor, if that is the

1    understanding, again that is different than what the

2    October 7th report says.  That is just why I am getting

3    confused and why I want to clarify, because I just don't think

4    at that point if there are opinions that the government was not

5    able to cross-examine on, for purposes of *Daubert*, it wouldn't

6    be appropriate for the defendant to introduce that into

7    evidence.  So that is why I just wanted to make it clear.

8         But in terms of the Dr. Rylant's opinion -- first

9    opinion about what a former experienced law enforcement officer

10   would perceive, first, it doesn't meet the 702 standard under

11   *Daubert*, because it lacks methodology.  And that was pretty

12   clear in the *Daubert* hearing.  When I asked Dr. Rylant how he

13   came to what a former experienced law enforcement officer

14   meant, there was no methodology or no peer-reviewed articles,

15   no study, no journal, no textbook, nothing that this expert

16   relied upon that would be sufficiently reliable to say that

17   this entire group of people -- that it was likely that this

18   entire group of people would act in a certain way.

19        And while it is true that -- and the defense brings

20   this up in their reply brief that it is true that Dr. Rylant

21   can to some extent rely on his experience and his training, but

22   that training and experience still has to be sufficient and be

23   sufficiently reliable under 702.  But he doesn't have -- the

24   extent of his experience does not extend to a situation like

25   January 6 in civil disturbance units in riot situations.  So

1       that reliability is undermined under 702.

2               But what I think highlights the lack of methodology

3       for Dr. Rylant is really that this is ultimately an individual

4       inquiry.  And he even said in the *Daubert* hearing, that it

5       depends -- that what a former, experienced law enforcement

6       officer perceives depends on training, depends on the

7       supervisor, depends on how time has passed based on law and how

8       training has evolved.  And that is a very individual inquiry,

9       which means that there is no reliable methodology that could

10      group all former, experienced law enforcement officers into a

11      specific mindset or a -- of what they think is in this case

12      excessive force.

13              And that kind of bleeds into the Rule 403 balancing

14      test.  And I think that highlights why this doesn't pass the

15      Rule 403 balancing test.  I think it confuses the issues here.

16      Because this case isn't about generally what well trained or

17      former, experienced law enforcement officers would have

18      perceived on January 6.  What is ultimately relevant in this

19      case is what the defendant, based on his own past experiences

20      perceived and had knowledge of on that day.  And introducing

21      evidence from an expert who a jury would perceive as having

22      more weight, more expertise to present that kind of testimony

23      that the majority of or all former experienced law enforcement

24      officers would be or think a certain way, would be really

25      dangerous for the jury -- really prejudicial for the jury to

1    hear.

2           This also starts to risk turning this trial into, is

3    the defendant correct that the officers used excessive force?

4    And as Your Honor has pointed out and as we have discussed

5    multiple times and in other January 6 cases, that is

6    irrelevant.  And what is at issue, again, is what is the

7    defendant's intent and what is the extent of the knowledge that

8    the defendant had?

9           And, Your Honor, I can stop there to talk about that

10    issue of Dr. Rylant.  And then if we want to talk about audio

11    exclusion after, we can do that depending on what Your Honor

12    would prefer.

13           THE COURT:  Okay.  So why don't I hear from

14    Mr. Hermansen on this issue.

15           MR. HERMANSEN:  Yes, Your Honor.  So the bottom line

16    is that Dr. Rylant's expert testimony should be allowed because

17    it will assist the trier of fact in determining whether or not

18    it was reasonable for Mr. Wise to conclude that what he saw was

19    excessive force.  In no way are we going to turn this into a

20    trial of, there was excessive force in the case and the police

21    are guilty of excessive force.  Dr. Rylant will not testify

22    about that.  He testified at the hearing that that is not -- it

23    is very clear to him and he understands, that is not the

24    purpose of this trial.  That is irrelevant, inappropriate.  We

25    are not keeping a score card or grade card to law enforcement.

1    So all of that testimony, we have -- that is gone.  So what his

2    testimony is, is would an experienced law enforcement officer

3    seeing what Mr. Wise saw or seeing what was going on that day,

4    that he reasonably would have seen, would it be reasonable for

5    that person -- that type of person to conclude that they saw

6    excessive force?

7             THE COURT:  Before you move on from that, let me just

8    ask you about that.  Because it seems to me that premise could

9    go to one of two things.  It could go to a potential defense of

10   others defense or it could go to his psychiatric state.  To the

11   extent it goes to his psychiatric state, I am not sure that

12   matters and that it is relevant to that.  And if your point is

13   that Mr. Wise was in a state of dissociation and he couldn't

14   form the necessary mens rea, because he was in that psychiatric

15   condition, I don't think it matters whether he is like, you

16   know, seeing hallucinations that causes him to go into that

17   view, whether he just misperceives what is going on that day

18   and believes that there is excessive force or whether there is

19   excessive force, what matters is simply what is going on in his

20   head and whether he is suffering from a psychiatric condition

21   or not.  So with respect to the former, the testimony of

22   excessive force might well be relevant, but I think it needs to

23   be tied to the five individuals who I previously suggested and

24   I am prepared to actually say more definitively, the government

25   needs to tie its case to and say our view is these are the five

 1   principals.  And those five principals were the ones who
 2   Mr. Wise aided and abetted by encouraging them to engage in
 3   violence.  And the question then is, whether, in fact, those
 4   individuals or Mr. Wise reasonably feared for their safety
 5   because of the use of excessive force.  And as to that, it
 6   might well be appropriate to have an excessive force expert
 7   testify, I conclude that what was going on with respect to
 8   those five individuals was excessive force.  And so that is
 9   kind of what my tentative thinking is, but I am happy to let
10   you all respond to that.  And if he wants to talk about the
11   five individuals and excessive force, fine.  But whether a
12   reasonable officer or person might have seen in general on the
13   grounds that day excessive force, it strikes me as extremely
14   sort of far removed from what is relevant in the case because
15   it doesn't really matter for purposes of what was going on in
16   Mr. Wise's mind.  Because, quite frankly, it doesn't matter
17   whether his belief was a reasonable or unreasonable belief if
18   it pushed him into a dissociative state, in which he was no
19   longer -- or unable to form the necessary mens rea.  And I do
20   think there is a very high risk of unfair prejudice to the
21   government to turn the trial into an examination about whether
22   officers who Mr. Wise may or may not have even seen were
23   engaged in excessive force.
24           MR. HERMANSEN:  So, Your Honor, I think Dr. Rylant is
25   actually -- I mean, he is a dual purpose expert, really.  If I

1    were the government -- I mean, they can easily turn him into

2    someone to say like -- talk about how the police were under

3    stress and how, you know, Mr. Wise's perception is just his

4    perception and Dr. Rylant's perception of what he saw is just

5    about whether it was reasonable.  But they can also talk to him

6    about like the major stress they were under, how they were

7    outnumbered.  All of the police were under an immense amount of

8    stress.  So I don't think it is highly prejudicial to the

9    government.

10          THE COURT:  But, Mr. Hermansen, on that ground then,

11    if you are right about that, then I should allow the government

12    to call 25 police officers to come in here in the rebuttal case

13    one after another and say, I was almost killed that day or

14    someone who was dear to me actually died by suicide shortly

15    after the events of that day, to convey how serious they

16    perceived the threat to be.  It just strikes me as though those

17    are all peripheral issues where we go down a road of trying

18    what happened that day that is not connected to what was going

19    on in Mr. Wise's head which is what is relevant for present

20    purposes.

21          MR. HERMANSEN:  Right.  And what is relevant is

22    whether what was in his head is reasonable.  That is also

23    relevant because --

24          THE COURT:  Why is that relevant as to whether what

25    was in his head is -- it matters for purposes of the defense of

1   others, I agree with that.  But beyond that, why does it matter

2   whether what was in his head was reasonable or not?

3          MR. HERMANSEN:  Well, two things.  The Court has

4   indicated his memory might not be central to the case.  I

5   totally disagree.  His credibility -- any defendant's

6   credibility is always central to a case if they testify or if

7   any of their statements are included in their case.  We know

8   for a fact without a doubt that the government is going to

9   admit statements from Mr. Wise.  They are going to put in front

10  of the jury in a very judgmental way, statements where he is

11  saying to a police officer, you are the Nazi, you are the

12  Gestapo.

13         THE COURT:  On that one, again, I mean as I said I

14  think at the hearing, if you want to show me something that was

15  taking place in front of Mr. Wise at that time that he saw,

16  that prompted him to say that and have an expert to say his

17  response was a reasonable one, because that officer was indeed

18  engaged in excessive force, that is fine.  As I noted at the

19  hearing though my concern was you were pointing to events that

20  occurred at 1:35 p.m. in order to justify what Mr. Wise said at

21  4:22 p.m. to an entirely different officer, different place,

22  different circumstances.  And that I don't get.

23         If you want to offer testimony that what was going on

24  when he said that in front of him and that he saw and that

25  prompted him to say that was excessive force, then I would be

1    open to doing that if the government is going to offer that

2    statement into evidence.

3              MR. HERMANSEN:  We do intend to present videos that

4    show the upper west terrace from around 3:00 to 4:20 was --

5    maybe even earlier.  I think it was an hour and a half -- very

6    calm.  You have one line of officers who are just standing

7    there and a bunch of people are making comments to them,

8    positive and negative.  And then reinforcements come.  And so

9    you have a huge number of police officers who are there who are

10   then given the order to clear, to move, move, move, move.  And

11   that is at the point as they are pushing everyone, that is at

12   the point that the words, you are the Nazi or you are the

13   Gestapo.

14             So it is 1:35 and it is throughout the day, it is all

15   of the events that he witnessed going up to 4:22, including

16   that right before 4:22 where they are pushing, pushing,

17   pushing.

18             THE COURT:  So I think it is more prejudicial than

19   probative to talk about things at 1:35 to try to explain why he

20   referred to a police officer at 4:22 as a Nazi or Gestapo.  But

21   as I said, if it is -- you can show me that the officer who

22   Mr. Wise said that to was engaged in excessive force and want

23   to offer testimony on that, I would be open to that.

24             MR. HERMANSEN:  We are not going to make that

25   argument, Your Honor.  I think he was just a proxy for all of

1    the officers who were pushing, pushing, pushing.  I mean, he is

2    there with all of the throngs of officers who have now

3    accumulated.  I think another reason it is highly relevant,

4    Your Honor, is we have what our use of force expert identifies

5    as what Mr. Wise could view as excessive force.  And that --

6    whether that is reasonable or not, goes to whether viewing it

7    would result in trauma.  So it buttresses both Mr. Wise's

8    testimony and also the testimony of Dr. Best.  Because if it is

9    just some fantasy and police aren't doing anything that could

10   be reasonably perceived by a law enforcement officer, the

11   government could be calling an expert saying it is completely

12   unreasonable for him to say that -- for him to perceive it as

13   excessive force.  They are not doing that.  We don't have an

14   expert who says that, because he did see excessive force.  And

15   that is what caused the trauma.  Because as a former law

16   enforcement officer, a US citizen seeing what he reasonably

17   perceived as excessive force is very different from him having

18   some fantasy that causes trauma.

19            THE COURT:  So even on that theory, you need to do a

20   lot more than just tell me that stuff that was going on on the

21   Capitol grounds that day was excessive force.  And, again, I

22   understand that maybe you have some issues with respect to

23   Mr. Wise's memory, but, you know, if he testified and said, I

24   reacted the way I did because I saw someone hit somebody over

25   the head with a nightstick and that is what caused me that

1   trauma or even if Dr. Best testifies this is what caused the

2   trauma, that nightstick -- great.  My concern is just the open

3   ended, if you kind of look at just the general view of what was

4   going on, even on the west plaza of the Capitol that day, there

5   was a lot of really bad things going on.  And that could have

6   prompted, you know, possibly, might -- he might have seen it.

7   You never know.  If he did see it, it is possible that he would

8   have been traumatized by it, because other officers seeing

9   something like that would find it traumatic, just strikes me as

10  a step too far for 403 purposes and just too much of a stretch.

11  But, again, if you can make it narrower and focused on

12  something that he saw that actually caused his trauma, where

13  there is evidence it caused his trauma and you want to bolster

14  that it would have caused his trauma by showing that it really

15  fell far outside the bounds of acceptable police conduct, that

16  is something that I would be open to.  But it has to be

17  connected.  It can't simply be there was stuff going on on the

18  plaza that day and he was in the general vicinity, so maybe he

19  saw it and it possibly might have caused him to disassociate.

20          MR. HERMANSEN:  Two responses.  Yes, we are going to

21  absolutely show video that show Mr. Wise 100 percent viewed

22  overhead strikes at the critical time that the Court is talking

23  about, 4:22, and that one of the people, Thomas, who is closest

24  to Mr. Wise when those overhead strikes are taking place in the

25  scrum -- he went to trial.  He was charged with assault for the

1    4:22 actions.  And this is just one example.  Mr. Thomas is

2    seen walking between the -- in the scrum between what I will

3    call the protesters or even the assaulters or whoever, right,

4    between the Trump supporters and the police.  And there is the

5    line of police with shields and people have fallen over.

6    Mostly at that point in time, Trump supporters have fallen

7    over.  And Mr. Thomas is seen -- the assault was, he slightly

8    pushed against a shield and is going diagonally for a period of

9    time that the government considered excessive saying, "Let them

10   up, let them up, let them up."  And saying other things.

11           And the jury -- my memory is that they deliberated

12   for four days.  They said they were hopelessly hung.  The judge

13   gave an instruction saying, keep deliberating.  They came back

14   with lots of other convictions for Mr. Thomas.  They did not

15   convict him of that charge and the court dismissed that charge.

16           THE COURT:  I am not sure why you are telling me all

17   of this, because obviously what happened in the other trial is

18   not coming in here.

19           MR. HERMANSEN:  Mr. Wise viewed that.  And he is

20   right there on the line.  He is the person who would have

21   heard -- if anyone heard Mr. Wise who was charged, it was

22   Thomas.

23           THE COURT:  All right.  Well, so this is very

24   different though from anything that the expert has been talking

25   about.  As I said before, if you are talking about something --

1    a specific assault that Mr. Wise saw and that you can

2    reasonably establish that he saw involving excessive force and

3    your theory is that triggered trauma, that is something that I

4    am open to.  I am not going to open the door though to come in

5    and say, if you look over here, there is something; if you look

6    over there, there is something; I certainly wouldn't have been

7    firing tear gas under these circumstances.  That is just too

8    open ended.  It has to be tied to something relating to

9    Mr. Wise's personal response.

10           MR. HERMANSEN:  And his personal response is, as

11   Dr. Best said, a slow burn throughout the day.  It is not just

12   one single incident of viewing excessive force.  It is multiple

13   incidents that build up over three hours.

14           THE COURT:  So I will do you this:  I want you to

15   identify for me so I can actually decide this, each of those

16   incidents.  And if you can file something, you can tell me when

17   you want to file it.  If you want to give me the video to look

18   at, that is fine.  But before this testimony is offered, I need

19   to see the particular incidents that you are relying upon and

20   that the expert is relying upon.  I don't recall him having

21   this in his report or testifying about this, which is another

22   problem.

23           I suppose that may be a significant problem is that

24   it is just not fair to the government at this point to say,

25   here is some event that we never previously identified and this

1    is the one that we are saying is excessive force.  So I suppose
2    I need to figure out whether it is waived at this point by not
3    having identified this in the expert report.  But if there is
4    something that is in the expert report that has been disclosed
5    saying, here is an assault that constituted excessive force
6    that Mr. Wise saw that contributed to his trauma, as I said, I
7    am open to that.  But it has to satisfy those conditions.

8         MR. HERMANSEN:  So, Your Honor, in none of the events
9    did he say this constituted excessive force.  And he will not
10   opine on that, because that would -- he is saying that it would
11   be reasonable for a law enforcement viewing this to conclude it
12   was excessive force, because we are not allowed to say --

13        THE COURT:  Same answer.  Same answer as I gave
14   before, but that is fair.  With that qualification, if it is
15   something that was identified in the disclosures to date in any
16   way, that Mr. Wise saw that contributed in your view to his
17   trauma that caused his dissociation, then I am inclined at
18   least preliminarily to allow that.  But it has to be targeted
19   to that very particular circumstance and there has to be some
20   nexus that is established and there has to be a disclosure of
21   that particular event.

22        MR. HERMANSEN:  Yes, Your Honor.  So everything he
23   relied on is in his report.  And we can send the Court -- we
24   can send the Court the --

25        I forget which videos we gave the Court.  I think we

1    might have given the Court all of the Joshua Cohen, Fat Pencil

2    videos and PowerPoint, but we can give the Court Dr. Rylant as

3    well --

4            THE COURT:  Okay.

5            MR. HERMANSEN:  -- so that the Court has those before

6    trial, if you don't already have them.  We'll make sure that

7    you have them.

8            THE COURT:  This all, of course -- this portion of it

9    only goes to the question of dissociation.  So it is still

10   contingent on me being convinced that Dr. Best has -- you have

11   established some nexus from Dr. Best's testimony to

12   dissociation and the relevant mens rea in this case.  So it is

13   also subject to that condition.  That is something that I said

14   I still need to go back and review.

15           MR. HERMANSEN:  So at this point, Your Honor, I am

16   happy to talk about Dr. Rylant's methodology since the

17   government is misconstruing how it works.  And I can touch on

18   that, if that is a concern of the Court.  Because I think they

19   are just --

20           THE COURT:  If the government wants to be heard

21   further on that, I am happy to hear from the government on

22   that.

23           MS. FONTAN:  Your Honor, just briefly, I think the

24   government agrees with what the Court was saying -- what the

25   Court was just saying about how Dr. Rylant and Dr. Best's

1    testimony seems to be -- I don't know if it is overlapping or

2    contingent on another, but part of the government's problem and

3    with -- with Dr. Rylant and why he does not meet 702 and why

4    there are 403 concerns is because it -- as they expressed at

5    the *Daubert* hearing, Dr. Rylant is not testifying about what

6    the defendant or a former, experienced law enforcement officer

7    is doing or how he is reacting to something.  So I think the

8    government just asks if that is the intent of what he plans to

9    testify at trial, then that needs to be disclosed or it needs

10   to be clarified.  And I think along with that, at this point,

11   as Mr. Hermansen said, Dr. Rylant is not testifying, nor is it

12   in his report that anyone engaged in excessive force.  He is

13   not making that conclusion, so I think the government --

14           THE COURT:  What about the conclusion that a

15   reasonable former law enforcement officer would view this as

16   excessive force, which provides some support for why -- for

17   whether and why Mr. Wise allegedly reacted the way he did?

18           MS. FONTAN:  Well, Your Honor, I think that has --

19   that has been disclosed.  The government isn't disputing that.

20           THE COURT:  All right.

21           MS. FONTAN:  The problem that the government has is

22   the reasons that I have already stated related to methodology

23   on the determination of what a reasonable former experienced

24   law enforcement officer did or how they would perceive

25   something.

1          THE COURT:  All right.  So you have my -- at least my

2    tentative views on this for purpose of your trial preparation.

3    You all can reserve your various arguments and renew anything

4    at trial if you want to on this.  I have got another seven

5    minutes before my next hearing.  So if you want to address the

6    question of the auditory exclusion issue.

7          MR. HERMANSEN:  Yes, Your Honor.  If -- I would like

8    to make the record, very quickly talk about methodology and

9    then I will move quickly to auditory exclusion.  So the

10   government's quibble with Dr. Rylant's methodology is based on

11   a misunderstanding of qualitative versus quantitative analysis.

12   And Dr. Rylant's methodology is layed out clearly in his

13   report.  His methodology is derived from experts in the field,

14   from the conferences he goes to and speaks at and seminars

15   concerning police use of force.  Experts in the field use the

16   same methodology.

17         Now, the government is demanding quantitative

18   analysis.  But the rules and the case law don't require that.

19   Quantitative and qualitative --

20         THE COURT:  You only have six minutes and I already

21   ruled in your favor on this issue at least tentatively, so you

22   may be not using your time -- because I am not sure I am going

23   to remember what you just said if the motion is renewed at

24   trial, so maybe you are better saving that.

25         MR. HERMANSEN:  Yes, Your Honor.

1          So moving to auditory exclusion.  So as we know,

2    auditory exclusion is allocating visual -- your -- when you are

3    overwhelmed, especially in a stressful situation --

4          THE COURT:  Let me just cut to the chase on this one

5    to try to expedite things, I guess the only question I have

6    is -- on this is whether Dr. Rylant has any expertise in the

7    field of auditory exclusion and whether there is sort of some

8    methodology or analysis that he has expertise in that he can

9    help elucidate the jury with.  I don't think there is any doubt

10   that you could argue to the jury and a layperson could

11   understand the fact that when you are in a crowd and there is a

12   lot of yelling and screaming going on that you focus on

13   particular things you are listening to and you can't -- a human

14   being is not capable of listening to everything at the same

15   time.  And you pick and choose what you are listening to when

16   there is overwhelming noise around you.  So I don't think that

17   is anything surprising or isn't anything that is within the

18   capacity of lay jurors.

19         So the question for me is, what expertise does he

20   have in the field that would add to what a layperson would,

21   obviously, understand that when you are in a very loud place,

22   anyone who has gone to a crowded bar or a rock concert or

23   anything like that knows that you can't listen to everything at

24   the same time and it depends on what you are focusing on.

25         MR. HERMANSEN:  So he is going to not testify about

1    that situation.  He is going to testify about high stress

2    situations.  A lot of research has been done on officer

3    shooting situations.  And so that is one area where the term

4    auditory exclusion is a term of art in policing.  So his

5    experience and expertise is that Dr. Rylant was a police

6    officer and has personally experienced as a police officer

7    auditory exclusion.

8              Second, Dr. Rylant instructs police officers on this

9    concept.

10             Third, Dr. Rylant has previously testified as an

11   expert in federal court on auditory exclusion.  And that was

12   third.

13             Fourth, Dr. Rylant's doctoral degree includes this

14   topic and he was trained as part of his doctoral degree on the

15   topic.  And Dr. Rylant's testimony is not about audiology, so

16   the government is -- that is not what he is testifying about.

17   It is not about the ability to hear, so that is not his

18   testimony.  His testimony is about psychology and the subject

19   he has a PhD in.  And again --

20             THE COURT:  Okay.  So that is what I want to hear

21   about though.  So tell me about his PhD.  What was his

22   dissertation on?  What courses did he actually take on this

23   topic?  What -- how did he actually study or learn about the

24   phenomenon that in stressful circumstances people either don't

25   hear things or they hear selectively?

```
 1                MR. HERMANSEN:  Yes, Your Honor.  So, yes.  So his
 2    doctoral degree includes learning -- researching -- learning
 3    and research -- learning studies that actually research on
 4    auditory exclusion.  He has published a book that includes
 5    quantitative -- sorry -- qualitative study information
 6    indicating that auditory exclusion is normal in traumatic
 7    situations like use of force situations.  And the government's
 8    objection to auditory exclusion is contrary to DOJ policy
 9    because their own official website includes an article titled,
10    "Police Officers' Perceptual Distortions During Lethal Force
11    Situations:  Informing the Reasonableness Standard."  So that
12    is on DOJ's own website and that study found that -- examined
13    80 police officers.  So that is qualitative studies, which is
14    the -- what is done in psychology.  They detailed accounts of
15    the perceptions of what occurred during those stressful
16    situations.  And of those 80 -- 80 percent of them had auditory
17    exclusion.  So it is common -- that is just the DOJ study.
18                In support for his opinion, he cites numerous
19    studies, including control of attention, shifting between
20    visual and auditory in human cortex.  His dissertation is on
21    the topic of police use of force.
22                THE COURT:  But that doesn't help.
23                MR. HERMANSEN:  Which -- well, it is key to police
24    use of force, because the way it comes up in *Graham versus*
25    *Connor,* the Supreme Court case that talks about whether an
```

1    officer is acting reasonably, you look at whether -- one of the

2    hardest questions for juries is, if someone is saying, "Stop,

3    it is not a real gun," and the officer shoots them, is the

4    officer experiencing auditory exclusion?  Is it excessive

5    force?  So it comes into play in a lot of 1983 civil rights

6    actions.

7              THE COURT:  I mean, you can correct me if I am wrong,

8    but I wouldn't think a dissertation on excessive force is about

9    auditory exclusion, but if there is a chapter on that, just

10   point me to the chapter on that.  But it strikes me that the

11   proposition that people under stressful circumstances

12   experience auditory exclusion is just a different inquiry from

13   whether a police officer is using excessive force or not.

14             MS. LEE:  Your Honor, just because I was pulling it

15   up while you all were discussing.  The dissertation is on

16   psychological and physiological factors.  And physiological

17   factors being those that are both the physical responses to

18   the -- under stress.  So it is not simply a use of force

19   dissertation.  It is decisions under pressure and the

20   psychological and physiological aspects of that.

21             THE COURT:  Can I ask that you file that on the

22   docket for me, a copy of that?

23             MR. HERMANSEN:  It is.

24             THE COURT:  It is on the docket?

25             MR. HERMANSEN:  Yes, Your Honor.

1          THE COURT:  I will take a look at it then.

2          I am out of time.  Why don't I give the government a

3     minute or two to respond and then I will have to go back and

4     look at these things.

5          MR. HERMANSEN:  Just for the record, Your Honor, it

6     is document 86-2.  And it is labeled Defendant's Exhibit B

7     attached to document 86.

8          THE COURT:  Okay.

9          MS. FONTAN:  Just super briefly, Your Honor.  The

10    government still has an issue, obviously, with Dr. Rylant's

11    testimony related to auditory exclusion.  And a lot of it -- a

12    lot of our objection comes from the fact that Dr. Rylant

13    himself said that there is no -- there really is no way for him

14    to look at an individual or look at someone from the crowd and

15    be able to do a measure of auditory exclusion.  He can't

16    watch -- like I can't watch a video, I can't do a test on an

17    individual to determine the level of stress they experience.

18    It just doesn't exist.  And I think that is the 403 question

19    that the government is mostly concerned about, in addition to

20    the 702 issues with the auditory exclusion opinion.

21          And, Your Honor, I think you have hit the nail on the

22    head, with it begs the question if Dr. Rylant is just saying,

23    this was chaos, not everyone heard everything, I think that is

24    common sense that the jury can listen to the videos.  The jury

25    can listen to the testimony.  And I am sure there will be a lot

1    of testimony about the chaos of that day.  And Dr. Rylant's and

2    any sort of auditory exclusion wouldn't assist a jury in that

3    day.

4              THE COURT:  All right.  Thank you all.  I know we

5    have our pretrial conference scheduled.  So, if necessary, we

6    can take up anything else at that point.  Unfortunately, we

7    didn't get a chance today to get to the questions with respect

8    to the First Amendment and aiding and abetting just for

9    purposes of your trial preparation.  This is something that

10   ultimately we are going to have to deal with in the jury

11   instructions, so I don't think it is something that has to be

12   addressed immediately.  And we can address it again or talk

13   about it again at the pretrial conference.

14             But just for purposes of your preparation on the

15   aiding and abetting, I am going to require that the government

16   identify the five individuals and stick to those five

17   individuals as the principals and that they will have to

18   establish that Mr. Wise aided and abetted one or more of those

19   principals.  I do think it is appropriate to give an

20   instruction that simply -- and it is not going to be a terribly

21   complicated instruction -- that just includes the language from

22   *Brandenburg* and that says that, "Advocacy that is directed to

23   inciting or producing imminent lawless action and is likely to

24   incite or produce such action is not protected speech."  And

25   those are -- I am not wordsmithing it now.  But I think giving

1    an instruction that reflects the language of *Brandenburg* is

2    appropriate under the circumstances.

3           And then with respect to aiding and abetting, it was

4    unclear to me from reading the parties' submissions that there

5    actually is a substantial difference of opinion with respect to

6    this.  And I think that my sort of inclination, particularly

7    from reading the parties' papers is to say that the government

8    does bear the burden of proof of showing that Mr. Wise, in

9    fact, encouraged the behavior, which is actually somewhat more

10   demanding than the *Brandenburg* standard.  I have been saying

11   this all along that I actually think the aiding and abetting

12   standard is more demanding than the *Brandenburg* standard.

13   Because *Brandenburg* is simply likely to produce or incite such

14   action.  And here the government, for aiding and abetting

15   purposes will bear the burden of demonstrating that Mr. Wise,

16   in fact, encouraged and not in a vacuum, but that he actually

17   encouraged in the sense that one or more of the five heard what

18   he was saying and that they were encouraged by it.

19           I don't think there is a basis based on what I have

20   seen for applying a but-for causation in this regard.  But I

21   take it that the government is not disputing that there has to

22   be actual encouragement that occurred here, which includes

23   that -- demonstrating that the principals were able to and

24   indeed heard the words of encouragement.  But that is -- you

25   know, we can revisit this and come back to this in the jury

1    instruction process.  But to the extent it is helpful to you in

2    your preparation, that is at least my preliminary view at this

3    point.

4              MS. FONTAN:  Your Honor, I just have two very quick

5    questions.

6              THE COURT:  Sure.

7              MS. FONTAN:  As far as the five individuals, would

8    you like the government to put that on docket in a filing,

9    would that be the most helpful?

10             THE COURT:  I actually think that would be -- for

11   making the record as clear as possible, I appreciate that.

12             MS. FONTAN:  And just my second quick question, would

13   Your Honor prefer that the parties propose a First Amendment

14   instruction or would you just like to handle the -- or however

15   this First Amendment instruction is going to be.

16             THE COURT:  I think I am happy to do it myself,

17   because I am just going to track the words of *Brandenburg* which

18   is a sentence long.

19             MS. FONTAN:  Okay.  Thank you, Your Honor.

20             THE COURT:  All right.  Thank you, all, and I will

21   see you for the pretrial.

22             MS. ROCHA:  Thank you.

23             (Proceedings concluded at 4:08 p.m.)

24

25

1

2

C E R T I F I C A T E

3                I, SHERRY LINDSAY, Official Court Reporter, certify

4      that the foregoing constitutes a true and correct transcript of

5      the record of proceedings in the above-entitled matter.

6

7

8

9

10                        Dated this 23rd day of December, 2024.

11

12      _____
                                 Sherry Lindsay, RPR
13                               Official Court Reporter

14

15

16

17

18

19

20

21

22

23

24

25

MR. HERMANSEN: [61]   3/14 10/21
12/5 12/12 12/17 13/13 13/18
14/12 15/14 15/25 16/18 16/23
17/7 17/12 18/9 20/18 20/25 23/24
24/11 25/24 26/18 27/2 27/8 27/12
28/4 29/4 29/23 30/10 31/11 35/12
35/18 35/21 36/17 36/25 37/3
37/16 40/5 40/8 40/18 41/17 44/15
46/24 47/21 48/3 49/3 49/24 51/20
52/19 53/10 54/8 54/22 55/5 55/15
57/7 57/25 58/25 60/1 60/23 61/23
61/25 62/5
MS. FONTAN: [20]   3/6 4/6 4/15
4/19 5/6 38/2 38/6 38/12 39/17
40/16 40/23 41/25 55/23 56/18
56/21 62/9 65/4 65/7 65/12 65/19
MS. LEE: [4]   3/10 31/15 37/22
61/14
MS. ROCHA: [6]   17/16 18/14 19/1
37/18 38/18 65/22
THE COURT: [90]
THE COURTROOM DEPUTY: [1]   3/2
THE DEFENDANT: [2]   3/23 15/3

## 1

1,000 [1]   8/12
100 percent [1]   51/21
1006 [1]   18/2
101 [1]   2/8
11 [1]   19/9
13 [1]   30/18
15 [1]   17/1
151 [1]   19/9
154 [3]   35/17 36/18 37/2
159 [4]   5/3 11/3 11/22 11/22
15th [1]   6/10
16 [1]   18/18
17 [1]   35/13
1700 [1]   2/9
184 [2]   1/4 3/3
19 [3]   1/5 35/13 35/16
1983 [1]   61/5
1:30 [1]   35/25
1:35 [2]   49/14 49/19
1:35 p.m [1]   48/20

## 2

20 [3]   9/13 36/18 37/2
200 [1]   2/5
20001 [1]   1/24
2024 [12]   1/5 5/10 5/12 5/12 5/21
6/6 6/10 9/24 10/6 40/6 40/12
66/10
20530 [1]   1/16
21 [1]   9/13
219 [1]   1/13
21st [2]   5/21 6/5
23-184 [2]   1/4 3/3
23rd [1]   66/10
24 [1]   16/8
25 [1]   47/12
25th [2]   5/12 6/6

## 3

3-minute [1]   38/14
333 [1]   1/23
3:00 [1]   49/4
3:19 [1]   38/16
3rd [1]   5/10

## 4

403 [15]   20/1 20/10 23/20 23/20
25/19 26/4 27/6 27/10 32/17 34/17
43/13 43/15 51/10 56/4 62/18
4:00 [1]   38/10
4:08 [1]   65/23
4:20 [1]   49/4
4:22 [5]   49/15 49/16 49/20 51/23
52/1
4:22 p.m [1]   48/21

4:30 and [1]   35/25
4th [1]   9/24

## 5

5-minute [1]   38/8
5th [1]   1/13

## 6

601 [1]   1/16
60604 [1]   1/14
6710 [1]   1/24

## 7

702 [6]   19/21 42/10 42/23 43/1
56/3 62/20
75 [5]   4/23 10/24 10/24 11/13
13/19
7th [5]   40/6 40/12 40/25 41/2
42/2

## 8

80 [2]   60/13 60/16
80 percent [1]   60/16
859 [1]   2/5
86 [1]   62/7
86-2 [1]   62/6

## 9

97204 [1]   2/9
97401 [1]   2/6
9:43 [1]   1/6

## A

a.m [1]   1/6
abetted [2]   46/2 63/18
abetting [10]   4/1 4/7 4/12 8/14
29/25 63/8 63/15 64/3 64/11 64/14
ability [2]   35/8 59/17
able [8]   9/21 11/8 30/14 34/15
39/7 42/5 62/15 64/23
about [84]
above [1]   66/5
above-entitled [1]   66/5
absent [1]   11/21
absolutely [1]   51/21
abuse [1]   22/21
accept [2]   12/14 13/9
acceptable [1]   51/15
accepted [1]   34/13
access [1]   14/21
according [1]   21/23
accounted [1]   21/22
accounts [1]   60/14
accumulated [1]   50/3
acoustics [1]   18/16
across [1]   16/7
act [2]   35/8 42/18
acting [2]   30/17 37/7 61/1
action [5]   1/3 31/6 63/23 63/24
64/14
actions [3]   37/13 52/1 61/6
actual [2]   12/9 64/22
actually [15]   30/21 32/7 45/24
46/25 47/14 51/12 53/15 59/22
59/23 60/3 64/5 64/9 64/11 64/16
64/16
add [6]   12/24 13/1 17/5 31/14
41/16 58/20
adding [2]   14/11 14/12
addition [7]   6/7 14/14 18/16
19/24 34/7 34/17 62/19
additional [3]   5/17 7/18 11/3
address [3]   7/12 57/5 63/12
addressed [1]   63/12
addressing [1]   4/5
administered [1]   22/1
administration [3]   16/5 16/6 16/6
admissible [1]   20/19
admit [1]   48/9
admitted [2]   19/11 38/25
Advocacy [1]   63/22

affect [2]   32/12 41/6
affected [1]   22/8 35/9 47/8 47/8/5
5
after [12]   4/11 7/4 7/5 12/23
20/7 22/5 24/9 24/12 33/7 44/11
47/13 47/15
afternoon [6]   3/6 3/9 3/10 3/13
3/14 3/18
again [17]   8/11 10/10 10/13 28/18
30/7 30/24 32/1 39/3 39/19 42/1
44/6 48/13 50/21 51/11 59/19
63/12 63/13
against [5]   8/1 8/1 9/25 11/10
52/8
agents [1]   15/11
ago [1]   4/20
ago the [1]   4/20
agree [4]   18/7 19/17 25/24 48/1
agreement [2]   9/17 9/21
agrees [1]   55/24
aided [2]   46/2 63/18
aiding [10]   4/1 4/7 4/12 8/14
29/24 63/8 63/15 64/3 64/11 64/14
all [57]   3/18 3/24 4/13 4/18 7/17
7/19 7/22 7/23 8/7 8/22 9/1 10/20
14/10 15/23 17/9 17/14 18/10
18/20 19/12 19/18 20/10 21/20
23/19 25/8 25/22 28/7 28/23 31/24
31/25 31/25 34/19 38/11 38/17
39/8 41/15 43/10 43/23 45/1 46/10
47/7 47/17 49/14 49/25 50/2 52/16
52/23 55/1 55/8 56/20 57/1 57/3
61/15 63/4 63/4 64/11 65/20 65/20
allegations [1]   11/4
alleged [1]   21/7
allegedly [1]   56/17
allocating [1]   58/2
allocation [1]   16/3
allow [8]   31/9 32/11 32/13 33/7
33/16 35/1 47/11 54/18
allowed [4]   13/23 28/2 44/16
54/12
allowing [1]   20/5
almost [1]   47/13
along [3]   3/7 56/10 64/11
already [8]   7/14 15/15 27/20
27/21 40/21 55/6 56/22 57/20
also [23]   3/16 6/7 6/9 6/11 9/3
9/5 13/20 14/13 18/4 19/12 21/12
27/6 27/23 30/10 33/12 34/3 34/17
36/24 44/2 47/5 47/22 50/8 55/13
although [1]   25/10
always [2]   13/6 48/6
am [42]   4/13 4/23 16/13 23/10
23/22 25/15 25/16 26/18 28/21
29/4 31/15 32/13 33/23 35/20
36/17 36/24 40/8 40/8 40/23 40/24
41/12 41/18 42/2 45/11 45/24 46/9
52/16 53/4 53/4 54/7 54/17 55/15
55/21 57/22 57/22 61/7 62/2 62/25
63/15 63/25 65/16 65/17
ambulate [1]   30/15
Amendment [5]   4/2 4/7 63/8 65/13
65/15
Amendment-related [1]   4/2
AMERICA [2]   1/3 3/3
amnesia [1]   22/6
amount [1]   47/7
analysis [3]   57/11 57/18 58/8
anecdotal [2]   7/24 8/5
another [7]   9/18 25/1 47/13 50/3
53/21 56/2 57/4
answer [11]   11/7 11/8 20/15 31/13
36/19 40/7 40/13 40/18 41/20
54/13 54/13
Anthony [1]   12/22
anticipate [9]   9/21 23/8 23/10
23/25 24/4 24/6 24/15 28/10 28/12
any [35]   6/3 6/14 6/21 9/11 9/17
9/21 10/4 13/2 13/8 14/10 18/16
19/14 19/14 20/15 22/17 24/17
25/22 27/15 28/19 29/14 29/19
31/9 33/10 34/13 34/16 35/6 36/14

**A**

any... [8]  39/7 39/15 48/5 48/7 54/15 58/6 58/9 63/2
anymore [1]  17/24
anyone [4]  29/9 52/21 56/12 58/22
anything [18]  8/21 17/5 24/1 24/18 30/25 30/25 31/14 34/14 34/25 36/16 41/15 50/9 52/24 57/3 58/17 58/17 58/23 63/6
apologize [1]  38/18
apparent [1]  34/6
appearance [2]  21/22 34/9
APPEARANCES [3]  1/11 1/19 2/1
appeared [1]  41/4
appearing [1]  3/16
appears [2]  3/11 20/21
apply [2]  28/1 29/22
applying [1]  64/20
appreciate [1]  65/11
approach [3]  16/9 16/12 19/3
appropriate [8]  7/23 18/15 18/24 20/7 42/6 46/6 63/19 64/2
appropriately [1]  31/10
are [102]
area [1]  59/3
aren't [2]  26/9 50/9
argue [5]  16/9 16/10 21/15 35/24 58/10
argued [1]  15/21
argues [1]  21/12
arguing [1]  36/20
argument [10]  10/12 15/18 15/23 25/5 26/20 31/11 35/21 41/17 41/18 49/25
arguments [1]  57/3
around [3]  29/13 30/15 49/4 58/16
art [1]  59/4
article [1]  60/9
articles [1]  42/14
as [113]
aside [1]  8/7
ask [7]  9/2 13/20 14/5 23/7 37/10 45/8 61/21
asked [3]  21/25 21/25 42/12
asking [1]  7/13
asks [1]  56/8
aspects [1]  61/20
assault [5]  15/19 51/25 52/7 53/1 54/5
assaulters [1]  52/3
assist [2]  44/7 63/2
assistant [2]  3/11 3/15
assists [1]  37/5
assumption [1]  32/10
attached [1]  62/7
attack [1]  28/12
attempted [1]  31/16
attention [2]  9/23 60/19
audio [1]  44/10
audiology [1]  59/15
auditory [21]  30/12 57/6 57/9 58/1 58/2 58/7 59/4 59/7 59/11 60/4 60/6 60/8 60/16 60/20 61/4 61/9 61/12 62/11 62/15 62/20 63/2
August [3]  5/12 9/24 10/6
August 2024 [1]  9/24
August 25th [1]  5/12
automatic [2]  30/17 37/12
automaton [1]  30/17
Avenue [1]  1/23
aware [1]  24/13
away [5]  33/22 34/2 34/5 34/20 34/24

**B**

back [19]  5/4 23/14 26/16 26/20 30/8 30/9 30/23 32/1 32/5 35/5 36/18 37/14 38/5 38/7 38/12 52/13 55/14 62/3 64/25
backdoor [3]  20/2 25/20 26/20
backdooring [2]  26/12 29/1

bad [1]  51/5
balance [1]  41/13
Bankruptcy [1]  1/23
bar [1]  58/22
based [11]  7/16 7/24 8/5 8/15 19/12 32/14 34/15 43/7 43/19 57/10 64/19
basically [1]  25/6
basis [2]  36/15 64/19
bathroom [1]  38/8
batons [3]  23/5 23/18 27/1
be [114]
bear [4]  34/16 36/22 64/8 64/15
bears [1]  37/4
beaten [2]  23/18 27/1
because [62]  5/22 7/14 8/24 10/8 10/12 13/5 13/16 13/22 14/4 21/2 21/11 21/16 22/8 22/22 22/25 23/11 25/1 25/12 25/25 26/21 27/21 28/18 28/20 28/25 29/10 30/5 30/5 31/2 34/18 36/4 36/12 37/11 38/23 39/25 40/24 42/3 42/11 43/16 44/16 45/8 45/14 46/5 46/14 46/16 47/23 48/17 50/8 50/14 50/15 50/24 51/8 52/17 54/10 54/12 55/18 56/4 57/22 60/9 60/24 61/14 64/13 65/17
become [2]  23/13 34/6
becomes [3]  14/7 20/23 32/22
becoming [1]  20/2
been [19]  5/7 6/24 7/20 8/12 8/14 8/15 8/17 9/17 11/25 15/10 26/25 31/10 51/8 52/24 53/6 54/4 56/19 59/2 64/10
before [24]  1/9 3/20 4/7 7/7 12/2 13/21 14/6 17/22 22/3 24/17 28/3 31/8 32/6 32/8 32/15 33/14 33/15 45/7 49/16 52/25 53/18 54/14 55/5 57/5
beginning [2]  5/12 6/8
begs [1]  62/22
behalf [1]  3/16
behavior [1]  64/9
being [11]  9/21 16/20 16/25 21/8 23/14 23/18 27/1 34/7 55/10 58/14 61/17
belief [2]  46/17 46/17
believe [2]  19/20 28/11
believes [1]  45/18
bell [1]  38/25
below [1]  41/5
Best [18]  17/21 19/3 20/5 21/1 21/5 22/1 22/18 23/15 24/1 26/10 29/20 31/13 33/16 36/20 50/8 51/1 53/11 55/10
Best's [9]  20/21 21/7 21/14 23/13 25/4 29/10 35/13 55/11 55/25
better [4]  13/14 21/22 31/8 57/24
between [8]  6/17 8/16 8/25 35/6 52/2 52/2 52/4 60/19
beyond [1]  48/1
binding [1]  16/23
bit [2]  19/5 32/12
bleeds [1]  43/13
bolster [1]  51/13
book [1]  60/4
both [4]  9/13 10/17 50/7 61/17
bottom [1]  44/15
bound [1]  16/21
bounds [1]  51/15
Brandenburg [6]  63/22 64/1 64/10 64/12 64/13 65/17
break [5]  19/4 38/8 38/9 38/15 38/19
brief [6]  5/13 12/3 12/3 30/24 38/19 42/20
briefing [5]  9/6 10/12 17/8 20/4 39/23
briefly [2]  55/23 62/9
bring [1]  9/23
bringing [1]  14/10
brings [2]  34/16 42/19

broad [1]  25/4
broaden [1]  35/19
broadly [1]  40/21
brush [1]  25/4
build [1]  53/13
building [1]  32/4
bunch [1]  49/7
burden [3]  10/16 64/8 64/15
burn [1]  53/11
buttresses [1]  50/7

**C**

California [4]  16/15 16/16 16/22 16/22
call [9]  19/17 24/1 24/17 25/12 26/1 26/3 28/20 47/12 52/3
calling [2]  23/25 50/11
calm [2]  23/1 49/6
came [4]  5/2 11/5 42/13 52/13
can [52]  6/22 10/23 11/23 14/1 14/24 17/7 17/18 18/7 18/10 18/25 23/7 24/7 24/9 24/21 24/24 29/11 29/13 31/5 31/6 32/6 33/3 33/25 37/5 38/1 38/9 38/17 39/5 41/12 42/21 44/9 44/11 47/1 47/5 49/21 51/11 53/1 53/15 53/16 53/16 54/23 54/24 55/2 55/17 57/3 58/8 61/7 61/21 62/24 62/25 63/6 63/12 64/25
can't [9]  22/3 25/15 38/25 51/17 58/13 58/23 62/15 62/16 62/16
cannot [2]  15/21 25/12
capable [1]  58/14
capacity [2]  31/19 58/18
Capitol [4]  15/21 24/21 50/21 51/4
car [1]  37/9
card [2]  44/25 44/25
careful [2]  26/6 27/13
case [66]  3/2 4/9 5/8 7/22 8/6 8/18 8/22 9/1 10/6 11/24 12/20 13/6 14/15 14/18 15/16 16/9 16/11 16/21 16/25 17/8 17/19 19/20 20/24 21/2 21/3 21/13 22/21 24/10 24/13 25/12 25/14 28/8 28/16 28/17 28/19 28/21 28/22 28/23 29/3 29/6 29/15 30/18 30/21 32/17 32/19 32/19 32/22 32/25 33/11 33/15 34/4 34/7 43/11 43/16 43/19 44/20 45/25 46/14 47/12 48/4 48/6 48/7 55/12 57/18 60/25
cases [8]  14/24 15/9 15/17 15/24 16/12 16/13 26/11 44/5
causation [2]  13/21 64/20
caused [8]  50/15 50/25 51/1 51/12 51/13 51/14 51/19 54/17
causes [2]  45/16 50/18
cautionary [1]  33/18
central [5]  25/14 32/19 32/25 48/4 48/6
certain [4]  24/20 39/24 42/18 43/24
certainly [6]  15/9 18/14 18/19 18/21 32/23 53/6
certify [1]  66/3
chance [2]  20/17 63/7
change [1]  10/15
chaos [2]  62/23 63/1
chapter [2]  61/9 61/10
charge [5]  9/12 14/11 14/13 52/15 52/15
charged [7]  8/13 8/14 8/15 16/2 22/20 51/25 52/21
charges [4]  9/25 10/6 10/7 14/10
charging [1]  34/23
chase [1]  58/4
Chicago [1]  1/14
chimed [1]  11/7
choose [1]  58/15
circumstance [1]  54/19
circumstances [8]  31/5 34/25 35/9 48/22 53/7 59/24 61/11 64/2

## C

cited [1] 57/15
cites [1] 60/18
citing [2] 16/13 16/15
citizen [1] 50/16
civil [2] 42/25 61/5
clarified [1] 56/10
clarifies [1] 39/18
clarify [7] 17/25 18/6 39/25 40/2 40/24 41/12 42/3
clarity [2] 18/15 22/9
clear [10] 13/1 16/17 17/23 34/3 34/19 42/7 42/12 44/23 49/10 65/11
clearly [2] 11/11 57/12
closely [2] 24/12 24/14
closest [1] 51/23
cocounsel [1] 3/7
Cohen [4] 17/24 18/1 18/11 55/1
COLUMBIA [1] 1/1
come [9] 16/19 24/22 26/15 32/16 38/12 47/12 49/8 53/4 64/25
comes [3] 60/24 61/5 62/12
coming [1] 52/18
comment [3] 9/10 12/4 12/7
comments [2] 15/16 49/7
common [2] 60/17 62/24
compared [2] 19/6 28/25
compel [25] 4/10 4/17 4/21 4/21 5/9 5/11 6/20 6/22 7/4 7/12 7/13 7/16 7/17 7/22 7/25 8/3 8/17 8/20 9/3 9/4 9/8 9/23 10/13 10/25 36/13
compelled [1] 36/8
complaining [1] 13/8
complaint [1] 12/18
complaints [1] 15/10
completely [3] 25/24 29/9 50/11
complicated [1] 63/21
component [1] 22/8
concedes [1] 20/19
concept [1] 59/9
concern [6] 23/12 27/23 34/18 48/19 51/2 55/18
concerned [2] 20/1 62/19
concerning [1] 57/15
concerns [3] 24/25 34/17 56/4
concert [1] 58/22
conclude [6] 30/4 31/9 44/18 45/5 46/7 54/11
concluded [1] 65/23
conclusion [3] 25/6 56/13 56/14
conclusions [2] 7/24 8/5
condition [4] 36/6 45/15 45/20 55/13
conditions [2] 10/3 54/7
conduct [5] 8/13 16/1 16/1 17/1 51/15
confer [2] 11/18 31/12
conference [4] 3/21 37/25 63/5 63/13
conferences [1] 57/14
confidence [1] 29/5
confirm [1] 3/20
conflicts [1] 13/25
confused [2] 41/18 42/3
confuses [1] 43/15
confusing [2] 20/11 21/16
confusion [1] 21/13
connect [1] 30/3
connected [4] 29/9 34/23 47/18 51/17
connecting [1] 29/20
connection [5] 8/16 8/20 8/25 30/22 31/21
connects [3] 31/18 31/19 35/6
Connor [1] 60/25
conscious [2] 37/5 37/13
consciousness [1] 29/12
consider [1] 19/22
considered [1] 52/9

considering [1] 16/21
consistent [2] 36/6 28/4
40/5
constituted [2] 54/5 54/9
constitutes [1] 66/4
Constitution [1] 1/23
contact [1] 10/4
contacting [1] 9/25
contemplating [1] 23/23
contingent [2] 55/10 56/2
continue [2] 5/13 38/17
continued [4] 1/19 2/1 5/16 5/21
contrary [1] 60/8
contributed [2] 54/6 54/16
control [1] 60/19
conversation [1] 24/16
convey [1] 47/15
convict [1] 52/15
conviction [1] 17/2
convictions [1] 52/14
convinced [2] 33/23 55/10
copy [1] 61/22
correct [14] 4/6 9/5 9/9 12/5 13/13 16/18 16/23 20/25 24/9 27/8 37/3 44/3 61/7 66/4
correctly [1] 41/18
cortex [1] 60/20
Cortez [2] 21/6 30/18
could [19] 13/20 17/17 23/13 30/3 33/2 36/1 38/7 38/12 40/2 43/9 45/8 45/9 45/10 50/5 50/9 50/11 50/15 58/10 58/10
couldn't [3] 11/6 30/4 45/13
counsel [5] 3/4 3/5 6/18 9/14 22/16
counts [1] 29/23
couple [9] 4/19 5/3 5/15 5/24 9/5 14/5 19/21 28/15 38/12
course [1] 17/10 38/14 55/8
courses [1] 59/22
court [45] 1/1 1/22 1/22 4/8 4/24 5/21 6/23 7/13 8/3 9/2 9/4 10/23 11/14 11/15 15/15 15/16 16/16 17/18 20/5 20/15 21/3 24/6 24/7 24/22 25/25 26/1 27/18 36/24 39/14 48/3 51/22 52/15 54/23 54/24 54/25 55/1 55/2 55/5 55/18 55/24 55/25 59/11 60/25 66/3 66/13
Court's [3] 9/23 15/16 36/19
courthouse [2] 15/17 15/20
courts [2] 1/23 39/11
credibility [4] 20/13 28/12 48/5 48/6
credible [2] 8/4 8/16
credit [1] 39/5
crime [1] 22/20
criminal [2] 1/3 3/2
criteria [1] 19/15
critical [1] 51/22
CRM [1] 1/12
cross [10] 18/7 18/11 18/11 23/15 23/22 25/21 32/16 33/10 41/11 42/5
cross-examination [5] 23/15 23/22 25/21 32/16 33/10
cross-examine [2] 41/11 42/5
crowd [3] 36/2 58/11 62/14
crowded [1] 58/22
curious [2] 23/10 23/22
current [1] 33/16
cut [1] 58/4

## D

damage [1] 15/20
danger [5] 33/22 34/3 34/11 34/20 36/8
dangerous [2] 34/24 43/25
dangers [1] 20/1
date [3] 5/14 5/22 54/15
Dated [1] 66/10
Daubert [15] 17/17 17/20 19/11

30/23 33/24 33/25 34/17 39/20
40/25 41/2 41/9 41/23 42/12 43/4
56/5
David [1] 2/3
day [23] 23/18 26/24 26/25 27/1
28/11 33/5 39/8 39/14 43/20 45/3
45/17 46/13 47/13 47/15 47/18
49/14 50/21 51/4 51/18 53/11 63/1
63/3 66/10
days [2] 5/3 52/12
DC [3] 1/5 1/16 1/24
deadline [1] 7/6
deal [1] 63/10
deals [1] 16/8
dear [1] 47/14
Dearborn [1] 1/13
December [2] 1/5 66/10
decide [4] 24/24 33/3 33/13 53/15
decided [1] 25/17
decides [1] 33/15
decision [9] 16/7 23/8 23/9 24/8
24/11 27/16 27/17 41/7 41/21
decisions [3] 8/21 16/16 61/19
defendant [19] 1/7 2/3 4/20 5/13
5/15 5/17 6/3 8/3 8/8 8/13 10/16
14/20 25/11 28/20 42/6 43/19 44/3
44/8 56/6
defendant's [5] 6/7 6/13 44/7
48/5 62/6
defender [4] 2/3 2/7 3/11 3/15
defense [19] 6/1 6/10 6/11 7/11
7/20 8/4 8/6 9/14 9/24 10/8 21/5
22/16 26/2 39/18 41/21 42/19 45/9
45/10 47/25
defer [1] 31/12
deferred [1] 11/14
definitively [2] 24/24 45/24
degree [5] 27/11 29/5 59/13 59/14
60/2
deliberated [1] 52/11
deliberating [1] 52/13
demanding [3] 57/17 64/10 64/12
democratic [3] 16/5 16/6 16/6
demonstrating [2] 64/15 64/23
denied [2] 8/10 10/14
deny [3] 7/13 9/2 9/4
depending [1] 44/11
depends [6] 15/25 43/5 43/6 43/6
43/7 58/24
depth [1] 14/19
derived [1] 57/13
described [4] 18/18 19/18 39/3
39/4
detail [4] 22/9 25/23 29/19 33/3
detailed [1] 60/14
determination [2] 31/23 56/23
determine [2] 14/1 62/17
determining [1] 44/17
diagnosed [1] 22/3
diagnosis [11] 21/17 21/21 22/3
22/4 22/7 22/8 26/16 27/3 27/6
32/14 33/5
diagonally [1] 52/8
did [22] 3/25 4/20 5/1 5/10 5/6
11/18 12/10 13/4 14/4 15/2 22/18
37/10 41/11 50/10 54/20 51/7
52/14 54/9 56/17 56/24 59/22
59/23
didn't [4] 19/21 36/1 36/11 63/7
died [1] 47/14
difference [1] 64/5
different [13] 5/15 14/16 15/22
17/18 34/14 39/20 42/1 48/21
48/21 48/22 50/17 52/24 61/12
difficult [1] 27/24
diminished [1] 23/20
direct [1] 10/4
directed [1] 63/22
directly [2] 36/22 37/4
disagree [1] 48/5
disassociatative [1] 37/7
disassociate [1] 51/19

**disclosed [4]**   31/10 54/4 56/9
56/19
**disclosure [2]**   18/18 54/20
**disclosures [1]**   54/15
**discovery [6]**   4/21 4/21 7/19
10/25 14/6 14/21
**discriminatory [4]**   10/17 10/18
10/18 10/19
**discuss [5]**   3/25 4/11 4/14 4/25
6/19
**discussed [10]**   5/11 5/20 5/24 6/2
7/14 8/11 9/15 9/19 21/18 44/4
**discussing [3]**   26/7 31/17 61/15
**discussion [6]**   4/9 11/16 12/9
13/7 38/22 39/2
**discussions [1]**   13/4
**dismissed [1]**   52/15
**disorder [1]**   21/21
**dispute [1]**   17/23
**disputing [2]**   56/19 64/21
**disregard [2]**   25/18 28/1
**disrupted [1]**   29/12
**dissertation [5]**   59/22 60/20 61/8
61/15 61/19
**dissociation [15]**   21/8 21/22
21/23 22/1 29/11 29/21 30/2 30/10
31/4 32/11 35/7 45/13 54/17 55/9
55/12
**dissociative [9]**   16/14 21/2 21/4
21/17 21/20 22/5 36/21 37/4 46/18
**Distortions [1]**   60/10
**DISTRICT [6]**   1/1 1/1 1/10 1/23
2/4 2/8
**disturbance [1]**   42/25
**do [34]**   4/11 8/21 9/2 9/20 12/15
13/12 14/19 14/22 17/22 18/7 23/3
23/7 25/15 26/14 30/2 31/16 31/24
32/1 37/10 38/10 39/24 40/11
40/16 41/10 41/24 44/11 46/19
49/3 50/19 53/14 62/15 62/16
63/19 65/16
**docket [7]**   5/3 6/23 35/17 37/2
61/22 61/24 65/8
**doctoral [3]**   59/13 59/14 60/2
**document [2]**   62/6 62/7
**documentation [1]**   7/6
**documents [3]**   5/18 5/25 6/21
**does [15]**   11/11 17/25 19/19 19/20
19/20 28/3 28/21 33/14 37/12 39/9
42/24 48/1 56/3 58/19 64/8
**doesn't [20]**   15/12 19/10 19/20
23/9 26/8 27/9 28/11 28/13 28/14
29/2 33/2 34/21 39/10 42/10 42/23
43/14 46/15 46/16 60/22 62/18
**doing [8]**   3/22 15/12 16/8 31/7
49/1 50/9 50/13 56/7
**DOJ [4]**   1/12 1/15 60/8 60/17
**DOJ's [1]**   60/12
**DOJ-CRM [1]**   1/12
**DOJ-USAO [1]**   1/15
**don't [44]**   3/24 4/10 8/23 12/25
13/7 14/21 17/14 18/6 20/16 24/4
26/9 26/18 27/15 29/8 29/17 30/11
30/24 30/25 31/7 36/4 36/14 37/9
37/10 38/1 38/24 40/1 40/9 41/17
42/3 44/13 45/15 47/8 48/22 50/13
53/20 55/6 56/1 57/18 58/9 58/16
59/24 62/2 63/11 64/19
**done [6]**   6/14 6/16 18/22 59/2
60/14
**door [2]**   23/14 53/4
**dots [3]**   29/9 29/20 35/6
**doubt [2]**   48/8 58/9
**down [5]**   13/25 16/11 36/23 40/1
47/17
**Dr [1]**   21/25
**Dr. [58]**   17/21 19/3 20/5 20/19
21/1 21/5 21/7 21/14 22/1 22/18
23/13 23/15 24/1 25/4 26/10 29/10
29/20 31/13 33/16 35/13 36/20

39/17 39/19 39/21 41/22 42/8
44/11 44/18 44/20 44/21 46/6
44/21 46/24 47/4 50/8 51/1 53/11
55/25 55/10 55/15 55/16 55/25
55/25 56/3 56/5 56/11 57/10 57/12
56/9 59/5 59/8 59/10 59/13 59/15
62/10 62/12 62/22 63/1
**Dr. Best [18]**   17/21 19/3 20/5
21/1 21/5 22/1 22/18 23/15 24/1
26/10 29/20 31/13 33/16 36/20
50/8 51/1 53/11 55/10
**Dr. Best's [9]**   20/19 21/7 21/14
23/13 25/4 29/10 35/13 55/11
55/25
**Dr. Rylant [21]**   39/17 39/19 39/21
41/22 42/12 42/20 43/3 44/10
44/21 46/24 55/2 55/25 56/3 56/5
56/11 58/6 59/5 59/8 59/10 62/12
62/22
**Dr. Rylant's [10]**   42/8 44/16 47/4
55/16 57/10 57/12 59/13 59/15
62/10 63/1
**draw [1]**   31/21
**drew [1]**   30/22
**dropped [1]**   15/3
**dual [1]**   46/25
**due [1]**   17/10
**during [6]**   5/23 11/6 27/13 39/8
60/10 60/15

**E**

**each [1]**   53/15
**earlier [2]**   35/19 49/5
**early [1]**   23/3
**ears [1]**   30/14
**easier [2]**   19/17 33/7
**easiest [1]**   19/2 19/3
**easily [1]**   47/1
**ECF [7]**   4/23 9/13 10/24 11/3
11/13 13/19 36/18
**educate [1]**   21/8
**effect [2]**   10/17 10/18
**effort [1]**   31/21
**efforts [1]**   10/1
**either [1]**   59/24
**election [1]**   5/16
**Elizabeth [1]**   2/7
**else [4]**   17/5 20/21 41/15 63/6
**elucidate [1]**   58/9
**email [1]**   38/1
**emails [1]**   6/8
**emotional [2]**   21/9 41/6 41/10
**encouraged [4]**   64/9 64/16 64/17
64/18
**encouragement [2]**   64/22 64/24
**encouraging [1]**   46/2
**ended [2]**   51/3 53/8
**enforce [1]**   11/10
**enforcement [36]**   4/23 7/1 11/2
16/4 19/6 33/20 33/21 34/1 34/2
34/9 34/10 34/21 35/15 35/22 36/5
36/7 36/12 36/14 39/22 41/3 41/9
41/23 42/9 42/13 43/5 43/8 43/17
43/23 44/25 45/2 50/10 50/16
54/11 56/6 56/15 56/24
**engage [2]**   31/6 46/2
**engaged [4]**   46/23 48/18 49/22
56/12
**engaging [1]**   31/5
**enough [3]**   15/22 35/10 40/3
**entertain [1]**   20/5
**entire [3]**   7/20 42/17 42/18
**entirely [3]**   27/17 34/3 48/21
**entitled [1]**   66/5
**environment [2]**   29/13 29/18
**erase [1]**   27/24
**error [3]**   16/13 16/14 21/4
**especially [3]**   21/13 35/14 58/3
**especially related [1]**   35/14
**essential [1]**   33/1
**essentially [1]**   20/2
**establish [2]**   53/2 63/18

**evaluation [1]**   6/15
**evaluations [2]**   6/12 6/13
**even [12]**   20/13 25/5 34/20 36/3
36/4 43/4 46/22 49/5 50/19 51/1
51/4 52/3
**event [6]**   22/9 22/10 22/11 22/25
53/25 54/21
**events [8]**   12/17 13/20 28/11
39/24 47/15 48/19 49/15 54/8
**ever [1]**   12/8
**every [1]**   22/8
**everyone [4]**   18/3 22/25 49/11
62/23
**everything [7]**   16/10 20/21 25/23
54/22 58/14 58/23 62/23
**evidence [19]**   7/24 8/4 8/5 10/17
12/15 18/2 21/5 24/10 24/12 26/15
32/18 33/14 34/6 36/7 36/10 42/7
43/21 49/2 51/13
**evolved [1]**   43/8
**exactly [2]**   3/24 40/9
**examination [6]**   23/15 23/22 25/21
32/16 33/10 46/21
**examine [2]**   41/11 42/5
**examined [1]**   60/12
**example [7]**   24/19 26/23 27/21
29/2 29/16 37/8 52/1
**examples [1]**   41/5
**exceeds [1]**   18/24
**except [1]**   24/18
**excessive [36]**   41/4 43/12 44/3
44/19 44/20 44/21 45/6 45/18
45/19 45/22 46/5 46/6 46/8 46/11
46/13 46/23 48/8 48/25 49/22
50/5 50/13 50/14 50/17 50/21 52/9
53/2 53/12 54/1 54/5 54/9 54/12
56/12 56/16 61/4 61/8 61/13
**exclude [4]**   16/14 20/21 25/7
27/23
**excluded [3]**   19/10 26/4 39/12
**exclusion [22]**   16/10 30/12 44/11
57/6 57/9 58/1 58/2 58/7 59/4
59/7 59/11 60/4 60/6 60/8 60/17
61/4 61/9 61/12 62/11 62/15 62/20
63/2
**exclusive [1]**   22/19
**excuse [2]**   7/21 20/3
**exhaustive [1]**   15/8
**Exhibit [1]**   62/6
**exhibits [1]**   6/19
**exist [1]**   62/18
**expand [1]**   40/19
**expedite [1]**   58/5
**experience [10]**   19/7 29/12 35/14
41/6 42/21 42/22 42/24 59/5 61/12
62/17
**experienced [16]**   39/5 39/6 39/22
41/3 41/9 41/23 42/9 42/13 43/5
43/10 43/17 43/23 45/2 56/6 56/23
59/6
**experiences [1]**   43/19
**experiencing [1]**   61/4
**expert [34]**   18/6 18/16 19/10 21/6
21/23 24/17 25/11 26/12 29/10
31/2 31/9 32/2 33/23 34/11 35/14
36/10 36/15 36/15 41/11 41/13
42/15 43/21 44/16 46/6 46/25
48/16 50/4 50/10 54/14 54/24
53/20 54/3 54/4 59/11
**expertise [8]**   33/24 34/8 34/16
43/22 58/6 58/8 58/19 59/5
**experts [16]**   13/21 13/22 13/24
16/10 17/11 17/18 23/25 25/8 26/3
26/3 26/7 27/18 27/19 31/3 57/13
57/15
**explain [5]**   20/25 31/16 33/1
34/21 49/19
**explicitly [1]**   12/23
**expressed [1]**   56/4
**extend [1]**   42/24

**E**

**extended [1]** 15/11
**extensive [3]** 15/9 17/8 35/13
**extent [12]** 13/4 20/5 32/9 32/21
33/17 39/6 40/20 42/21 42/24 44/7
45/11 65/1
**extraordinarily [1]** 16/20
**extraordinary [2]** 14/19 14/22
**extreme [4]** 15/20 16/2 17/1 25/6
**extremely [4]** 20/8 28/24 29/4
46/13
**eyes [1]** 30/13

**F**

**face [1]** 33/14
**facilitate [1]** 33/5
**fact [11]** 5/16 5/18 12/9 37/6
44/17 46/3 48/8 58/11 62/12 64/9
64/16
**factor [1]** 22/2
**factors [2]** 61/16 61/17
**facts [3]** 8/23 11/11 11/12
**factual [2]** 11/3 11/4
**factually [1]** 10/5
**fail [1]** 10/7
**failing [1]** 10/2
**fair [3]** 40/3 53/24 54/14
**fairly [2]** 32/19 27/6
**fallen [2]** 52/5 52/6
**familiar [1]** 35/20
**fantasy [2]** 50/9 50/18
**far [8]** 11/23 23/24 26/22 39/17
46/14 51/10 51/15 65/7
**Fat [1]** 55/1
**favor [1]** 57/21
**FBI [12]** 5/15 5/19 5/23 6/7 6/9
6/14 6/16 8/1 11/8 11/9 11/17
15/10
**FBI's [1]** 6/15
**fear [1]** 26/11
**feared [3]** 23/16 26/24 46/4
**federal [6]** 2/3 2/7 3/15 16/8
39/11 59/11
**fell [1]** 51/15
**felonies [3]** 12/25 13/1 13/6
**felony [10]** 9/12 12/1 12/14 13/3
13/5 13/9 13/10 13/15 14/11 14/13
**felt [1]** 7/3
**few [4]** 9/18 14/3 26/14 37/4
**field [4]** 57/13 57/15 58/7 58/20
**figure [1]** 54/2
**file [11]** 4/20 5/19 5/23 5/24 6/3
6/10 6/14 11/17 53/16 53/17 61/21
**filed [7]** 5/9 6/20 6/25 7/4 12/19
12/23 17/8
**files [1]** 6/15
**filing [5]** 4/9 4/24 10/24 11/11
65/8
**filings [3]** 17/19 19/8 39/4
**find [4]** 10/22 28/10 40/8 51/9
**finding [1]** 21/4
**fine [4]** 38/10 46/11 48/18 53/18
**firing [1]** 53/7
**first [24]** 4/2 4/7 4/11 4/14 6/20
7/15 9/7 9/10 9/15 14/8 14/10
17/10 20/12 23/25 25/8 28/20
36/20 37/1 40/14 42/8 42/10 63/8
65/13 65/15
**fit [1]** 19/10
**five [9]** 45/23 45/25 46/1 46/8
46/11 63/16 63/16 64/17 65/7
**fix [1]** 15/20
**flies [1]** 37/8
**Floor [1]** 1/13
**focus [1]** 58/12
**focused [1]** 51/11
**focusing [2]** 40/11 58/24
**follow [2]** 32/6 41/17
**following [1]** 16/22
**Fontan [5]** 1/15 3/7 4/5 38/1
39/14

**force [42]** 41/5 43/12 44/3 44/19
44/20 44/24 45/1 45/5 45/18 45/19
45/22 46/5 46/6 46/8 46/11 46/13
46/23 48/18 48/25 49/22 50/4 50/5
50/13 50/14 50/17 50/21 53/2
53/12 54/1 54/5 54/9 54/12 56/12
56/16 57/15 60/7 60/10 60/21
60/24 61/5 61/6 61/13 61/18
**foregoing [1]** 66/4
**forever [1]** 15/20
**forget [3]** 12/21 26/4 54/25
**form [3]** 31/19 45/14 46/19
**formal [4]** 6/12 13/9 13/11 13/16
**former [14]** 39/22 41/3 41/9 42/9
42/13 43/5 43/10 43/17 43/23
45/21 50/15 56/6 56/15 56/23
**forming [1]** 30/16
**forward [2]** 7/8 41/13
**found [3]** 15/16 16/24 60/12
**four [2]** 12/18 52/12
**Fourth [1]** 59/13
**frankly [4]** 7/25 11/6 34/14 46/16
**fraud [1]** 10/1
**free [1]** 32/8
**front [6]** 23/19 30/11 39/1 48/9
48/15 48/24
**frozen [2]** 37/22 37/23
**full [3]** 23/3 36/20 37/1
**fully [1]** 21/20
**further [7]** 4/1 7/23 12/3 32/4
32/12 37/14 55/21

**G**

**gamesmanship [1]** 26/13
**gas [2]** 23/4 53/7
**gave [4]** 37/7 52/13 54/13 54/25
**GED [2]** 9/25 10/4
**GED's [1]** 9/25
**general [4]** 25/2 46/12 51/3 51/18
**generally [4]** 8/1 8/1 34/13 43/16
**Gestapo [3]** 48/12 49/13 49/20
**gesturing [1]** 8/15
**get [8]** 3/20 32/13 33/3 35/10
39/13 48/22 63/7 63/7
**gets [2]** 28/7 30/8
**getting [3]** 25/22 26/16 42/2
**give [6]** 20/17 34/12 53/17 55/2
62/2 63/19
**given [7]** 7/3 7/10 13/7 21/14
38/25 49/10 55/1
**giving [2]** 20/3 63/25
**gloss [1]** 18/17
**go [19]** 8/22 12/2 30/23 32/1 32/5
35/5 36/1 36/2 37/11 37/12 37/14
40/1 45/9 45/9 45/10 45/16 47/17
55/14 62/3
**goes [6]** 30/10 39/17 45/11 50/6
55/9 57/14
**going [61]** 3/20 12/15 12/24 13/1
13/5 13/9 13/23 14/1 15/7 21/10
23/3 24/13 24/16 24/19 24/21
24/22 26/22 26/23 28/21 32/10
32/13 32/16 33/13 35/24 36/11
39/19 40/9 40/10 40/14 40/20 41/1
41/14 44/19 45/3 45/17 45/19 46/7
46/15 47/18 48/8 48/9 48/23 49/1
49/15 49/24 50/20 51/4 51/5 51/17
51/20 52/8 53/4 57/22 58/12 58/25
59/1 63/10 63/15 63/20 65/15
65/17
**gone [3]** 5/3 45/1 58/22
**good [12]** 3/6 3/9 3/10 3/13 3/14
3/18 13/12 15/5 19/1 27/2 28/14
28/15
**got [4]** 25/2 29/19 30/20 57/4
**government [74]**
**government's [12]** 6/5 17/12 17/21
19/25 20/6 22/12 25/2 25/3 25/5
56/2 57/10 60/7
**grade [1]** 44/25
**Graham [1]** 60/24
**grand [1]** 10/8

**great [3]** 13/25 40/2 51/2
**Green, Page 71 of 78**
**grievances [1]** 7/25
**ground [3]** 15/24 26/1 47/10
**grounds [5]** 8/2 8/2 18/24 46/13
50/21
**group [3]** 42/17 42/18 43/10
**guess [8]** 5/7 5/8 6/24 7/19 9/3
36/3 40/18 58/5
**guidance [1]** 35/10
**guilty [2]** 9/11 44/21
**gun [1]** 61/3

**H**

**had [19]** 4/24 6/21 9/15 9/17
11/16 22/1 22/17 23/17 26/24
26/25 27/21 28/20 29/7 30/4 30/6
35/25 43/20 44/8 60/16
**hadn't [2]** 22/16 22/16
**half [1]** 49/5
**halfway [1]** 37/1
**halls [1]** 15/18
**hallucinations [1]** 45/16
**handle [1]** 65/14
**happen [1]** 26/8
**happened [3]** 5/8 47/18 52/17
**happy [7]** 4/13 20/15 31/15 46/9
55/16 55/21 65/16
**hard [3]** 12/15 16/19 28/10
**hardest [1]** 61/2
**harsh [1]** 16/20
**harshly [1]** 16/12
**has [59]** 4/24 5/7 5/8 6/24 6/24
7/20 8/17 8/21 10/16 11/25 13/10
13/10 14/16 17/19 18/22 19/18
20/4 20/15 22/13 25/13 26/1 29/9
31/10 31/11 33/12 33/24 34/7
37/19 39/14 40/21 42/22 43/7 43/8
44/4 48/3 51/16 52/24 53/8 54/4
54/7 54/18 54/19 54/20 55/5 55/10
56/18 56/19 56/21 58/6 58/8 58/22
59/2 59/6 59/10 59/19 60/4 62/10
63/11 64/21
**hasn't [2]** 8/6 26/19
**have [108]**
**haven't [1]** 14/20 30/22
**having [8]** 10/4 23/14 34/24 38/22
43/21 50/17 53/20 54/3
**he [139]**
**He's [1]** 30/9
**head [7]** 45/20 47/19 47/22 47/25
48/2 50/25 62/22
**hear [9]** 4/1 20/16 44/1 44/13
55/21 59/17 59/20 59/25 59/25
**heard [11]** 17/10 22/16 23/17
26/25 27/25 52/21 52/21 55/20
62/23 64/17 64/24
**hearing [19]** 1/9 5/24 6/3 6/17
11/6 19/11 21/18 30/24 37/8 39/20
40/25 41/8 42/12 43/4 44/22 48/14
48/19 56/5 57/5
**hearings [3]** 5/11 17/17 17/20
**hears [3]** 24/10 24/12 27/24
**hearsay [8]** 20/3 25/4 25/8 26/9
26/12 26/21 27/4 33/9
**help [2]** 58/9 60/22
**helpful [3]** 39/18 65/1 65/9
**her [49]** 1/9 14/4 19/4 19/5 19/16
19/17 19/20 19/22 20/2 21/16 22/4
25/18 25/19 25/22 25/23 26/15
27/3 27/6 28/2 28/7 28/9 28/23
30/11 31/21 32/2 32/5 32/5 32/11
32/13 32/15 33/4 33/5 33/7 33/20
34/8 34/8 35/3 35/3 35/5 37/15
37/22 38/1 38/2 38/3 39/1 39/4
39/4 39/9 39/11 41/17
**here [23]** 3/2 3/11 3/15 14/25
15/6 19/23 20/1 25/15 28/15 28/18
29/22 30/5 30/22 31/1 31/3 43/15
47/12 52/18 53/5 53/25 54/5 64/14
64/22
**Hermansen [12]** 2/3 3/15 10/20

**H**

Hermansen... [9]   12/2 15/7 18/8
20/16 40/4 41/15 44/14 47/10
56/11
high [4]   29/5 32/20 46/20 59/1
highlights [2]   43/2 43/14
highly [3]   33/11 47/8 50/3
him [29]   9/25 11/10 18/11 18/16
22/10 24/13 24/13 24/14 24/17
27/18 28/20 29/13 33/1 34/5 44/23
45/16 46/18 47/1 47/5 48/16 48/24
48/25 50/12 50/17 51/19
52/15 53/20 62/13
himself [4]   23/15 23/21 27/10
62/13
his [72]
hit [4]   20/12 22/22 50/24 62/21
hitting [1]   22/21
Hold [1]   37/23
hole [1]   40/1
Honor [62]   3/6 3/10 3/14 4/6 4/10
4/15 4/19 5/6 8/22 9/12 9/22
10/10 10/23 13/13 13/19 17/7
17/12 17/16 18/9 18/14 19/1 20/18
21/19 35/12 35/18 36/17 37/3
37/18 37/19 38/2 38/7 38/13 38/18
38/21 39/17 40/16 40/23 41/25
44/4 44/9 44/11 44/15 46/24 49/25
50/4 54/8 54/22 55/15 55/23 56/18
57/7 57/25 60/1 61/14 61/25 62/5
62/9 62/21 65/4 65/13 65/19
HONORABLE [1]   1/9
hope [1]   35/9
Hopefully [1]   37/24
hopelessly [1]   52/12
hotel [1]   13/23
hour [2]   23/3 49/5
hours [2]   23/2 53/13
how [32]   7/8 7/8 8/20 16/12 22/25
29/14 29/20 30/2 30/3 32/13 33/3
34/1 34/4 34/9 34/10 34/19 35/22
36/4 39/4 40/21 42/12 43/7 43/7
47/2 47/3 47/6 47/15 55/17 55/25
56/7 56/24 59/23
however [2]   39/22 65/14
huge [1]   49/9
human [2]   58/13 60/20
hung [1]   52/12

**I**

I'm [8]   6/17 10/18 10/21 12/2
17/22 35/16 38/13 40/16
identified [5]   26/19 31/1 53/25
54/3 54/15
identifies [1]   50/4
identify [2]   53/15 63/16
identity [3]   29/12 29/17 30/6
IL [1]   1/14
imagine [1]   12/15
immediately [1]   63/12
immense [1]   47/7
imminent [1]   63/23
impasse [2]   13/14 13/16
important [4]   7/7 22/7 24/5 26/15
importantly [1]   8/16
imprecise [1]   14/4
impression [1]   25/2
improper [1]   41/4
inadmissible [1]   20/3
inappropriate [2]   26/13 44/24
inartfully [1]   13/14
incident [1]   53/12
incidents [3]   53/13 53/16 53/19
incite [2]   63/24 64/13
inciting [1]   63/23
inclination [3]   33/6 33/16 64/6
inclined [1]   54/17
included [2]   16/11 48/7
includes [6]   59/13 60/2 60/4 60/9
63/21 64/22
including [2]   49/15 60/19

incorporated [2]   11/20 11/22
indeed [2]   11/20 11/25
incredibly [1]   14/19
indeed [2]   48/17 64/24
indicated [6]   6/15 28/6 35/4
37/20 39/23 48/4
indicating [1]   60/6
indication [1]   22/10
indications [1]   11/15
indictment [2]   10/2 10/7
indirect [1]   10/4
individual [5]   37/5 43/15 48/2
62/14 62/17
individuals [9]   18/3 19/6 45/23
46/4 46/8 46/11 63/16 63/17 65/7
inextricably [1]   21/3
influenced [1]   19/22
informal [1]   9/10
information [13]   7/15 7/16 7/18
7/20 8/8 8/17 8/19 9/1 10/10
10/14 11/19 27/20 60/5
informative [1]   17/4
informed [2]   6/11 24/11
Informing [1]   60/11
inherently [1]   21/15
inject [1]   28/21
inquired [1]   21/19
inquiry [3]   43/4 43/8 61/12
instruction [7]   52/13 63/20 63/21
64/1 65/1 65/14 65/15
instructions [3]   16/12 33/18
63/11
instructs [1]   59/8
insufficient [1]   19/23
intend [1]   49/3
intended [1]   11/3
intends [1]   36/21
intent [7]   10/19 29/21 29/24
31/19 40/22 44/7 56/8
intentionally [1]   35/8
intermediate [1]   16/15
intertwined [1]   21/3
introduce [1]   42/6
introducing [3]   20/2 31/3 43/20
introductory [1]   6/8
invading [1]   15/21
investigation [2]   6/9 14/14
involving [1]   53/2
irrelevant [4]   19/12 28/24 44/6
44/24
is [499]
isn't [7]   21/16 21/16 22/21 34/23
43/16 56/19 58/17
issue [40]   8/12 8/25 17/9 18/11
20/20 20/24 21/10 21/11 23/20
23/20 24/23 25/15 27/7 27/10 28/8
28/16 28/17 28/23 29/3 29/5 29/8
29/10 30/2 30/6 31/22 32/10 32/17
32/22 32/24 32/24 33/9 33/15
33/18 35/2 44/6 44/10 44/14 57/6
57/21 62/10
issues [7]   4/2 4/8 31/3 43/15
47/17 50/22 62/20
it [246]
its [7]   19/8 20/4 25/6 28/25
32/11 32/20 45/25
itself [3]   15/4 31/4 35/7

**J**

January [8]   14/20 15/9 15/24 22/5
22/14 42/25 43/18 44/5
January 6 [8]   14/20 15/9 15/24
22/5 22/14 42/25 43/18 44/5
JARED [4]   1/6 3/3 3/16 24/2
joint [3]   9/13 9/15 9/18
Joshua [1]   55/1
journal [1]   42/15
judge [2]   1/10 52/12
judgmental [1]   48/10
July [2]   5/10 6/24
July 3rd [1]   5/10
jump [1]   4/7

jumps [1]   37/9
juries [2]   60/16
jurors [2]   21/8 58/18
jury [24]   10/8 20/11 21/11 23/19
25/18 27/24 28/10 29/2 30/4 31/22
34/12 39/1 43/21 43/25 43/25
48/10 52/11 58/9 58/10 62/24
62/24 63/2 63/10 64/25
just [99]
justice [2]   15/18 15/19
justification [1]   20/3
justify [1]   48/20

**K**

keep [1]   52/13
keeping [1]   44/25
key [3]   21/5 27/3 60/23
kill [2]   34/22 34/22
killed [3]   23/17 26/25 47/13
kind [12]   7/8 19/4 19/14 19/18
20/8 20/10 26/1 39/3 43/13 43/22
46/9 51/3
know [67]
knowing [1]   31/6
knowingly [1]   35/8
knowledge [4]   15/8 34/9 43/20
44/7
knows [9]   4/19 5/16 6/23 8/3 10/8
11/12 24/7 24/7 58/23
Kurt [2]   2/3 3/14

**L**

labeled [1]   62/6
labeling [2]   34/8 34/11
lack [1]   43/2
lacks [1]   42/11
LANE [2]   1/6 3/3
language [2]   63/21 64/1
last [4]   6/17 7/5 7/11 26/5
late [2]   31/2 32/2
later [2]   9/18 30/13
latest [1]   4/9
law [37]   16/3 16/16 16/22 19/6
33/20 33/21 34/1 34/1 34/9 34/10
34/21 35/14 35/22 36/5 36/7 36/12
36/14 39/22 41/3 41/9 41/23 42/9
42/13 43/5 43/7 43/10 43/17 43/23
44/25 45/2 50/10 50/15 54/11 56/6
56/15 56/24 57/18
lawless [1]   63/23
lay [2]   35/13 58/18
layed [1]   57/12
layout [1]   18/3
layperson [2]   58/10 58/20
learn [1]   59/23
learning [3]   60/2 60/2 60/3
leash [2]   27/19 28/2
least [12]   9/12 13/3 14/3 23/13
27/10 32/18 33/16 34/18 54/18
57/1 57/21 65/2
leave [3]   35/25 36/8 36/11
Lee [6]   2/7 3/10 11/17 18/8 31/11
31/14
left [4]   11/14 31/22 36/1 36/1
legal [1]   31/23
length [1]   21/18
lengths [1]   14/22
let [11]   3/20 18/23 24/3 38/2
38/8 45/7 46/9 52/9 52/10 52/10
58/4
Let's [4]   14/3 14/25 30/7 38/14
Lethal [1]   60/10
level [3]   16/16 29/19 62/17
life [2]   23/16 26/24
like [33]   4/16 9/12 15/17 16/10
18/17 23/1 24/14 25/25 26/9 30/11
30/17 30/17 30/18 31/12 31/12
34/25 36/16 37/12 38/3 38/21
38/23 41/5 42/24 45/15 47/2 47/6
51/9 57/7 58/23 60/7 62/16 65/8
65/14
likely [5]   32/25 41/5 42/17 63/23

**L**

likely... [1]  64/13
limited [3]  18/12 20/9 33/17
limits [1]  25/16
LINDSAY [3]  1/22 66/3 66/12
line [5]  23/2 44/15 49/6 52/5
52/20
list [6]  3/25 7/25 18/7 18/11
18/12 22/13
listen [3]  58/23 62/24 62/25
listening [3]  58/13 58/14 58/15
literature [1]  19/14
litigated [1]  5/10
little [5]  16/19 19/5 32/12
located [1]  18/4
location [1]  18/2
logging [2]  38/5 38/7
logical [1]  25/6
long [2]  14/7 65/18
longer [5]  12/20 18/5 27/19 37/24
46/19
look [15]  24/14 32/1 32/5 32/5
35/5 37/15 51/3 53/5 53/5 53/17
61/1 62/1 62/4 62/14 62/14
looking [4]  6/23 22/19 36/17 40/8
looks [1]  38/3
loss [6]  7/8 20/20 20/23 21/1
22/24 29/12
lost [2]  14/25 30/7
lot [12]  7/13 8/19 9/7 17/2 50/20
51/5 58/12 59/2 61/5 62/11 62/12
62/25
lots [7]  23/4 23/4 23/4 25/7
34/14 35/25 52/14
loud [2]  34/25 58/21

**M**

made [4]  9/10 11/15 12/8 15/10
main [2]  2/8 28/9
major [1]  47/6
majority [3]  10/11 10/11 43/23
make [15]  14/25 15/6 23/9 24/8
24/9 26/1 26/8 31/25 32/9 38/20
42/7 49/24 51/11 55/6 57/8
makes [2]  4/3 27/17
making [7]  16/7 24/13 32/13 41/7
49/7 56/13 65/11
malingering [1]  19/24
many [1]  5/20
margin [1]  12/10
Mariano [1]  12/23
material [1]  32/21
materially [1]  9/6
matter [6]  9/16 9/20 46/15 46/16
48/1 66/5
matters [5]  26/7 45/12 45/15
45/19 47/25
may [13]  8/19 20/23 25/16 28/6
28/10 28/23 33/5 33/14 37/9 46/22
46/22 53/23 57/22
maybe [11]  14/21 15/1 18/7 30/23
34/5 38/1 38/5 49/5 50/22 51/18
57/24
me [45]  3/20 4/4 10/21 12/23
15/12 17/23 23/16 23/17 23/18
24/3 26/24 26/24 27/1 29/9 30/12
30/20 34/3 34/6 34/19 36/9 37/22
38/6 45/7 45/8 46/13 47/14 47/16
48/14 49/21 50/20 50/25 51/9
52/16 53/15 53/16 53/17 55/10
58/4 58/19 59/21 61/7 61/10 61/10
61/22 64/4
mean [16]  8/19 16/24 21/25 22/21
25/7 26/5 26/16 27/14 29/15 36/19
41/17 46/25 47/1 48/13 50/1 61/7
meaningful [1]  35/6
means [1]  43/9
meant [1]  42/14
measure [1]  62/15
meet [4]  11/18 19/15 42/10 56/3
meets [1]  18/20

**memories [1]**  30/16
memory [19]  20/7 22/4 22/6 22/9
22/24 24/19 25/24 28/8 28/17
28/22 29/3 29/5 29/12 29/16 30/5
32/10 32/12 32/18 32/22 33/7 33/8
33/19 48/4 50/23 52/11
mens [15]  21/10 21/11 29/8 29/15
29/16 29/22 30/1 30/3 30/5 35/4
36/18 39/2 45/14 46/19 55/12
mental [1]  21/6
mentioned [1]  5/9
message [1]  38/3
messaged [2]  38/2 38/6
met [3]  6/18 8/6 10/16
methodology [12]  42/11 42/14 43/2
43/9 55/16 56/22 57/8 57/10 57/12
57/13 57/16 58/8
might [20]  11/9 24/21 24/22 25/17
26/15 27/18 27/22 28/1 28/19 31/7
34/15 39/18 45/22 46/6 46/12 48/4
51/6 51/6 51/19 55/1
mind [3]  21/10 32/17 46/16
mindset [1]  43/11
minute [5]  6/2 10/21 38/8 38/14
62/3
minutes [4]  14/3 38/13 57/5 57/20
mirror [1]  6/4
misconstruing [1]  55/17
misdemeanors [2]  12/18 13/2
misperceives [1]  45/17
missing [1]  11/20
misunderstanding [1]  57/11
misunderstood [1]  29/18
modern [1]  15/19
month [1]  7/4
months [1]  9/18
moot [1]  14/7
more [18]  7/19 7/19 8/4 11/11
24/23 27/24 34/6 36/9 40/21 43/22
43/22 45/24 48/14 50/20 63/18
64/9 64/12 64/17
MOSS [1]  1/9
most [5]  8/15 24/11 28/23 39/18
65/9
mostly [2]  52/6 62/19
motion [43]  1/9 4/10 4/17 4/20
4/21 5/8 5/11 5/14 6/3 6/20 6/22
6/25 6/25 7/4 7/12 7/13 7/15 7/17
7/22 7/25 8/3 8/9 8/10 8/17 8/20
9/3 9/4 9/7 9/23 10/13 10/14
10/25 10/25 11/5 11/6 12/19 12/24
14/6 17/16 17/13 24/5 25/3 57/23
move [10]  7/8 34/2 36/8 41/13
45/7 49/10 49/10 49/10 49/10 57/9
moved [2]  5/13 34/24
moves [1]  34/20
moving [6]  7/10 7/11 33/22 34/5
34/21 58/1
Mr [8]  15/2 17/24 18/1 18/11
26/23 30/7 41/15 47/3
Mr. [79]
Mr. Hermansen [9]  10/20 12/2 15/7
18/8 20/16 40/4 44/14 47/10 56/11
Mr. Jared [1]  3/16
Mr. Rylant [1]  37/17
Mr. Thomas [3]  52/1 52/7 52/14
Mr. Wise [50]  3/11 3/20 11/4 11/7
14/23 14/25 19/22 20/7 22/4 22/21
23/5 23/14 23/21 23/25 24/3 24/7
25/17 26/7 28/3 28/11 28/19 29/2
32/14 33/4 33/8 33/12 34/23 35/24
44/18 45/3 45/13 46/2 46/4 46/22
48/9 48/15 48/20 49/22 50/5 51/21
51/24 52/19 52/21 53/1 54/6 54/16
56/17 63/18 64/8 64/15
Mr. Wise's [15]  19/5 20/20 21/1
21/6 21/9 23/8 27/16 28/8 32/10
32/22 46/16 47/19 50/7 50/23 53/9
Ms [5]  4/5 11/17 31/14 38/8 39/14
Ms. Lee [1]  18/8 31/11 37/23 38/1
Ms. Fontan [1]  38/1
Ms. Lee [2]  18/8 31/11

**Ms. Rocha [1]**  37/23
much [27]  11/17 19/17 33/3 51/10
multiple [5]  5/11 6/18 8/11 44/5
53/12
must [1]  8/4
my [37]  3/7 11/13 13/18 14/17
15/8 15/17 17/25 18/4 27/22 30/2
31/1 32/7 32/17 33/6 33/15 34/25
35/21 36/18 38/3 39/20 40/18
40/22 40/24 41/2 41/8 41/19 41/21
46/9 48/19 51/2 52/11 57/1 57/1
57/5 64/6 65/2 65/12
myself [1]  65/16

**N**

N.W [1]  1/16
nail [1]  62/21
name [1]  3/4
narrower [1]  51/11
narrowly [1]  20/14
national [1]  35/14
nature [1]  39/4
Nazi [3]  48/11 49/12 49/20
necessarily [1]  9/8
necessary [5]  7/3 21/21 45/14
46/19 63/5
need [20]  13/11 13/22 13/24 24/3
27/12 28/9 30/23 31/8 31/25 32/1
32/6 32/9 32/12 33/14 36/1 40/17
50/19 53/18 54/2 55/14
needed [2]  5/16 5/17
needs [5]  21/1 45/22 45/25 56/9
56/9
negative [1]  49/8
never [6]  13/8 29/19 33/9 36/1
51/7 53/25
new [10]  7/15 7/18 9/24 10/2 10/5
10/7 10/7 10/14 17/2 31/3
newest [1]  7/17
next [2]  1/19 57/5
nexus [2]  54/20 55/11
Niewenhous [2]  22/13 22/17
nightmare [1]  26/2
nights [1]  4/20
nightstick [2]  50/25 51/2
no [36]  1/4 6/12 6/24 6/25 7/15
7/21 8/16 8/20 8/25 8/25 10/7
12/20 13/2 13/16 15/3 15/25 17/7
18/4 28/13 28/13 28/13 30/1 30/1
30/25 36/7 37/24 42/14 42/14
42/15 42/15 42/15 43/9 44/19
46/18 62/13 62/13
noise [1]  58/16
noises [1]  34/25
none [3]  7/17 8/7 54/8
Nope [1]  39/16
normal [2]  25/7 25/10 60/6
not [129]
note [1]  39/3
noted [2]  12/10 48/18
noteworthy [1]  22/12
nothing [4]  12/14 19/14 23/3
42/15
notice [1]  6/21
November [5]  5/14 5/21 6/5 6/10
6/18
November 15th [1]  6/10
November 21st [1]  6/5
now [9]  6/5 6/18 7/6 23/10 31/2
33/6 50/2 57/17 63/25
number [7]  3/3 4/23 9/13 9/13
10/24 29/23 49/9
numerous [1]  60/18
NW [1]  1/23

**O**

object [2]  18/1 18/19
objection [3]  18/25 60/8 62/12
observed [1]  41/4
obtained [1]  10/3
obviously [9]  15/8 17/19 17/20
19/17 23/8 23/20 52/17 58/21

**O**

obviously... [1]   62/10
occurred [3]   48/20 60/15 64/22
October [9]   5/12 5/21 6/6 6/17
40/6 40/12 40/25 41/2 42/2
October 21st [1]   5/21
October 25th [1]   6/6
October 4th [1]   5/12
October 7th [5]   40/6 40/12 40/25
41/2 42/2
off [4]   15/2 18/7 18/11 18/12
offenses [1]   21/7
offer [14]   9/11 11/25 12/6 12/7
12/8 13/2 13/9 13/11 13/16 16/8
41/22 48/23 49/1 49/23
offered [2]   28/9 53/18
offering [6]   18/1 27/5 27/5 28/12
33/9 41/22
offers [1]   11/23
Office [1]   2/4
officer [32]   22/13 22/17 34/21
36/5 39/22 39/23 40/11 41/3 41/9
41/23 42/9 42/13 43/6 45/2 46/12
48/11 48/17 48/21 49/20 49/21
50/10 50/16 56/6 56/15 56/24 59/2
59/6 59/6 61/1 61/3 61/4 61/13
officers [15]   36/7 36/12 43/10
43/17 43/24 44/3 46/22 47/12 49/6
49/9 50/1 50/2 51/8 59/8 60/13
Officers' [1]   60/10
official [4]   1/22 60/9 66/3 66/13
oh [1]   30/4
okay [22]   4/15 4/15 13/17 15/1
15/5 18/10 24/22 28/5 37/14 37/16
37/17 38/7 38/15 40/13 40/16
41/20 41/25 44/13 55/4 59/20 62/8
65/19
once [2]   27/24 27/25
one [30]   4/5 9/10 9/12 10/25 11/7
11/25 13/3 14/6 18/7 23/11 27/14
28/8 29/11 32/24 34/20 40/17 45/9
47/13 48/13 48/17 49/6 51/23 52/1
53/12 54/1 58/4 59/3 61/1 63/18
64/17
one's [1]   35/8
ones [1]   46/1
only [18]   10/25 11/25 12/14 12/25
19/12 20/7 20/7 22/6 24/7 24/9
30/16 33/17 40/13 40/14 41/22
55/9 57/20 58/5
open [10]   4/8 38/22 49/1 49/23
51/2 51/16 53/4 53/4 53/8 54/7
opine [1]   54/10
opinion [12]   19/5 19/20 19/22
21/14 21/16 29/10 41/3 42/8 42/9
60/18 62/20 64/5
opinions [1]   19/4 42/4
opportunities [1]   35/25
opportunity [2]   4/24 9/5
opposing [2]   12/19 12/24
oral [1]   10/12
order [11]   6/2 12/17 12/19 12/24
13/20 17/9 23/11 23/24 33/5 48/20
49/10
OREGON [3]   2/4 2/8 3/16
original [1]   4/21
originally [2]   5/9 12/18
other [21]   5/4 5/25 13/24 14/20
14/24 15/9 18/6 19/6 19/15 28/6
29/7 29/22 30/3 39/11 39/11 39/13
44/5 51/8 52/10 52/14 52/17
others [4]   8/13 8/14 45/10 48/1
otherwise [2]   29/1 32/15
our [13]   9/3 10/11 10/12 11/22
15/19 26/7 35/11 40/19 40/20
45/25 50/4 62/12 63/5
ourselves [1]   5/7
out [14]   10/5 15/11 15/24 20/4
28/7 28/22 30/17 32/4 33/6 35/13
44/4 54/2 57/12 62/2
outnumbered [1]   47/7

outside [1]   51/15
outside... [1]   51/22
over [13]   5/25 7/4 8/12 11/6
11/16 37/8 39/14 50/24 52/5 52/7
53/5 53/6 53/13
overcharging [1]   13/6
overhead [2]   51/22 51/24
overlapping [1]   56/1
overturn [1]   17/1
overwhelmed [1]   58/3
overwhelming [1]   58/16
own [3]   43/19 60/9 60/12

**P**

p.m [4]   38/16 48/20 48/21 65/23
page [4]   1/19 19/9 36/18 36/25
pages [1]   35/13
paint [1]   25/4
panic [1]   21/8
papers [1]   64/7
paragraph [2]   36/20 37/2
parcel [1]   37/6
part [18]   5/13 5/18 5/22 6/8 6/12
9/3 14/13 14/16 15/14 16/2 25/14
30/20 37/6 40/14 40/15 41/10 56/2
59/14
partial [1]   22/6
participating [1]   37/24
participation [1]   17/20
particular [7]   23/11 31/1 31/19
33/19 34/16 53/19 54/19 54/21
58/13
particularly [4]   32/19 32/20 39/1
64/6
parties [6]   5/4 9/15 9/17 9/19
9/20 65/13
parties' [3]   4/2 64/4 64/7
pass [1]   43/14
passed [1]   43/7
passing [3]   12/4 12/6 12/13
past [3]   5/3 7/6 43/19
Pause [1]   37/21
pay [1]   13/22
peer [1]   42/14
peer-reviewed [1]   42/14
penalty [1]   11/24
Pencil [1]   55/1
pending [1]   13/19
people [19]   8/12 11/8 11/9 23/18
27/1 31/17 32/9 33/21 34/1 34/10
34/14 36/13 42/17 42/18 49/7
51/23 52/5 59/24 61/11
perceive [4]   42/10 43/21 50/12
56/24
perceived [7]   33/4 39/22 43/18
43/20 47/16 50/10 50/17
perceives [1]   43/6
percent [2]   51/21 60/16
perception [4]   29/13 47/3 47/4
47/4
perceptions [1]   60/15
Perceptual [1]   60/10
perhaps [4]   4/3 19/3 19/17 33/17
period [1]   52/8
periods [2]   15/11 23/3
peripheral [1]   47/17
peritraumatic [2]   21/23 22/1
perjury [1]   11/25
permitted [1]   14/2
perpetrator [1]   19/23
person [9]   3/22 12/22 25/12 25/13
41/5 45/5 45/5 46/12 52/20
personal [4]   7/24 8/5 53/9 53/10
personally [3]   11/23 14/12 59/6
personnel [6]   5/19 5/23 5/24 6/10
6/14 7/18
persuasive [1]   16/25
pertains [1]   17/17 21/7
Peyton [2]   2/7 3/10
PhD [2]   59/19 59/21
phenomenon [1]   59/24
phone [1]   12/21

physical [1]   61/17
physiology [1]   61/16 61/16
61/20
pick [1]   58/15
place [6]   14/10 15/19 48/15 48/21
51/24 58/21
Plaintiff [2]   1/4 1/12
plan [1]   13/24
plane [1]   37/8
plans [3]   31/25 32/9 56/8
play [1]   61/5
plaza [2]   51/4 51/18
plea [11]   9/11 9/16 9/17 9/17
9/20 12/6 12/7 12/9 13/2 13/4
16/8
plead [5]   9/11 12/1 13/3 13/5
13/15
pleading [2]   40/20 41/19
pleadings [2]   36/18 40/20
please [5]   3/4 13/21 28/1 36/23
40/7
point [33]   5/12 5/20 8/12 8/24
9/12 11/7 18/13 20/12 23/1 23/13
31/10 32/2 32/4 32/8 32/19 32/23
33/23 34/3 34/19 38/22 41/12 42/4
45/12 49/11 49/12 52/6 53/24 54/2
55/15 56/10 61/10 63/6 65/3
pointed [1]   44/4
pointedly [1]   21/25
pointing [1]   48/19
points [3]   23/1 38/21 39/8
police [26]   23/2 23/17 44/20 47/2
47/7 47/12 48/11 49/9 49/20 50/9
51/15 52/4 52/5 57/15 59/5 59/6
59/8 60/10 60/13 60/21 60/23
61/13
policing [1]   59/4
policy [1]   60/8
political [1]   16/4
portion [2]   31/20 55/8
portions [2]   25/18 25/19
Portland [3]   2/9 15/17 16/1
position [3]   11/22 20/6 20/22
positive [1]   49/8
possible [5]   9/16 9/20 14/1 51/7
65/11
possibly [4]   25/16 29/13 51/6
51/19
potential [3]   6/19 25/20 45/9
potentially [2]   32/21 33/10
PowerPoint [1]   55/2
prefer [3]   4/13 44/12 65/13
prejudice [2]   25/20 46/20
prejudicial [7]   20/11 28/24 33/11
36/9 43/25 47/8 49/18
preliminarily [1]   54/18
preliminary [1]   65/2
premise [1]   45/8
preparation [4]   57/2 63/9 63/14
65/2
prepare [1]   5/17
prepared [3]   27/18 31/13 45/24
present [4]   13/11 43/22 47/19
49/3
presentation [1]   23/11
presented [4]   10/8 13/8 29/2 34/6
pressure [1]   61/19
pretrial [3]   63/5 63/13 65/21
pretty [2]   16/2 42/11
prevent [3]   20/9 20/9 20/9
prevented [1]   10/3
previous [2]   10/12 10/12
previously [6]   21/17 22/13 28/6
45/23 53/25 59/10
Primarily [1]   19/21
principals [5]   46/1 46/1 63/17
63/19 64/23
prior [1]   17/17 21/7
probably [1]   17/17
probative [4]   25/22 32/20 36/9
49/19
probed [2]   21/18 21/19

**P**

problem [6]   25/3 25/19 53/22 53/23 56/2 56/21
procedure [1]   16/22
proceed [1]   3/21
proceedings [2]   65/23 66/5
process [6]   5/23 14/15 31/2 32/3 32/4 65/1
produce [2]   63/24 64/13
produced [3]   6/6 6/9 7/5
producing [2]   5/23 63/23
promise [1]   26/6
prompted [3]   48/16 48/25 51/6
proof [1]   64/8
propose [1]   65/13
proposed [1]   41/13
proposes [1]   40/14
proposing [1]   41/22
proposition [1]   61/11
prosecution [17]   4/22 4/22 6/4 6/4 6/25 7/1 8/9 8/12 8/18 9/1 11/1 11/1 12/16 14/4 14/4 14/9 17/6
prosecutor [1]   12/20
prosecutorial [2]   8/21 16/3
protected [1]   63/24
protective [2]   12/19 12/24
protesters [1]   52/3
provide [2]   11/3 27/18
provided [5]   7/11 7/16 8/17 10/9 10/9
provides [2]   35/9 56/16
providing [1]   18/16
proxy [2]   21/8 49/25
psychiatric [5]   33/1 45/10 45/11 45/14 45/20
psychological [8]   6/12 6/13 6/15 36/6 41/6 41/10 61/16 61/20
psychological/emotional [2]   41/6 41/10
psychologist [1]   22/4
psychology [2]   59/18 60/14
PTSD [11]   22/2 22/3 22/7 22/11 22/14 22/17 22/19 22/22 22/24 31/4 35/8
public [4]   2/3 2/7 3/11 3/15
published [1]   60/4
pulling [1]   61/14
punishment [1]   14/16
purpose [3]   44/24 46/25 57/2
purposes [10]   5/1 41/21 42/5 46/15 47/20 47/25 51/10 63/9 63/14 64/15
pushed [2]   46/18 52/8
pushing [7]   49/11 49/16 49/16 49/17 50/1 50/1 50/1
put [6]   11/11 14/15 27/15 39/7 48/9 65/8
putting [2]   8/7 10/16

**Q**

qualification [1]   54/14
qualifications [1]   19/19
qualified [1]   35/22
qualifies [1]   33/23
qualitative [4]   57/11 57/19 60/5 60/13
quantify [1]   39/7
quantitative [4]   57/11 57/17 57/19 60/5
question [22]   5/5 12/8 12/10 14/8 14/8 17/11 23/7 29/7 29/14 30/2 31/13 36/19 40/7 40/15 46/3 55/9 57/6 58/5 58/19 62/18 62/22 65/12
questioned [2]   20/13 29/6
questionnaire [1]   2/12
questions [9]   11/6 11/8 14/5 20/15 21/24 39/15 61/2 63/7 65/5
quibble [1]   57/10
quick [5]   37/19 38/8 38/20 65/4 65/12

quickly [2]   57/8 57/9
quite [3]   10/7 42/16 45/23
quotes [1]   30/11

**R**

rabbit [1]   40/1
raise [1]   18/25
raises [4]   23/12 23/19 25/19 27/6
RANDOLPH [1]   1/9
rare [1]   17/3
rather [5]   3/22 27/22 33/22 34/20 34/24
re [1]   5/4
re-reviewed [1]   5/4
rea [15]   21/10 21/11 29/8 29/15 29/16 29/22 30/1 30/3 30/5 35/4 36/18 39/2 45/14 46/19 55/12
reach [2]   9/17 9/21
reaching [1]   31/21
react [1]   35/23
reacted [2]   50/24 56/17
reacting [1]   56/7
reaction [1]   19/6
reactions [1]   31/18
read [6]   4/2 4/14 12/9 30/23 35/19 38/3
reading [3]   30/24 64/4 64/7
reads [1]   7/25
ready [1]   35/10
real [1]   61/3
realize [1]   37/24
really [20]   7/21 8/10 21/18 26/9 28/13 28/16 29/9 29/17 31/13 32/15 33/8 34/12 43/3 43/24 43/25 46/15 46/25 51/5 51/14 62/13
reason [7]   7/2 28/14 28/14 28/15 35/23 40/24 50/3
reasonable [14]   30/4 41/23 44/18 45/4 46/12 46/17 47/5 47/22 48/2 48/17 50/6 54/11 56/15 56/23
Reasonableness [1]   60/11
reasonably [8]   39/24 41/4 45/4 46/4 50/10 50/16 53/2 61/1
reasoning [1]   16/24
reasons [13]   5/15 7/10 7/11 7/14 9/2 10/13 11/9 19/15 19/21 20/10 28/9 35/4 56/22
rebuttal [1]   47/12
recall [2]   30/25 53/20
received [4]   11/19 11/20 11/21 22/16
recently [1]   5/2
Recess [1]   38/16
recognize [1]   33/12
reconnect [1]   38/8
reconnected [1]   15/4
record [11]   3/4 4/25 6/13 9/9 11/11 27/20 37/19 57/8 62/5 65/11 66/5
records [1]   7/18
refer [1]   30/24
referred [1]   49/20
reflects [1]   64/1
regard [3]   15/13 23/23 64/20
regarding [2]   20/20 31/20
regularly [1]   6/14
reinforcements [1]   49/8
related [12]   4/2 5/8 5/16 5/19 6/8 9/25 10/10 22/24 29/15 35/14 56/22 62/11
relates [1]   29/16
relating [3]   18/2 30/6 53/8
release [1]   10/3
relevance [2]   28/25 28/25
relevant [23]   20/19 20/23 22/18 24/18 33/24 34/4 34/4 34/8 34/19 35/9 35/23 36/4 38/24 43/18 45/12 45/22 46/14 47/19 47/21 47/23 47/24 50/3 55/12
reliability [1]   43/1
reliable [4]   33/25 42/16 42/23 43/9

reliant [1]   39/8
relied [2]   45/14 57/23
rely [3]   25/8 41/21 42/21
relying [5]   25/11 26/15 27/22 53/19 53/20
remember [7]   11/7 28/11 28/13 28/14 33/2 39/10 57/23
remembered [1]   22/8
remembers [2]   24/20 24/20
removed [2]   28/16 46/14
renew [1]   57/3
renewed [1]   57/23
reorienting [1]   5/7
reply [2]   20/17 42/20
report [20]   9/15 9/19 31/2 32/2 32/4 32/5 35/5 37/15 40/6 40/12 40/22 41/1 41/2 42/2 53/21 54/3 54/4 54/23 56/12 57/13
reporter [5]   1/22 1/22 36/24 66/3 66/13
reports [2]   9/14 22/17
request [2]   3/21 9/4
requested [2]   6/22 8/8
require [4]   9/11 24/2 57/18 63/15
required [3]   13/15 17/2 19/13
requisite [1]   19/18
research [3]   59/2 60/3 60/3
researching [1]   60/2
reserve [2]   18/23 57/3
resolution [2]   9/16 9/20
resources [2]   16/3 16/4
respect [20]   17/11 17/24 27/16 29/8 31/3 32/11 32/14 32/18 33/2 33/4 33/18 33/19 33/20 34/1 35/3 35/3 41/22 45/21 46/7 50/22 63/7 64/3 64/5
respond [9]   7/9 12/11 13/4 31/17 31/18 34/2 34/10 46/10 62/3
responded [1]   41/18
responding [1]   17/13
responds [1]   34/9
response [9]   10/1 25/1 37/12 39/24 41/6 41/10 48/17 53/9 53/10
responses [2]   51/20 61/17
rest [1]   10/11
restate [1]   24/3
result [3]   22/11 31/5 50/7
revealed [1]   21/24
reversed [1]   21/4
reversible [2]   16/14 21/4
review [2]   4/24 55/14
reviewed [4]   5/2 5/4 17/19 42/14
revised [1]   10/3
revisit [2]   32/8 64/25
revisiting [1]   38/22
right [27]   3/18 3/24 4/18 10/20 16/25 17/9 17/14 18/10 19/2 22/5 25/13 30/11 31/24 33/2 37/2 38/17 41/15 47/11 47/21 49/16 52/3 52/20 52/23 56/20 57/1 63/4 65/20
rights [1]   61/5
riot [1]   42/25
risk [5]   21/13 22/2 27/22 44/2 46/20
road [1]   47/17
Rocha [4]   1/12 3/8 37/23 38/8
rock [1]   58/22
Room [1]   1/24
RPR [1]   66/12
Rule [5]   18/2 18/18 20/1 43/13 43/15
ruled [1]   57/21
rules [1]   57/18
ruling [2]   11/14 32/7
rulings [1]   39/11
run [1]   8/24
running [2]   27/22 33/21
Rylant [22]   37/17 39/17 39/19 39/21 41/22 42/12 42/20 43/3 44/10 44/21 46/24 55/2 55/25 56/3 56/5 56/11 58/6 59/5 59/8 59/10

**R**

Rylant... [2]  62/12 62/22
Rylant's [10]  42/8 44/16 47/4
55/16 57/10 57/12 59/13 59/15
62/10 63/1

**S**

safety [1]  46/4
said [26]  12/13 12/14 12/23 13/9
13/10 24/20 25/23 30/23 30/25
32/15 34/17 43/4 48/13 48/20
48/24 49/21 49/22 50/23 52/12
52/25 53/11 54/6 55/13 56/11
57/23 62/13
same [9]  7/14 8/24 10/13 27/10
54/13 54/13 57/16 58/14 58/24
Sarah [2]  1/12 3/7
satisfy [2]  19/21 54/7
saving [1]  57/24
saw [16]  23/18 27/1 36/11 44/18
45/3 45/5 47/4 48/15 48/24 50/24
51/12 51/19 53/1 53/2 54/6 54/16
say [29]  15/7 16/19 20/22 22/18
24/5 24/18 24/22 26/3 26/23 27/15
28/1 28/13 31/15 36/3 40/9 42/16
45/24 45/25 47/12 47/13 48/16
48/16 48/25 50/12 53/5 53/24 54/9
54/12 64/7
saying [24]  16/16 22/22 25/7
25/15 25/16 25/25 26/19 36/6
40/10 41/2 48/11 50/11 52/9 52/10
52/13 54/1 54/5 54/10 55/24 55/25
61/2 62/22 64/10 64/18
says [144]  10/24 12/3 12/3 17/2
21/3 23/16 40/20 40/22 42/2 50/14
63/22
scale [2]  27/16 39/6
scene [2]  36/13 36/14
schedule [1]  6/5
scheduled [1]  63/5
score [1]  44/25
screaming [1]  58/12
scrum [2]  51/25 52/2
second [8]  9/22 15/3 25/9 37/23
40/15 40/17 59/8 65/12
secure [2]  10/2 10/7
see [12]  10/23 17/3 31/7 33/13
35/6 36/9 36/14 36/24 50/14 51/7
53/19 65/21
seeing [5]  45/3 45/3 45/16 50/16
51/8
seek [1]  10/5
seeking [2]  18/5 18/5
seems [2]  45/8 56/11
seen [11]  14/20 15/9 16/8 30/22
45/4 46/12 46/22 51/6 52/2 52/7
64/20
selective [13]  4/22 4/22 6/3 6/25
7/1 8/9 8/11 11/1 11/1 12/16 14/4
14/9 17/6
selectively [2]  11/10 59/25
seminars [1]  57/14
send [2]  54/23 54/24
sense [3]  4/3 62/24 64/17
senses [1]  30/14
sentence [1]  65/18
serious [2]  16/25 47/15
set [1]  20/4
seven [1]  57/4
Seventeen [1]  35/16
she [35]  19/11 19/18 19/19 19/20
19/21 22/1 22/19 25/15 26/14
26/14 26/22 26/23 27/4 27/5 30/23
30/25 31/16 32/6 33/8 33/9 33/24
34/7 34/16 35/21 37/7 37/15 37/24
37/24 38/3 38/5 38/6 38/6 39/4
39/7 41/24
SHERRY [3]  1/22 66/3 66/12
shield [1]  52/8
shields [1]  52/5
shifting [1]  60/19

shooting [1]  59/3
shortcomings [1]  59/17
shorter [1]  28/2
shortly [1]  47/14
should [13]  8/10 10/13 10/15
11/15 11/16 15/24 19/9 25/7 37/17
38/24 39/12 44/16 47/11
show [8]  10/17 11/5 16/13 48/14
49/4 49/21 51/21 51/21
showing [2]  51/14 64/8
shows [1]  16/20
side [1]  24/4
signed [1]  9/14
significant [5]  22/2 23/20 27/4
27/6 53/23
significantly [1]  20/1
similar [5]  8/13 15/10 15/21
15/22 30/12
similarly [3]  15/17 18/17 19/3
simply [8]  18/23 23/13 27/19
45/19 51/17 61/18 63/20 64/13
since [2]  6/24 55/16
single [2]  22/9 53/12
sitting [1]  7/20
situated [1]  15/17
situation [4]  20/13 42/24 58/3
59/1
situations [7]  42/25 59/2 59/3
60/7 60/7 60/11 60/16
six [2]  29/23 57/20
slightly [1]  52/7
slow [2]  36/23 53/11
smacks [1]  16/4
so [144]
some [26]  10/17 11/15 11/19 16/1
23/1 23/1 23/13 26/11 27/25 28/21
29/18 30/6 33/2 33/17 35/10 36/6
38/22 42/21 50/9 50/18 50/22
53/25 54/19 55/11 56/16 58/7
somebody [4]  15/11 25/21 26/25
50/24
someone [11]  11/12 22/22 22/23
31/5 31/6 37/8 47/2 47/14 50/24
61/2 62/14
something [27]  8/4 11/17 14/21
24/24 26/3 27/12 27/24 31/8 34/22
36/12 48/14 51/9 51/12 51/16
52/25 53/3 53/5 53/6 53/8 53/16
54/4 54/15 55/13 56/7 56/25 63/9
63/11
somewhat [1]  64/9
soon [1]  14/1
sorry [9]  6/18 10/18 10/21 12/2
17/22 35/16 38/13 40/16 60/5
sort [11]  19/2 20/12 25/14 29/20
30/24 31/16 37/19 46/14 58/7 63/2
64/6
sought [1]  9/24
sounds [2]  19/1 38/21
speak [1]  11/23
speaks [3]  21/9 26/10 57/14
specific [4]  26/19 29/24 43/11
53/1
specifically [2]  19/9 21/15
specifics [2]  26/9 26/10
speculative [1]  32/23
speech [1]  63/24
spend [1]  14/3
spending [1]  15/11
split [2]  17/16 17/17
stab [1]  30/18
stabbed [1]  17/1
staking [1]  15/11
stand [2]  23/16 32/7
standard [6]  8/6 42/10 60/11
64/10 64/12 64/12
standards [6]  18/20 19/10 19/13
29/22 34/1 34/13
standing [2]  23/2 49/6
start [4]  4/4 4/16 17/14 17/21
starting [3]  3/5 19/15 19/9
starts [1]  44/2

state [16]  3/4 16/14 21/4 21/7
21/9 24/6 25/24 26/2 30/17 36/21
37/4 37/7 45/10 45/11 45/13 46/18
stated [6]  9/15 9/19 9/24 13/14
13/14 56/22
statement [2]  19/16 49/2
statements [9]  9/6 9/7 26/14
26/17 26/19 39/9 48/7 48/9 48/10
states [5]  1/1 1/3 1/10 3/3 21/2
status [3]  9/13 9/15 9/18
stay [2]  36/13 36/14
stayed [1]  36/11
stems [1]  11/5
step [1]  51/10
steps [1]  28/15
stick [3]  22/22 22/23 63/16
still [10]  5/18 5/22 8/24 13/19
34/21 36/4 42/22 55/9 55/14 62/10
stipulations [1]  6/19
stop [2]  44/9 61/2
Street [4]  1/13 1/16 2/5 2/8
stress [6]  47/3 47/6 47/8 59/1
61/18 62/17
stressful [4]  58/3 59/24 60/15
61/11
stretch [1]  51/10
strike [3]  15/12 25/17 39/1
strikes [8]  23/5 36/9 46/13 47/16
51/9 51/22 51/24 61/10
struck [1]  28/7
studies [3]  60/3 60/13 60/19
study [5]  42/15 59/23 60/5 60/12
60/17
stuff [2]  50/20 51/17
subject [8]  23/15 23/21 25/21
32/16 33/10 34/13 55/13 59/18
submission [3]  4/14 5/2 12/10
submissions [3]  4/3 5/4 64/4
submit [2]  17/8 35/13
submitted [1]  5/5
substantial [1]  64/5
substantially [3]  23/21 25/21
27/19
substantiate [1]  7/15
subsumed [2]  22/6 22/7
successful [1]  10/1
such [2]  63/24 64/13
suffering [2]  29/11 45/20
suffers [1]  22/14
sufficient [1]  42/22
sufficiently [3]  33/25 42/16
42/23
suggest [2]  36/7 36/10
suggested [1]  45/23
suicide [1]  47/14
Suite [2]  2/5 2/9
summarizing [1]  18/20
summary [2]  18/1 18/15
super [1]  62/9
supervisor [1]  43/7
supervisory [1]  3/15
supplement [4]  4/10 4/20 10/24
31/16
supplemental [1]  4/16
supplementing [1]  32/2
support [7]  5/14 11/4 11/4 27/5
36/15 56/16 60/18
supporters [2]  52/4 52/6
supports [2]  7/23 8/8
suppose [5]  14/8 25/16 29/14
53/23 54/1
Supreme [1]  60/25
sure [11]  4/23 14/25 15/6 26/8
36/24 45/11 52/16 55/6 57/22
62/25 65/6
surprise [1]  22/15
surprising [1]  58/17
surveillance [1]  14/19 15/10
surveilling [1]  14/23
SW [1]  2/8
swear [1]  11/24
symptom [6]  31/1 31/4 31/4 35/7

**S**

symptom... **[2]**   39/5 39/7
symptomatic **[1]**   21/21
symptoms **[4]**   29/21 30/2 35/7
36/21

**T**

tailored **[1]**   20/14
take **[9]**   9/5 19/4 37/14 38/9
38/14 59/22 62/1 63/6 64/21
taken **[3]**   25/5 25/6 38/16
takes **[3]**   15/19 23/16 32/7
taking **[2]**   48/15 51/24
talk **[16]**   4/12 7/2 7/7 13/21
13/21 26/11 30/13 44/9 44/10
46/10 47/2 47/5 49/19 55/16 57/8
63/12
talked **[4]**   12/20 12/21 12/22
15/15
talking **[5]**   8/11 13/19 51/22
52/24 52/25
talks **[1]**   60/25
targeted **[1]**   54/18
Taylor **[2]**   1/15 3/6
tear **[2]**   23/4 53/7
tell **[8]**   14/24 17/17 25/18 28/19
28/21 50/20 53/16 59/21
telling **[1]**   52/16
temples **[1]**   15/19
tending **[1]**   10/17
tentative **[4]**   32/7 35/1 46/9 57/2
tentatively **[1]**   57/21
term **[1]**   59/3 59/4
termed **[1]**   21/14
terms **[4]**   9/18 9/21 38/21 42/8
terrace **[2]**   18/3 49/4
terribly **[1]**   63/20
test **[3]**   43/14 43/15 62/16
tested **[2]**   33/25 34/13
testified **[9]**   20/8 22/13 22/15
27/21 37/15 40/21 44/22 50/23
59/10
testifies **[7]**   23/9 23/21 24/18
27/10 28/3 33/8 51/1
testify **[41]**   13/23 14/2 18/5 18/5
20/6 21/1 23/5 24/1 24/4 24/7
24/15 24/17 24/19 25/13 25/17
26/10 27/9 27/17 28/2 28/3 29/3
32/11 33/7 33/13 33/15 33/17
34/15 35/1 35/22 36/21 40/5 40/10
40/14 40/19 40/21 44/21 46/7 48/6
56/9 58/25 59/1
testifying **[11]**   18/1 21/5 23/14
27/20 39/19 39/21 41/1 53/21 56/5
56/11 59/16
testimony **[66]**   16/14 18/12 18/15
18/16 18/20 18/24 19/4 19/9 19/11
19/17 20/2 20/19 21/7 21/15 23/13
24/2 25/4 25/11 25/18 25/19 25/20
27/25 28/7 28/24 29/1 30/19 30/21
31/9 31/20 32/6 33/1 33/20 33/24
34/8 34/11 34/18 35/3 36/10 36/15
36/15 38/24 39/1 39/4 39/9 39/11
41/1 41/13 41/14 43/22 44/16
45/1 45/2 45/21 48/23 49/23 50/8
50/8 53/18 55/11 56/1 59/15 59/18
59/18 62/11 62/25 63/1
testing **[1]**   19/24
textbook **[1]**   42/15
than **[13]**   3/22 8/4 27/22 33/22
34/20 34/24 36/9 40/21 42/1 49/18
50/20 64/10 64/12
Thank **[10]**   3/23 4/3 15/1 15/5
37/16 38/18 63/4 65/19 65/20
65/22
that **[626]**
their **[12]**   3/4 13/22 14/18 20/22
27/25 31/18 31/19 42/20 46/4 48/7
48/7 60/9
them **[15]**   19/4 29/24 34/22 34/22
36/13 37/10 46/2 49/7 52/9 52/10

52/10 55/6 55/7 60/16 61/3
then **[38]**   9/18 9/22 10/2 11/13
12/18 12/19 15/14 15/23 17/10
18/11 20/8 20/13 20/17 22/9 22/22
23/25 24/19 26/4 26/17 29/7 31/24
33/8 34/22 35/3 39/2 44/10 46/3
47/10 47/11 48/25 49/8 49/10
54/17 56/9 57/9 62/1 62/3 64/3
theory **[5]**   8/14 29/17 29/18 50/19
53/3
there **[78]**
these **[8]**   6/13 8/22 10/9 16/12
26/7 45/25 53/7 62/4
they **[57]**   5/18 10/9 11/18 12/25
13/23 13/24 13/25 14/1 14/14
14/17 14/22 15/12 16/10 16/21
20/21 21/4 21/14 21/15 22/16
22/16 25/3 26/4 27/21 27/25 31/7
34/15 36/8 37/9 37/9 37/10 37/11
37/11 43/11 45/5 47/1 47/5 47/6
47/6 47/15 48/6 48/9 49/11 49/16
50/13 52/11 52/12 52/12 52/13
52/14 55/18 56/4 56/24 59/25
60/14 62/17 63/17 64/18
thing **[4]**   9/22 26/5 27/14 28/6
things **[19]**   11/5 23/12 28/13
28/14 29/15 32/14 33/2 34/5 37/19
39/25 45/9 48/3 49/19 51/5 52/10
58/5 58/13 59/25 62/4
think **[111]**
think the **[1]**   56/13
thinking **[2]**   30/20 46/9
third **[2]**   59/10 59/12
this **[146]**
this into **[1]**   44/19
Thomas **[5]**   51/23 52/1 52/7 52/14
52/22
those **[26]**   4/3 6/21 9/2 10/1
11/11 11/12 18/21 26/17 27/2 27/2
29/15 32/15 46/1 46/3 46/8 47/16
51/24 53/15 54/7 55/5 60/15 60/16
61/17 63/16 63/18 63/25
though **[5]**   47/16 48/19 52/24 53/4
59/21
thought **[1]**   17/3
thoughts **[1]**   37/5
threat **[1]**   47/16
three **[3]**   7/6 13/22 53/13
throngs **[1]**   50/2
through **[6]**   8/22 26/12 35/11
35/13 35/16 37/1
throughout **[2]**   49/14 53/11
thrown **[1]**   15/24
thumb **[1]**   27/15
tie **[2]**   29/21 45/25
tied **[2]**   45/23 53/8
time **[18]**   5/17 6/11 6/20 7/11
7/21 8/24 15/11 18/25 40/1 43/7
48/15 51/22 52/6 52/9 57/22 58/15
58/24 62/2
times **[5]**   5/20 6/19 8/11 17/1
44/5
timing **[4]**   7/3 7/21 7/22 38/21
tip **[1]**   6/8
titled **[1]**   60/9
today **[9]**   3/21 3/25 4/25 5/2 7/2
9/9 24/24 35/19 63/7
told **[8]**   23/16 23/17 23/18 26/4
26/23 26/24 26/25 33/4
too **[7]**   14/7 31/2 32/2 34/18
51/10 51/10 53/7
took **[2]**   10/21 15/20
top **[1]**   16/11
top-down **[1]**   16/11
topic **[4]**   59/14 59/15 59/23 60/21
topics **[2]**   18/6 39/13
totally **[1]**   48/5
touch **[1]**   55/17
toward **[1]**   36/1
towards **[8]**   33/22 33/22 34/2 34/5
34/20 34/22 34/24 36/8

track **[1]**   65/17
trainer **[3]**   58/16 59/14
training **[9]**   19/7 33/21 34/2
34/10 36/13 42/21 42/22 43/6 43/8
trainings **[1]**   6/7
transcript **[5]**   1/9 6/6 21/20 35/5
66/4
transcripts **[1]**   10/9
trauma **[12]**   31/18 50/7 50/15
50/18 51/1 51/2 51/12 51/13 51/14
53/3 54/6 54/17
traumatic **[4]**   22/10 22/25 51/9
60/6
traumatized **[1]**   51/8
travel **[3]**   13/23 31/25 32/9
trial **[32]**   5/13 5/14 5/15 5/17
5/21 7/7 7/10 7/12 14/6 17/2
18/23 18/24 22/14 22/15 24/23
27/13 32/8 33/6 35/10 35/11 44/2
44/20 44/24 46/21 51/25 52/17
55/6 56/9 57/2 57/4 57/24 63/9
tricky **[1]**   28/18
trier **[2]**   37/6 44/17
triggered **[1]**   53/3
true **[5]**   9/8 25/10 42/19 42/20
64/4
Trump **[2]**   52/4 52/6
try **[3]**   36/19 49/19 58/5
trying **[6]**   26/14 26/20 40/19
40/24 41/12 47/17
Tuesday **[1]**   6/20
turn **[6]**   15/2 37/17 39/14 44/19
46/21 47/1
turned **[2]**   11/16 11/16
turning **[5]**   5/25 13/25 17/11
36/18 44/2
turns **[2]**   28/7 28/22
two **[11]**   9/8 13/24 21/2 37/19
38/20 39/25 45/9 48/3 51/20 62/3
65/4
tying **[1]**   21/13
type **[1]**   45/5
typically **[1]**   33/21

**U**

U.S **[1]**   1/23
ultimate **[1]**   31/22
ultimately **[3]**   43/3 43/18 63/10
unable **[2]**   9/17 46/19
uncertainty **[1]**   28/22
unclear **[1]**   64/4
unconvinced **[1]**   34/7
under **[20]**   8/14 11/24 18/2 26/4
31/5 33/24 33/25 35/8 37/9 42/10
42/23 43/1 47/2 47/6 47/7 53/7
61/11 61/18 61/19 64/2
undermined **[1]**   43/1
understand **[13]**   13/7 16/2 24/21
24/25 24/25 29/10 30/1 31/8 36/4
40/9 50/22 58/11 58/21
understanding **[8]**   11/13 13/18
17/25 18/4 39/20 40/25 41/8 42/1
understands **[1]**   44/23
understood **[3]**   5/6 21/20 28/4
undue **[1]**   34/12
unduly **[1]**   20/11
unfair **[2]**   32/3 46/20
Unfortunately **[1]**   63/6
unintentional **[1]**   31/6
UNITED **[4]**   1/1 1/3 1/10 3/3
units **[1]**   42/25
unless **[3]**   31/11 36/5 39/14
unmute **[1]**   10/22
unobjected **[1]**   18/13
unreasonable **[2]**   46/17 50/12
unring **[1]**   38/25
until **[3]**   4/11 28/16 30/7
untrue **[1]**   9/6
unusual **[1]**   15/13
up **[16]**   11/5 17/16 17/18 19/4
26/20 27/17 32/6 42/20 49/15
52/10 52/10 52/10 53/13 60/24

**U**

up... **[2]** 61/15 63/6
upon **[3]** 42/16 53/19 53/20
upper **[1]** 49/4
us **[3]** 15/21 31/15 50/16
USAO **[1]** 1/15
use **[8]** 46/5 50/4 57/15 57/15
60/7 60/21 60/24 61/18
used **[1]** 44/3
using **[2]** 57/22 61/13

**V**

vacuum **[1]** 64/16
valid **[1]** 18/21
value **[2]** 25/22 32/20
various **[1]** 57/3
vary **[1]** 16/7
versus **[4]** 3/3 34/15 57/11 60/24
very **[21]** 13/1 15/9 16/12 16/24
17/1 17/3 20/14 24/14 26/6 27/13
43/8 44/23 46/20 48/10 49/5 50/17
52/23 54/19 57/8 58/21 65/4
vicinity **[1]** 51/18
victim **[1]** 22/20
video **[11]** 3/12 3/17 3/21 12/21
12/22 15/2 37/22 37/25 51/21
53/17 62/16
videos **[5]** 23/2 49/3 54/25 55/2
62/24
Vietnam **[1]** 37/11
view **[15]** 14/9 14/17 14/17 14/17
14/18 18/14 34/15 35/1 45/17
45/25 50/5 51/3 54/16 56/15 65/2
viewed **[3]** 13/6 51/21 52/19
viewing **[3]** 50/6 53/12 54/11
views **[1]** 57/2
vindictive **[8]** 4/22 6/4 7/1 8/9
11/1 14/4 14/9 17/6
violence **[1]** 46/3
visual **[2]** 58/2 60/20
vs **[1]** 1/5

**W**

wait **[4]** 4/11 14/6 30/7 33/13
waiting **[1]** 5/18
waived **[1]** 54/2
walk **[1]** 30/15
walking **[1]** 52/2
want **[22]** 4/1 17/5 17/23 20/21
26/5 27/15 28/12 31/14 40/1 41/16
42/3 44/10 48/14 48/23 49/22
51/13 53/14 53/17 53/17 57/4 57/5
59/20
wanted **[14]** 3/25 4/11 4/25 7/2
7/12 9/5 9/9 9/22 14/5 15/5 17/24
38/20 39/25 42/7
wants **[4]** 14/6 17/10 46/10 55/20
war **[1]** 23/1
was **[117]**
Washington **[3]** 1/5 1/16 1/24
wasn't **[7]** 6/14 22/10 22/11 31/13
36/5 39/7 40/22
waste **[1]** 8/23
wasting **[1]** 40/1
watch **[2]** 62/16 62/16
way **[26]** 14/13 14/14 16/10 19/2
19/3 23/11 27/15 29/19 29/19
31/17 31/19 33/10 34/14 35/6
35/11 39/5 39/7 42/18 43/24 44/19
48/10 50/24 54/16 56/17 60/24
62/13
ways **[3]** 31/17 32/25 34/11
we **[135]**
we'll **[4]** 12/14 30/13 35/10 55/6
website **[2]** 60/9 60/12
weeks **[2]** 7/6 7/7
weight **[2]** 34/12 43/22
well **[23]** 3/13 3/19 4/14 5/24
7/14 13/4 17/9 19/23 24/13 24/22
25/1 27/2 35/22 39/7 39/23 43/16
45/22 46/6 48/3 52/23 55/3 56/18

60/23
went... **[1]** 39/2
went **[4]** 14/14 14/22 22/4 51/25
were **[33]** 5/18 6/12 6/21 9/6 9/7
9/7 9/8 9/8 10/1 10/7 10/9 10/9
13/1 15/12 20/5 27/19 27/21 28/19
37/11 37/13 46/1 46/22 47/1 47/2
47/6 47/6 47/7 48/19 50/1 52/12
61/15 64/18 64/23
weren't **[1]** 6/13
west **[2]** 49/4 51/4
what **[125]**
whatever **[1]** 31/7
when **[14]** 8/11 12/9 12/21 27/17
36/8 36/11 42/12 48/24 51/24
53/16 58/2 58/11 58/15 58/21
where **[21]** 11/14 13/15 15/10
15/18 16/12 18/3 20/12 21/3 22/15
22/21 25/12 25/13 25/20 30/25
34/12 36/24 47/17 48/10 49/16
51/12 59/3
whether **[44]** 9/16 9/19 12/8 16/5
19/22 19/22 19/24 22/18 22/19
22/19 22/20 24/20 23/10 24/20
27/16 32/15 33/8 33/9 33/13 33/15
34/4 37/13 44/17 45/15 45/17
45/18 45/20 46/3 46/11 46/17
46/21 47/5 47/22 47/24 48/2 50/6
50/6 54/2 56/17 58/6 58/7 60/25
61/1 61/13
which **[34]** 4/9 4/21 6/5 7/4 8/2
8/25 9/13 10/3 15/14 22/2 22/3
26/11 30/13 31/4 31/22 32/25
33/15 35/7 36/6 36/22 38/23 39/6
39/24 43/9 46/18 47/19 53/21
54/25 56/16 60/13 60/23 64/9
64/22 65/17
while **[2]** 42/19 61/15
who **[31]** 3/11 3/17 11/8 11/9
11/12 12/20 13/24 14/6 17/10
22/13 24/17 25/21 26/25 29/11
36/13 43/21 45/23 46/1 46/22
47/14 49/6 49/9 49/9 49/21 50/1
50/2 50/14 51/23 52/20 52/21
58/22
whoa **[2]** 36/23 36/23
whoever **[1]** 52/3
whole **[3]** 16/9 16/11 22/25
why **[35]** 5/15 7/21 7/23 8/10 13/8
13/10 15/12 17/3 17/14 18/6 20/16
24/20 26/5 28/9 33/1 34/21 37/9
37/10 37/10 40/23 41/12 42/2 42/3
42/7 43/14 44/13 47/24 48/1 49/19
52/16 56/3 56/5 56/16 56/17 62/2
will **[39]** 11/24 13/2 13/2 17/9
17/13 17/20 18/23 20/17 21/5 21/7
23/5 24/4 24/4 24/6 24/15 26/6
29/5 31/15 31/24 32/5 32/24 34/5
37/14 37/24 39/14 40/5 41/21
44/17 44/21 52/2 53/14 54/9 57/8
62/1 62/3 62/25 63/17 64/15 65/20
will just **[1]** 24/4
Willamette **[1]** 2/5
Wilson **[1]** 1/12
WISE **[61]** 1/6 3/3 3/11 3/16 3/20
9/10 9/11 9/25 10/3 11/4 11/7
14/23 14/25 15/2 19/22 20/7 21/25
22/4 22/21 23/5 23/14 23/21 23/25
24/3 24/7 25/17 26/7 26/23 28/3
28/11 28/19 29/2 30/7 32/14 33/4
33/8 33/12 34/23 35/24 44/18 45/3
45/6 46/2 46/4 46/22 48/9 48/15
48/20 49/22 50/5 51/21 51/24
52/19 52/21 53/1 54/6 54/16 56/17
63/18 64/8 64/15
Wise's **[17]** 19/5 20/20 21/1 21/6
21/9 23/8 24/2 27/16 28/8 32/10
32/22 46/16 47/3 47/19 50/7 50/23
53/9
within **[3]** 22/6 22/7 58/17
without **[5]** 21/10 21/10 23/14
31/21 48/8

witness **[6]** 18/12 18/21 22/13
22/10 28/25 49/1 65/14
witnessed **[2]** 23/6 49/15
witnesses **[1]** 23/24
woman **[1]** 23/17
wondering **[1]** 4/8
words **[9]** 8/15 14/15 44/20 30/3
37/4 37/13 49/12 64/24 65/17
wordsmithing **[1]** 63/25
work **[6]** 11/8 16/9 18/21 19/19
33/6 35/11
worked **[1]** 11/17
working **[5]** 24/12 24/14 30/13
30/14 30/14
works **[1]** 55/17
world **[1]** 13/11
would **[95]**
wouldn't **[8]** 24/1 24/18 29/1
29/16 42/5 53/6 61/8 63/2
wounds **[1]** 30/18
wrong **[1]** 61/7

**Y**

yeah **[6]** 13/5 15/1 24/11 25/24
27/14 29/4
year **[1]** 6/24
years **[1]** 16/8
yelling **[2]** 34/22 58/12
Yep **[1]** 38/6
yes **[23]** 3/23 4/6 10/21 10/23
12/12 18/9 18/14 27/2 27/12 35/12
35/18 36/17 37/18 40/5 40/8 44/15
51/20 54/22 57/7 57/25 60/1 60/1
61/25
yet **[1]** 4/24
you **[187]**
you're **[1]** 30/11
your **[84]**

**Z**

zero **[1]** 28/25
zone **[1]** 23/1