UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA

v.

JARED LANE WISE

Defendant

Case No. 1:23-cr-00184-RDM

## MOTION FOR EXPUNGEMENT OF ALL CHARGES AND RELATED RECORDS

1. Defendant Jared Lane Wise respectfully moves this Court, pursuant to its inherent equitable and ancillary jurisdiction, for an order expunging all records of the charges in this matter, including all associated entries in the National Crime Information Center (NCIC), Terrorist Screening Center (TSC) watchlist notations, Federal Bureau of Investigation (FBI) records, Department of Justice (DOJ) records, and any other databases or repositories maintained by the United States or its agencies. In support of this Motion, Defendant states as follows:

## INTRODUCTION AND RELIEF REQUESTED

2. This Court dismissed all charges in this case with prejudice after the government, following closing arguments at trial and pursuant to Executive Order 14147 and related presidential direction concerning January 6 prosecutions, moved to dismiss. Defendant was never convicted of any offense. He has no other criminal history. The continued existence of the charging records and associated NCIC notations nevertheless subjects him to ongoing concrete harm,

RECEIVED
NOV 09 2026
Clerk, U.S. District & Bankruptcy Courts for the District of Columbia

including elevated risk in law-enforcement encounters, as demonstrated by a prior traffic stop influenced by the watchlist entry.

3. The circumstances of this prosecution—original misdemeanor charges, subsequent addition of felonies without new evidence after Defendant opposed the government's proposed protective order, full trial proceedings terminated by the government itself, spotless record of Defendant, and residual records that have already produced real-world adverse consequences—constitute extraordinary circumstances warranting the equitable remedy of complete expungement. Defendant therefore requests that the Court order the expungement of all charges and related records so that he is restored to the position he would have occupied had the charges never been filed.

## FACTUAL BACKGROUND

4. On or about April 12, 2023, the government filed a criminal complaint charging Defendant with four misdemeanor offenses arising from events at the United States Capitol on January 6, 2021. The complaint and accompanying statement of facts set forth the government's factual allegations at that time. Defendant was arrested on May 1, 2023 based on the complaint and the misdemeanor charges.

5. On May 31, 2023, a federal grand jury returned an indictment charging Defendant with two felony counts (civil disorder in violation of 18 U.S.C. § 231(a)(3), and assaulting, resisting, or impeding certain officers or aiding and abetting the same, in violation of 18 U.S.C. § 111(a)(1) and § 2) together with the four original misdemeanors. The felony counts were based on no new information or evidence beyond what was already contained in the original complaint and statement of facts. Despite the nature of the felony charges, Defendant committed no violence, had

no physical contact with any other person and damaged no property. Defendant was charged with felonies based on words alone that he argued and still believes were a reaction to improper use of force by police against Defendant and others around him.

6. The addition of the felony charges occurred after Defendant, through counsel, opposed the government's proposed protective order governing discovery. See ECF No. 11 (filed June 30, 2023). In subsequent proceedings, including the December 19, 2024 hearing, defense counsel represented that, after the filing of that opposition, the then-assigned prosecutor stated that the government would add felonies and that there would be no plea offer limited to the original misdemeanors. Defendant later moved for discovery in support of claims of selective and vindictive prosecution, specifically alleging that the government added the felony charges after his refusal to accept or sign the protective order. See, e.g., arguments reflected in ECF materials supporting the motion to compel and related supplements. Regardless of the ultimate resolution of any vindictiveness claim, the sequence—original four-misdemeanor complaint, opposition to the protective order, addition of two felonies on the same underlying facts—further illustrates the lack of any new evidentiary basis for the enhanced charges.

7. The case proceeded to a full jury trial. After closing arguments, and before the jury began deliberations, the government moved to dismiss all charges with prejudice. The government invoked Executive Order 14147 (and related presidential direction regarding January 6 cases) as the basis for the dismissal. This Court promptly granted the motion and dismissed all charges with prejudice.

8. Defendant has never been charged with or convicted of any other criminal offense. Prior to the events of January 6, 2021, he served as an FBI Special Agent for approximately 13 years, including in supervisory and counterterrorism roles with an exemplary record and no

disciplinary problems. After the charges were dismissed with prejudice, Defendant was hired by the Department of Justice as a political appointee and Senior Advisor to the Deputy Attorney General where he served for approximately one year.

9. On or about April 2, 2023—prior to the issuance of the arrest warrant in this matter—Defendant was subjected to a traffic stop by the California Highway Patrol (CHP) in the Turlock, California area. The stated basis for the stop was a perceived discrepancy between the registered color of the vehicle and the color observed by the officer, along with related concerns about possible VIN issues involving Texas plates. Defendant challenged the validity of the stop in pretrial litigation (see ECF No. 43), arguing it lacked reasonable suspicion or probable cause.

10. Through subsequent Public Records Act requests to the CHP, Defendant obtained records that, in his view and as represented in later filings in this case, demonstrate that the stop was influenced by his inclusion on the Terrorist Screening Center (TSC) watchlist and the corresponding note in his National Crime Information Center (NCIC) record related to January 6. Defendant has averred that these CHP records strongly support the conclusion that his watchlist status improperly contributed to the decision to initiate the traffic stop. The government used information derived from the stop in connection with search-warrant applications, and Defendant sought suppression of the resulting evidence.

11. The continued presence of the dismissed charges in NCIC and other government databases creates ongoing, concrete risks to Defendant in future encounters with law enforcement submission of background checks, and other unpredictable situations. Inclusion on such lists, even for charges that were later dismissed with prejudice and for which there was never a conviction, subjects Defendant to heightened scrutiny, potential unlawful or pretextual stops, and other adverse consequences in interactions with federal, state, and local officers, employers, private

organizations, or other government agencies and departments. These effects are particularly acute for a former FBI agent, and they constitute continuing harm that cannot be adequately remedied without full expungement of the charging records and related notations.

12. During his employment as a Senior Advisor to the Deputy Attorney General at the Department of Justice, Defendant encountered repeated difficulties accessing federal buildings and facilities because of residual records of the dismissed charges in this case and associated Terrorist Screening Center (TSC) watchlist notations. On multiple occasions, when attempting to attend meetings directly related to his official duties, Defendant was denied entry to federal buildings or subjected to additional screening and delays specifically attributable to these records and watchlist flags, notwithstanding the dismissal of all charges with prejudice and the absence of any conviction. These access denials interfered with the performance of his responsibilities and further illustrate the concrete, ongoing harm caused by retention of the charging records and related notations.

## LEGAL STANDARD

13. Federal courts in the District of Columbia possess inherent equitable and ancillary jurisdiction to order the expungement of criminal records in extraordinary circumstances where necessary to vindicate constitutional or other legal rights. See Abdelfattah v. U.S. Dep't of Homeland Sec., 787 F.3d 524, 534–37 (D.C. Cir. 2015); Livingston v. U.S. Dep't of Justice, 759 F.2d 74, 78 (D.C. Cir. 1985); Sullivan v. Murphy, 478 F.2d 938, 968–70 (D.C. Cir. 1973); Doe v. Webster, 606 F.2d 1226, 1230–31 (D.C. Cir. 1979).

14. Expungement is not available as a freestanding remedy for ordinary acquittals or dismissals based solely on the government's failure of proof. Abdelfattah, 787 F.3d at 536–37.

Rather, it is an equitable remedy available when the records themselves are the product of, or perpetuate, a violation of rights, or when extreme circumstances render retention of the records fundamentally unjust. Courts balance the equities, considering the nature of the underlying proceedings, the absence of any conviction, the government's interest in retaining the records, and the concrete ongoing harm to the individual. See Schnitzer v. United States, 567 F.2d 536, 539–40 (2d Cir. 1977) (cited with approval in D.C. Circuit decisions).

15. Where the Executive Branch has itself determined that a prosecution should not proceed—particularly after extensive pretrial and trial proceedings and pursuant to a formal executive order recognizing systemic concerns with the charging decisions—the equities tip sharply in favor of expungement.

## ARGUMENTA

**The Circumstances of This Case Present Extraordinary Circumstances Warranting Expungement**

16. The government's decision to dismiss all charges with prejudice after closing arguments—expressly invoking Executive Order 14147 and the related presidential direction regarding January 6 cases—constitutes an official acknowledgment that the prosecution was inconsistent with legitimate law-enforcement objectives and reflected the weaponization of federal power that the Order was issued to correct. This is not an ordinary dismissal or acquittal based solely on failure of proof at trial. It reflects a determination by the Executive Branch that the charges should not have been pursued in the manner they were.

17. The addition of two felony charges based on no new information further supports a finding of overcharging or impropriety. The timing of those charges—following Defendant's

opposition to the government's proposed protective order and the reported statement by the prosecutor that felonies would be added and that no misdemeanor plea would be offered—adds to the record of potential vindictive or retaliatory charging decisions. Defendant raised this sequence in motions seeking discovery on selective and vindictive prosecution. Combined with the complete absence of any conviction and the fact that the case reached the brink of jury deliberation before the government itself terminated it, these facts establish extreme circumstances and a legally cognizable injury to Defendant's rights (including due process interests in not being subjected to an improperly motivated, retaliatory, or overreaching prosecution).

**Continuing Harm from Retention of the Records Justifies Expungement**

18. Retention of the charging records and associated NCIC/TSC entries continues to injure Defendant despite the dismissal with prejudice and the absence of any conviction. The April 2, 2023 CHP traffic stop illustrates the real-world consequences: Defendant was stopped under circumstances he has challenged as unlawful, and CHP public records he obtained indicate that the TSC watchlist note in his NCIC file related to these charges contributed to the encounter. Such notations place Defendant at elevated risk in any future law-enforcement interaction, including the possibility of pretextual stops, extended detentions, or escalated responses based on unadjudicated and ultimately dismissed allegations.

19. This harm is ongoing and substantial. Defendant has no other criminal history, served honorably as an FBI Special Agent for 13 years, and was appointed to a senior advisory position within the Department of Justice following the dismissal of these charges. The equities strongly favor expungement so that residual records do not continue to stigmatize him or create unnecessary risks in professional and personal life. The government's interest in retaining records

of charges that it itself moved to dismiss with prejudice—after full trial proceedings and pursuant to Executive Order 14147—is minimal by comparison.

**The Balance of Equities Overwhelmingly Favors Expungement**

20. Defendant is a former career law-enforcement officer with a spotless record who was subjected to a multi-year prosecution that the government ultimately abandoned after the presentation of evidence and closing arguments. The residual records serve no legitimate public-safety purpose. They instead perpetuate stigma and concrete risks of the type already experienced in the CHP stop and denial of access to federal buildings in the course of his federal employment. Complete expungement is the only remedy that fully vindicates Defendant's rights and restores him to the position he would have occupied absent the charges.

## CONCLUSION AND PRAYER

21. For the foregoing reasons, Defendant Jared Lane Wise respectfully requests that the Court grant this Motion and enter an order expunging all charges and related records in this matter.

DATED this 9th day of November, 2026.

s/Jared L. Wise

Jared L. Wise, Pro Se